KEKER & VAN NEST LLP
MICHAEL D. CELIO - # 197998
mcelio@kvn.com
JO W. GOLUB - # 246224
jgolub@kvn.com
REID P. MULLEN - # 270671
rmullen@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendants INTUITIVE SURGICAL, INC., LONNIE M. SMITH, GARY S. GUTHART, SALVATORE J. BROGNA, AUGUSTO V. CASTELLO, JEROME J. McNAMARA, MARK J. MELTZER, MARSHALL L. MOHR, COLIN MORALES, and DAVID J. ROSA

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE INTUITIVE SURGICAL SECURITIES LITIGATION | Case No. 5:13-CV-01920 EJD<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>Date:    May 9, 2014<br>Time:    9:00 a.m.<br>Judge:   Hon. Edward J. Davila<br>Courtroom: 4<br><br>Date Filed: April 26, 2013 |

805967

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...............................................................................................................1

II. ARGUMENT.......................................................................................................................2

    A. Plaintiffs fail to identify any actionable false or misleading statements. ................2

        1. Plaintiffs misstate the legal standard and misconstrue *Matrixx*...................3

        2. Under the proper legal standard, the Complaint falls short. ........................4

            a. No statement regarding the Warning Letter was misleading............4

            b. Intuitive's statements about MDR reporting practices were not misleading...............................................................................6

            c. The statements about pending lawsuits did not mislead. .................8

            d. Statements regarding financial performance did not mislead..........8

    B. Plaintiffs fail to allege scienter. ................................................................................9

        1. Plaintiffs misconstrue the standards for scienter. .......................................10

        2. Under the proper standard, the allegations do not support scienter............11

            a. Undisputed public disclosures support an innocent inference........................................................................................11

            b. The stock sales and repurchase support an innocent inference........................................................................................12

        3. Plaintiffs' remaining allegations do not alter the analysis.........................13

III. CONCLUSION..................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Berson v. Applied Signal Technology, Inc.*
  527 F.3d 982 (9th Cir. 2008) .................................................................................................. 15

*Brody v. Transitional Hospitals Corp.*
  280 F.3d 997 (9th Cir. 2002) ................................................................................ 1, 3, 4, 5, 6

*Gaines v. Guidant Corp.*
  1:03CV00892-SEB-WTL, 2004 WL 2538374 (S.D. Ind. Nov. 8, 2004) ........................ 5, 7, 14

*In re Apple Computer Sec. Litig.*
  886 F.2d 1109 (9th Cir. 1989) ................................................................................................ 12

*In re Cisco Sys. Inc. Sec. Litig.*
  No. 11–1568, 2013 WL 1402788, *8 (N.D. Cal. Mar. 29, 2013) ............................................ 13

*In re Countrywide Financial Corp. Derivative Litigation*
  554 F. Supp. 2d 1044 (C.D. Cal. 2008) .................................................................................. 13

*In re Genzyme Corp.*
  CIV.A. 09-11267-GAO, 2012 WL 1076124 (D. Mass. Mar. 30, 2012) .................................... 5

*In re MannKind Sec. Actions*
  835 F. Supp. 2d 797 (C.D. Cal. 2011) .................................................................................... 15

*In re Rigel Pharm., Inc. Sec. Litig.*
  697 F.3d 869 (9th Cir. 2012) ........................................................................................ 3, 4, 7, 8

*In re Silicon Graphics, Inc. Sec. Litig*,
  183 F.3d 970 (9th Cir. 1999) .................................................................................................. 12

*In re Splash Tech. Holdings, Inc. Sec. Litig.*
  160 F. Supp. 2d 1059 (N.D. Cal. 2001) .................................................................................... 2

*In re Tibco Software, Inc.*
  No. C 05-2146 SBA, 2006 WL 1469654 (N.D. Cal. May 25, 2006 ........................................ 13

*Matrixx Initiatives, Inc. v. Siracusano*
  131 S. Ct. 1309 (2011) .................................................................................................. *passim*

*Matthews v. Centex Telemanagement*, *Inc*.
  No. C-92-1837-CAL, 1994 WL 269734 (N.D. Cal. 1994) ...................................................... 13

*NVIDIA Corp. Sec. Litig*.
  No. C 08–4260 RS, 2010 WL 4117561 (N.D. Cal. Oct. 19, 2010) ......................................... 13

*Pecover v. Electronic Arts Inc*.
  633 F. Supp. 2d 976 (N.D. Cal. 2009) .................................................................................... 11

*Police Retirement Sys. of St. Louis v. Intuitive Surgical, Inc.* (*Police Retirement II*)
   No. CV-03451-LMK, 2012 WL 1868874 (N.D. Cal. May 22, 2012) .......................... 9, 10, 12

*Public Pension Fund Group v. KV Pharm. Co.*
   679 F.3d 972 (8th Cir. 2012) .............................................................................................. 9

*Reese v. Malone*
   __ F.3d __, No. 12-35260, 2014 WL 555911 (9th Cir. Feb. 13, 2014) ............................ 10, 11

*Silicon Storage Tech.*,
   No. C 05-0295 PJH, 2006 WL 648683 (N.D. Cal. Mar. 10, 2006) ....................................... 14

*Siracusano v. Matrixx Initiatives, Inc.*
   585 F.3d 1167 (9th Cir. 2009) ............................................................................................. 8

*South Ferry LP, No. 2 v. Killinger*
   542 F.3d 776 (9th Cir. 2008) ........................................................................................ 12, 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*
   551 U.S. 308 (2007) ........................................................................................ 1, 10, 11, 15

*TMJ Implants, Inc. v. U.S. Dep't of Health & Human Servs.*
   584 F.3d 1290 (10th Cir. 2009) .................................................................................... 7, 12

*United States v. Ritchie*
   342 F.3d 903 (9th Cir. 2003) ............................................................................................. 5

*Zucco Partners, LLC v. Digimarc Corp.*
   552 F.3d 981 (9th Cir. 2009) ......................................................................... 10, 11, 13, 15

**Federal Statutes**

15 U.S.C. § 78u-4(b)(2)(A) ........................................................................................................ 10

**Federal Regulations**

17 C.F.R. § 240.10b-5 ............................................................................................................ 3, 4

21 C.F.R. § 803.20(c)(2) ............................................................................................................. 7

49 Fed. Reg. 36,331 (Aug. 27, 1984) .......................................................................................... 7

## I. INTRODUCTION

Plaintiffs' Opposition pleads their case with passion, but passion cannot substitute for law or for facts. Once stripped of the rhetorical table pounding, what remains are Intuitive Surgical's actual statements. As set forth in Intuitive's Motion to Dismiss, a review of the allegedly false statements reveals that two essential elements of a securities fraud claim are missing: First, the Complaint fails to allege that anything Intuitive actually said was false or misleading; and second, it fails adequately to allege that any of the statements were *intentionally* misleading. Either of these failures requires dismissal of the Complaint in its entirety.

First, as to falsity, Plaintiffs now seem to concede that none of Intuitive's statements was literally false, claiming instead that Intuitive committed fraud by omission. To state a fraud claim based on an omission, the Ninth Circuit has made clear that a plaintiff must (a) identify something specific a defendant actually said; and (b) plead particularized facts that were omitted—known at the time of the statement—without which the statement was misleading. *Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). It is simply *not* enough, as a matter of law, to allege that something was omitted that Plaintiffs would have liked to have known. But that is all that Plaintiffs can allege here; Defendants' actual statements were not false or misleading.[1]

Second, Plaintiffs have not adequately pled that any allegedly misleading statement was made with the intent to defraud. Plaintiffs' Opposition cursorily invokes the "holistic" analysis that courts employ to determine if scienter has been adequately pled—but they provide only half of the analysis. A holistic review requires an examination of *all* of the inferences—both those that support the allegation and those that undermine it—to determine if there is a "cogent and compelling" case that is "strong in light of other explanations." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007). Here, the facts alleged in the Complaint give rise to a strong inference in Defendants' favor. The Complaint reveals that Intuitive both immediately disclosed to the public the FDA Warning letter it received, and also disclosed to every single one

---

[1] Plaintiffs implicitly concede that there are no claims at all against six of the nine individual Defendants who never made a challenged statement: Salvator J. Brogna, Augusto V. Castello, Jerome J. McNamara, Mark J. Meltzer, Colin Morales, and David J. Rosa. Opp. at 1 n.1. The Complaint must be dismissed as to those Defendants on that basis alone.

805967

of its hospital customers the alleged product flaws in the *da Vinci* instruments and accessories. These are not the actions of a company that is being deceitful or reckless. Rather, these undisputed facts preclude *any* inference that Intuitive was attempting to conceal problems with its products.

Ultimately, the Opposition reads as if this were a product liability action, focusing almost exclusively on what Plaintiffs believe was wrong with *da Vinci*. While Intuitive obviously believes even a products liability action would be meritless, that dispute is not before this Court. What is before this Court is a securities fraud action; and the absence of legally sufficient allegations of fraud and scienter requires its dismissal.

## II.   ARGUMENT

### A.   Plaintiffs fail to identify any actionable false or misleading statements.

A false or misleading statement is an essential element of any securities fraud claim. *See Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1318 (2011) ("To prevail on a § 10(b) claim, a plaintiff must show that defendant made a statement that was misleading as to a material fact") (internal emphasis and quotations omitted). For this reason, most securities fraud claims begin with a simple recitation of the defendant's statements. Yet, as explained in Intuitive's Motion, Plaintiffs' Complaint lumbers on for more than 60 pages before describing what Intuitive actually said that is supposedly fraudulent.[2] Mot. at 6-7. It is no accident that Plaintiffs' Opposition follows the same path. It is not until page 11 that Plaintiffs finally address Intuitive's statements. Plaintiffs' failure to focus on what Intuitive actually said reflects the fact that those statements were literally true, which Plaintiffs now appear to concede. *See* Opp. at 11-15.

Instead, Plaintiffs claim that Intuitive misled investors by omitting information described in an FDA Warning Letter, Medical Device Reports ("MDRs"), and lawsuits. Opp. at 3-8. But an omission is *not* actionable in isolation. An omission is actionable *only* in connection with an affirmative statement—the omitted fact must show that the affirmative statement was misleading.

---

[2] Plaintiffs filed a hundred-page puzzle pleading that made no effort to identify misstatements with particularity, and Defendants (and this Court) were left to divine which omissions fit with which statements and why. This is improper, and the Complaint should be dismissed. *See In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074-75 (N.D. Cal. 2001).

Plaintiffs' Opposition fails to explain how any statements that Intuitive actually made were false or misleading by virtue of an omitted fact. Plaintiffs emphasize dramatic (and unfounded) accusations of "concealed defects" and "secret recalls," but they fail to connect an actual omitted fact to an affirmative statement that Intuitive made. For that reason alone, the Complaint fails adequately to allege a false or misleading statement, and thus it must be dismissed.

### 1. Plaintiffs misstate the legal standard and misconstrue *Matrixx*.

To state a claim for securities fraud based on an omission, Plaintiffs must show that defendants made a statement that was misleading because it omitted a material fact. *See Brody*, 280 F.3d at 1006 ("[A]n omission … must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."); *see also Matrixx*, 131 S. Ct. at 1318. This has been the law in the Ninth Circuit for over a decade. In 2002, *Brody* held that "Rule 10b-5 and Section 14(e) … prohibit *only* misleading and untrue statements, not statements that are incomplete." 280 F.3d at 1006 (emphasis in original).

*Brody* is this Circuit's leading case on omissions-based securities fraud, but Plaintiffs fail to even mention it. Instead, they spend most of their Opposition trying to analogize this case to *Matrixx*, claiming, incorrectly, that the two cases are "nearly identical." Opp. at 1, 13. They are not identical, but more importantly *Matrixx* is entirely consistent with *Brody* and the long-standing rule that there is no duty to disclose information unless disclosure is needed to make an affirmative statement "not misleading." 131 S. Ct. 1321-22. As the Supreme Court stated in *Matrixx*, "[I]t bears emphasis that § 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." *Id.*; *see also In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 880 n.8 (9th Cir. 2012) ("*Matrixx* established that section 10(b) and Rule 10b-5 do not create an affirmative duty to disclose any and all material information; section 10(b) and Rule 10b-5 prohibit only misleading and untrue statements, not statements that are incomplete.").

Plaintiffs incorrectly argue that, under *Matrixx*, "[h]aving chosen to tout *da Vinci*'s safety, efficacy, and promise as the future of surgery, Defendants were obligated to do so truthfully and fully." Opp. at 13. The Ninth Circuit *explicitly rejected* this argument post-*Matrixx*:

> Plaintiff contends that, … once a company chooses to disclose any safety information, it must disclose all material information regarding safety. *This contention misconstrues the Supreme Court's opinion in Matrixx. Matrixx* established that section 10(b)(5) and Rule 10b-5 do not create an affirmative duty to disclose any and all material information; section 10(b) and Rule 10b-5 prohibit only misleading and untrue statements, not statements that are incomplete.

*Rigel*, 697 F.3d at 880 n.8 (citing *Matrixx,* 131 S. Ct. at 1321-22) (emphasis added).  "[A]s long as the omissions do not make the actual statements misleading," they are not actionable.  *Id.*  And under this standard, Plaintiffs' Complaint should be dismissed.

### 2. Under the proper legal standard, the Complaint falls short.

With the proper legal standard in mind, the Complaint's allegations fail under both *Matrixx* and *Brody*.  The Complaint focuses on three general categories of alleged omissions: those regarding (a) the FDA Warning Letter, (b) MDRs, and (c) product liability actions.  But nothing Intuitive said on those topics was false or misleading.

### a. No statement regarding the Warning Letter was misleading.

The Complaint focuses much of its attention on the July 2013 FDA Warning Letter. However, Plaintiffs do not allege that Intuitive made any false or misleading statements about the letter; nor do they allege that Intuitive "concealed" it from investors.  To the contrary, Plaintiffs concede that Intuitive disclosed the Warning Letter two days after receiving it.  *See* Compl. ¶ 16.

Plaintiffs respond that the Warning Letter gives rise to a securities fraud claim because it "establishes" that Intuitive knew *da Vinci* was "defective" in 2011 when it "sent secret recall letters" to all of its hospitals.  Opp. at 8-9 & n.5, 12.  This allegation still fails the legal standard. As previously explained, Plaintiffs must identify a misleading statement to plead a successful claim.  *See Matrixx*, 131 S. Ct. at 1321-22.  But here, Plaintiffs have identified no such statements whatsoever regarding the Warning Letter or the underlying actions described in it.  The statements Plaintiffs *have* identified[3] only show Intuitive referring to *da Vinci* as "a new generation of surgery," as having "proven safety . . . benefits," and as being a "safe and effective"

---

[3] In the opening Motion, Defendants included an exhibit listing all the statements Plaintiffs might have been accusing, to the extent that was possible to determine.  *See* Mot., Exh. A.  In their Opposition, Plaintiffs appear to have pared the list down to just eight statements, which are identified in a new exhibit, for ease of reference, attached hereto as Reply Exhibit 1.

alternative to open surgery.  *See* Opp. 12-13; Reply Exh. 1.  These statements are wholly unrelated to the Warning Letter or the underlying actions described in it; thus the letter cannot render those statements misleading.  *See Gaines v. Guidant Corp.*, 1:03CV00892-SEB-WTL, 2004 WL 2538374 (S.D. Ind. Nov. 8, 2004);[4] *see also Matrixx*, 131 S.Ct. at 1321-22.

In addition, Plaintiffs' arguments about the Warning Letter are contradicted by the Warning Letter itself, which is attached to the Complaint and is thus incorporated by reference. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The letter does not establish that *da Vinci* was "defective."  First, under the FDA's own procedures and existing law, the letter does not "establish" anything.  *See* Declaration of Reid Mullen in support of Request for Judicial Notice ("Mullen Decl."), Ex. C, FDA Regulatory Procedures Manual § 4-1-1, ECF 55-3 ("A Warning Letter is *informal and advisory*.  It communicates the agency's position on a matter, but it does not commit the FDA to taking enforcement action.") (emphasis added); *see also In re Genzyme Corp.*, CIV.A. 09-11267-GAO, 2012 WL 1076124, at *10 (D. Mass. Mar. 30, 2012) ("[R]eceipt of the Warning Letter one and a half years into the class period *does not establish Genzyme 'knew'* that it was out of compliance.") (emphasis added).  Second, even if it could establish something (and it cannot), the Warning Letter in no way states that *da Vinci* is or was "defective."  By its own terms the letter states only the FDA's tentative position that Intuitive violated FDA regulations by failing to notify the FDA of three letters Intuitive sent to customers in 2011.[5]  *See* Compl., Ex. A.  Again, the law requires Plaintiffs to identify a misleading statement.  *See Matrixx*, 131 S. Ct. at 1321-22; *Brody*, 280 F.3d at 1006.  The mere existence of a

---

[4] *Gaines*, which concerned alleged omissions about a novel surgical device, rejected the precise argument Plaintiffs make here: "[s]tatements by Defendants that positively compare the utilization of [the device] to previously available methods of conventional surgery do not suggest that [the device] had no complications; nor do statements about physician interest in [the device]; nor do statements about the sales of [the device], nor do statements about the long-term effects of [the device] once implanted in a patient.  Accordingly, we hold that Defendants' omission of the complications associated with the [the device] delivery system did not render any of their public statements misleading."  2004 WL 2538374 at *10.

[5] Plaintiffs pejoratively refer to these 2011 customer letters as "secret recalls," but the FDA never refers to them as such.  *See* Compl., Ex. A.  Plaintiffs concede—as they must—that these letters were sent to all 2,000-plus hospitals using the *da Vinci* system.  Compl. ¶¶ 51-54.  This undisputed fact is relevant because it eviscerates Plaintiffs' assertions that Intuitive tried to conceal dangerous defects, not because Intuitive is asserting the affirmative defense of "truth-on-the-market."  *See* Opp. at 17-18.

Warning Letter does not give rise to a fraud claim, nor does the content of this letter. *See id.*

### b. Intuitive's statements about MDR reporting practices were not misleading.

Plaintiffs' claims about Intuitive's MDR practices fail for the same reason as their claims about the Warning Letter. Intuitive explained in its Motion that the company had no obligation to disclose the MDRs (which are public records accessible online through the FDA's MAUDE database) to investors, and that it had never made any misleading statements about MDRs. Mot. at 11-12. Plaintiffs concede that "Defendants were not obligated to disclose 'the mere existence' of adverse events without more." Opp. at 14 (quoting *Matrixx*, 131 S. Ct. at 1321). Plaintiffs argue, however, that Intuitive's alleged underreporting of MDRs gives rise to a securities fraud claim because the MDRs that Intuitive allegedly concealed are "no different" than the information concealed in *Matrixx*. Opp. at 13-14. Plaintiffs are wrong for three reasons.

*First*, Plaintiffs fail to identify any false or misleading statements that Intuitive made about MDRs. Once again, Plaintiffs completely ignore the standard for pleading a fraud-by-omission claim. The question is not whether Intuitive omitted MDRs from the FDA's MAUDE database—though it did not. The question is whether Intuitive made affirmative statements about MDRs that were misleading by virtue of some material omitted fact about MDRs. *See Matrixx*, 131 S. Ct. at 1322; *Brody*, 280 F.3d at 1006. Intuitive made no such statements, and Plaintiffs' immense Complaint identifies none.

*Second*, while Plaintiffs would have the court believe that this case is identical to *Matrixx* and that, therefore, the result should be the same, that is demonstrably not so. In *Matrixx*, the defendant made affirmative statements denying any link between its zinc-based homeopathic cold remedy, Zicam, and loss of smell (a condition known as "anosmia"). *See* 131 S. Ct. at 1322. Matrixx blatantly ridiculed reports of a link between Zinc and anosmia calling them "completely unfounded and misleading." *Id.* at 1323. But, at the very time it made those clear, affirmative statements, Matrixx was aware of (and did not disclose) several clinical studies that indicated a "reliable causal link" between Zicam and anosmia and was also aware that Zicam users had reported anosmia to the company. *Id.* at 1321-22. Matrixx also falsely suggested that studies had

1  confirmed Zicam did not cause anosmia, even though it had never conducted such a study.  *Id.*

2  Not only did Matrixx allegedly lie about what it knew, it then predicted revenues would grow

3  80% in the future.  *Id.* at 1323.  Plaintiffs' allegations about MDRs come nowhere close to the

4  severity of the allegations in *Matrixx*.  Nor do any other facts in this case resemble the *Matrixx*

5  facts.  Intuitive made no public statements denying any connection between *da Vinci* and

6  potential surgical complications.  Nor did Intuitive make such statements while in possession of

7  concrete clinical studies establishing that *da Vinci* caused serious injury or death, or that it did so

8  at a higher rate than traditional open surgery.[6]

   ***Third***, even if Intuitive had spoken about MDRs, they are not material and thus cannot

10  form the basis for a fraud-by-omission claim.[7]  In *Matrixx,* the Court unequivocally held that "the

11  mere existence of reports of adverse events—which says nothing in and of itself about whether

12  the drug is causing the adverse events—will not satisfy this [materiality] standard."  131 S. Ct. at

13  1321.  The Ninth Circuit has applied this holding.  *See Rigel*, 697 F.3d at 880 n.8 ("The *Matrixx*

14  Court made it clear that not all adverse events would be material and, more importantly, that not

15  all *material* adverse events would have to be disclosed." (emphasis added); *see also* Mullen Decl.,

16  Ex. A at 1, ECF 55-1 (MAUDE database) ("The number of reports cannot be interpreted or used

17  in isolation to reach conclusions about the existence, severity, or frequency of problems

18  associated with devices.").  Even where the omitted facts include "something more" than adverse

19  events, an omission remains inactionable unless the omitted facts show that an affirmative

---

[6] It is well known and understood that any type of surgery is an inherently risky endeavor, and that occasionally things go wrong.  *See, e.g.*, *Gaines v. Guidant Corporation*, No. 1:03CV00892-SEB-WTL, 2004 WL 2538374, *10 (S.D. Ind. Nov. 8, 2004) ("We take judicial notice of the fact that medical procedures can and do sometimes present complications.").

[7] Moreover, Plaintiffs misstate the significance of MDRs.  When the FDA promulgated the MDR regulation, it deliberately sought to be overinclusive, sweeping in many events where the device may not have had anything to do with the patient's injury.  *See TMJ Implants, Inc. v. U.S. Dep't of Health & Human Servs.*, 584 F.3d 1290, 1294-95 (10th Cir. 2009) (citing 49 Fed. Reg. 36,331 (Aug. 27, 1984)).  Whether an event must be reported as an MDR is not cut-and-dry.  For example, if a person qualified to make a medical judgment "rules out the device … as a factor in the need for medical or surgical intervention …, and this conclusion is reasonable, then the manufacturer need not file an MDR."  *Id.* at 1295; *see also* 21 C.F.R. § 803.20(c)(2).  Thus, just because a manufacturer concludes that a particular event is not reportable as an MDR does not mean that the manufacturer has "concealed" it.  Manufacturers and the FDA can, and often do, disagree about the regulation's applicability to particular events.  *See TMJ*, 584 F.3d at 1297-99.

1  statement the defendant actually made was misleading.  *See Rigel*, 697 F.3d at 880 n.8. As a

2  matter of law, MDRs alone cannot form the basis for a securities fraud claim.  *Id.*  As *Matrixx*

3  held, "[s]omething more [than MDRs] is needed" to satisfy the standard. 131 S. Ct. at 1321.

### c. The statements about pending lawsuits did not mislead.

Plaintiffs' attempt to state a claim based on alleged omissions regarding pending lawsuits fares no better.  Mot. at 13-14.  Once again, Plaintiffs ignore the statements Intuitive actually made, choosing instead to misconstrue *Matrixx* by arguing that the Supreme Court held that failure to disclose a pending lawsuit constituted securities fraud.  *See* Opp. 6, 13-14, 16.  Once again, Plaintiffs are wrong.

Focusing on Intuitive's actual statements reveals that Intuitive made no misleading statements about the existence of *da Vinci*-related lawsuits.  On the contrary, in the very first SEC filing of the Class Period, Intuitive not only warned investors of the *risk* of future product-liability and negligence actions, but also told investors that product-liability and negligence claims *had been asserted* against Intuitive.  Mullen Decl., Ex. B (February 2012 10-K) at 20, ECF 55-2. These disclosures continued throughout the Class Period.  Intuitive even quantified the exact number of pending lawsuits.  *See id.*, Ex. K (April 2013 10-Q) at 24, ECF 55-11 ("The Company is currently a defendant in approximately 26 individual product liability lawsuits.").  Plaintiffs simply mischaracterize the record by claiming that Intuitive "did not disclose the already existing lawsuits."  Opp. at 6.

Not only are Plaintiffs wrong about Intuitive's statements, they are also wrong to rely on *Matrixx* to argue that Intuitive misled investors about the pending lawsuits.  In *Matrixx* the court faulted the defendant for speaking "about the risks of product liability claims in the abstract, with no indication that the risk may already have come to fruition."  *Siracusano v. Matrixx Initiatives*, *Inc.*, 585 F.3d 1167, 1177 (9th Cir. 2009) (internal quotes and citation omitted).  Here, not only did Intuitive disclose the risk of litigation, it disclosed specific information the litigation it faced.

### d. Statements regarding financial performance did not mislead.

Plaintiffs also contend that Intuitive made "misleading statements about financial performance" that were "similar" to those found actionable in *Matrixx*.  Opp. at 15-16.  Once

again, however, Plaintiffs' attempt to align the facts of this case with *Matrixx* fails. The misleading statements upon which *Matrixx* focused were not reports of past financial success attributing earnings to the sale of Zicam, but those in which Matrixx "stated that reports indicating that Zicam caused anosmia were 'completely unfounded and misleading' and that 'the safety and efficacy of zinc gluconate for the treatment of symptoms related to the common cold have been well established.'" *Matrixx*, 131 S. Ct. at 1323. Matrixx made these statements while, at the same time, projecting *future* growth in the sale of Zicam; and therein lay the problem. Matrixx made predictions of future financial success that it had to know were misleading. *See id*. at 1315 (discussing defendant's statements that it was "poised for growth" and that revenues would rise significantly in the future). *Matrixx* nowhere held that a company could be liable for securities fraud for accurately reporting *past* financial results, which are the types of statements at issue in this case. *See id*. As Defendants' Motion argued, Intuitive's statements of historical fact are not actionable. *See* Mot. at 8-9; *Police Retirement Sys. of St. Louis v. Intuitive Surgical, Inc.* (*Police Retirement II*), No. CV-03451-LMK, 2012 WL 1868874 at *15-16 (N.D. Cal. May 22, 2012) ("Statements [that] correctly reported Intuitive's financial results for the prior year… are strictly historical; none of these Statements purport to address the future sustainability of Intuitive's performance. Thus, disclosure of the disputed 'known trends' would not have caused these Statements to convey a different meaning than what they conveyed on their face to investor."); *see also Public Pension Fund Group v. KV Pharm. Co*., 679 F.3d 972, 985 (8th Cir. 2012) (rejecting, under *Matrixx*, plaintiffs' "broad proposition that a statement ascribing past financial success to a particular product is misleading unless the problems associated with the product are also disclosed").

In short, all three sets of allegations fail for the same reason—what Intuitive actually said was not misleading. To impose liability in the absence of the required misstatement would turn our system of securities regulation on its head.

**B.    Plaintiffs fail to allege scienter.**

Even if Plaintiffs had identified a false statement or a material omission, their Complaint would still fail because it does not plead facts giving rise to a strong inference of scienter. In this

1  case, the allegations do not give rise to *any* inference of scienter, much less a "strong" one.

### 1. Plaintiffs misconstrue the standards for scienter.

Plaintiffs' Opposition evinces a fundamental misunderstanding of what it takes to plead scienter in this Circuit after *Tellabs* and *Zucco Partners*. While they acknowledge that the review is "holistic," they proceed as if scienter were a box-checking exercise and suggest that if they state a weak allegation that fits each of the traditional categories of the scienter analysis (*e.g.*, stock sales, confidential witnesses, *etc.*), their Complaint must survive. Opp. at 21. But this is not so; the point of the "holistic" scienter review is to determine whether *all* of the inferences—both those that support the allegation and those that undermine it—combine to produce a "cogent and compelling" case that is "strong in light of other explanations." *Tellabs*, 551 U.S. at 324; *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 998 (9th Cir. 2009); *see also Reese v. Malone*, __ F.3d __, No. 12-35260, 2014 WL 555911 at *6 (9th Cir. Feb. 13, 2014). This "inquiry is inherently comparative." *Tellabs*, 551 U.S. at 323. "A court must compare the malicious and innocent inferences cognizable from the facts pled in the complaint, and only allow the complaint to survive a motion to dismiss if the malicious inference is at least as compelling as any opposing innocent inference." *Zucco*, 552 F.3d at 991.

To state a "cogent and compelling" inference of scienter, the complaint must, at a minimum, plead the "who, what, where, when, and how" of each allegedly fraudulent statement so that any inference of fraud can be compared to the plausible innocent inferences. *See Police Retirement II*, 2012 WL 1868874 at *19; *see also* 15 U.S.C. § 78u-4(b)(2)(A) (the complaint must "with respect to each act or omission alleged . . . , state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."). The Ninth Circuit confirmed this requirement in its recent decision in *Reese*, where the court examined in detail the context and circumstances of each defendant's allegedly fraudulent statements to determine whether any of the statements were made with the requisite scienter. *See* 2014 WL 555911 at *7-18. When this standard is applied to this case, the Complaint fails to meet it.

**2.     Under the proper standard, the allegations do not support scienter.**

Plaintiffs have made no effort to connect their scienter allegations to specific statements.[8] Without this connection, Plaintiffs cannot show that the inference of scienter is "at least as compelling" as the opposing innocent inferences. *See Zucco*, 552 F.3d at 991; *see also Reese*, 2014 WL 555911 at *9 ("The strength of an inference cannot be decided in a vacuum . . . a court must consider plausible, nonculpable explanations for the defendant's conduct").

Plaintiffs' failure to allege specific facts with respect "to each act or omission alleged," as the Reform Act requires, should end the scienter analysis. But this is not the only flaw in their scienter allegations. Defendants' Motion set forth the inferences that logically flow from the Complaint under the *Tellabs* standard and demonstrated how no inference of scienter could flow therefrom. At several points in their Opposition, Plaintiffs argue that these are jury arguments. But Plaintiffs are wrong. The Supreme Court *requires* the court to undertake precisely this comparative inquiry when considering scienter on a motion to dismiss. *See Tellabs*, 551 U.S. at 323. Here, that "inherently comparative" inquiry does not support any "malicious" inference.

**a.     Undisputed public disclosures support an innocent inference.**

The Complaint spends a great deal of time discussing the July 16, 2013 Warning Letter. *See, e.g.*, Compl. ¶¶ 4, 17. But Intuitive disclosed the Warning Letter to the public on July 18, 2013, two days after receiving it. *Id.* ¶ 16. It is this letter that discusses the so-called "secret recalls" and "defective" products. Thus on *the* key issues set forth in the Complaint, Intuitive's actions are wholly inconsistent with scienter: Intuitive disclosed the letter almost immediately.

Despite this, Plaintiffs suggest that the Warning Letter supports scienter because it allegedly establishes that Intuitive issued *da Vinci*-related "corrections" in 2011 without notifying the FDA.[9] Opp. at 22-23; *see also* Compl. Ex. A. Plaintiffs go so far as to claim "[t]here is no plausible justification" for Intuitive's failure to notify the FDA. That is plainly not true. The FDA reporting regime is a complex system of regulations that requires companies to make

---

[8] Although Defendants featured this argument (Mot. at 16-17), Plaintiffs completely ignore it and thus "effectively conceded" this argument "by failing to address the issue in their opposition memorandum." *Pecover v. Electronic Arts Inc.*, 633 F. Supp. 2d 976, 984 (N.D. Cal. 2009).

[9] These "corrections" were the same three letters previously referred to as the "secret recalls."

difficult decisions about what should be disclosed and when. There is ample room for good-faith, reasonable disagreements. *See TMJ Implants*, 584 F.3d at 1294-95. The mere existence of a disagreement between Intuitive and the FDA hardly constitutes a "cogent and compelling" case of securities fraud, particularly because the "field corrections" were not "secret"—Intuitive disclosed them to all of its customers. Rather, under the circumstances, the only logical inference from these allegations suggests a good-faith dispute about compliance with a complex set of FDA reporting requirements.[10]

### b. The stock sales and repurchase support an innocent inference.

Plaintiffs spend a great deal of time discussing stock sales, and they claim that an inference of scienter can be drawn therefrom. Once again, looking at *all* the facts pled, an *innocent* inference is the cogent and compelling one. For example, at the end of the Class Period the three individual Defendants still retained (respectively) 100%, 104.28%, and 93.35% of their stock holdings. *See* Mullen Decl., ¶ 14, ECF 55; *see also* Mot. at 21. Thus, any inference of scienter based on the dollar figures of their sales is negated. *See In re Apple Computer Sec. Litig.*, 886 F.2d 1109, 1117 (9th Cir. 1989) (despite sales of $84 million, defendants still retained 92% of their shares negating inference of scienter); *In re Silicon Graphics, Inc. Sec. Litig*, 183 F.3d 970, 987–88 (9th Cir. 1999), *abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) (despite $13 million in sales, no scienter where defendants retained 90 percent of their holdings). This is not a narrow, technical point: If the senior management of the company saw the writing on the wall and knew a crash was imminent, they would not have retained the vast majority of their holdings.

Even if Plaintiffs' stock-sale allegations had established scienter, it would be negated by Intuitive's stock repurchase program. Mot. at 23. Plaintiffs lodge a handful of responses to this argument, including that it was the company (which is also a named defendant), not the individual

---

[10] The weakness of Plaintiffs' falsity allegations also undermines any inference of scienter. *See Police Retirement II*, 2012 WL 1868874, *15 ("Courts may analyze falsity and scienter together, even though they are separate elements, because they generally depend on the same set of facts."). Even assuming Plaintiffs can identify an actionable misstatement, there certainly are no dramatically false statements that themselves are indicative of scienter. *See id.*

defendants who repurchased the stock; and (although seemingly contradictorily) that the individual defendants pushed the repurchase to benefit themselves. Opp. at 29. But this could be argued in every case in which a repurchase program exists, and courts have consistently found that these programs undermine scienter. Intuitive cited at least four cases so holding, and Plaintiffs make no attempt to distinguish any of them. *See* Mot. at 23.[11]

Again, this is no mere technicality. The executives of Intuitive Surgical—the very individuals Defendants believe were "control persons"—had such confidence in the company's future that they caused the company to buy back millions of its own shares because they thought the share price would rise. The company used cash to purchase these shares in the open market rather than, for example, to pay executive bonuses; the logical inference is that they thought the shares were undervalued. The only plausible inference that flows from such conduct is innocent.

### 3. Plaintiffs' remaining allegations do not alter the analysis.

The remaining allegations on which Plaintiffs rely to support their inference of "malicious" conduct do little to raise any inference of scienter at all.

**Confidential Source**. Plaintiffs argue that their "confidential source" somehow supports scienter. Opp. at 23-24. The statements from an anonymous witness who was an Intuitive employee for part of the Class Period are not "themselves [] indicative of scienter." *Zucco Partners*, 552 F.3d at 995. The witness indicates only that Defendants "closely monitored" adverse-event reports during his employment at Intuitive, and that they "discussed them frequently, and were able to recite the totals including ratios of adverse events." Opp. at 23-24. He does not describe what the Defendants learned from the reports, and Plaintiffs do not argue whether or how that information was inconsistent with public statements. *See id.* Such

---

[11] Defendants referred the Court to the following opinions: *In re Tibco Software, Inc.*, No. C 05-2146 SBA, 2006 WL 1469654, *21 (N.D. Cal. May 25, 2006); *In re Cisco Sys. Inc. Sec. Litig.*, No. 11–1568, 2013 WL 1402788, *8 (N.D. Cal. Mar. 29, 2013); *In re NVIDIA Corp. Sec. Litig.*, No. C 08–4260 RS, 2010 WL 4117561, * 11 (N.D. Cal. Oct. 19, 2010); and *Matthews v. Centex Telemanagement*, *Inc.*, No. C-92-1837-CAL, 1994 WL 269734, *8 (N.D. Cal. 1994). Instead of addressing these cases, Plaintiffs point to only one, inapposite case: *In re Countrywide Financial Corp. Derivative Litigation,* 554 F. Supp. 2d 1044 (C.D. Cal. 2008), in which the court concluded that the stock repurchase only "*weakly* contribute[d] to the Court's conclusion of scienter." *Id*. at 1071 (emphasis added). Notably, in *Countrywide*, the repurchase program was part of the affirmative allegations, which it is not here. *Id*. at 1068.

nonspecific allegations are insufficient to show a strong inference of scienter.  *See, e.g., Silicon Storage Tech.*, No. C 05-0295 PJH, 2006 WL 648683, at *11 (N.D. Cal. Mar. 10, 2006).

**Monitoring Adverse Events.**  Plaintiffs next suggest that, because Intuitive allegedly knew of complaints of injuries associated with *da Vinci* surgery, some inference of scienter should arise.  This simply does not follow.  As the Court specifically stated in *Matrixx*, "Adverse event reports are daily events in the pharmaceutical industry; in 2009, the FDA entered nearly 500,000 such reports into its reporting system."  *Matrixx*, 131 S. Ct. at 1321.  Injuries and complications are possible in any surgery, even if performed absolutely correctly under perfect conditions.  *See Gaines*, 2004 WL 2538374, at *10.  The fact that a patient claims to be injured by a surgical device does not necessarily mean the device is defective.  Moreover, the fact that Intuitive is concerned about such reports and monitors them does not suggest wrongdoing.  Ignoring reports of possible injury would obviously be inappropriate.

**Core Operations**.  Finally, Plaintiffs invoke the "core-operations inference," *see* Opp. at 24-25, but misunderstand what it is and what it does.  Plaintiffs begin by misstating the legal test.  Selectively quoting *South Ferry LP No. 2 v. Killinger*, Plaintiffs argue: "'[W]here the nature of the relevant fact is of such prominence that it would be "absurd" to suggest that management was without knowledge of the matter,' *scienter may be inferred*."  Opp. at 24 (emphasis added).  *South Ferry* says no such thing.  *South Ferry* holds that "allegations regarding management's role in a company . . . may conceivably satisfy the PSLRA standard in a more bare form, without particularized allegations, in rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter."  542 F.3d at 786.  In other words, contrary to Plaintiff's suggestion, the inference does *not* allow a court to infer scienter whenever a plaintiff's allegations concern something very important to a company.  Rather, the inference can (rarely) substitute for particularized allegations that a defendant was aware of a particular fact "about which management made false or misleading statements."  *Id.*  This doctrine has no applicability here as this case involves no allegation that Intuitive's management "was without knowledge" of some absurdly prominent fact about which misleading statements were made.

Cases applying the core-operations inference make clear why it does not apply here. In *Berson v. Applied Signal Technology, Inc.*, 527 F.3d 982, 983, 988 n.5 (9th Cir. 2008), the company received stop-work orders that halted work on contracts representing over 80% of the company's revenue, but continued to count the stopped work as part of its contracted "backlog." *Id.* at 984. The core-operations inference came into play only because Plaintiffs had failed to allege that the individual defendants making the backlog statements "actually knew about the stop-work orders." *Id.* at 987. The court inferred such knowledge because the stop-work orders "had a devastating effect on the corporation's revenue." *Id.* Similarly, in *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 809 (C.D. Cal. 2011), the company claimed the FDA had "blessed" its only viable product even though the FDA had actually rejected it. As in *Berson*, the question was whether the court could infer such knowledge, and the court did so because the FDA approval was "absolutely critical to the company's success." *Id.* at 815. Here, none of the alleged omissions come anywhere close to the kinds of misrepresentations alleged in *Berson* or *MannKind*. And more importantly, none of Plaintiffs' allegations concern any defendant's lack of knowledge of Intuitive's core operations. The core-operations doctrine thus does not apply.

In short, the "holistic" and "inherently comparative" analysis required by *Tellabs* and *Zucco Partners* produces an obvious answer: there is no "cogent" argument for scienter.

### III. CONCLUSION

The cliché holds that when the facts are on your side, you pound the facts; when the law is on your side, you pound the law; and when you have neither the law nor the facts on your side, you pound the table. Here, Plaintiffs' Opposition spends a great deal of energy pounding the table. But the law—*Matrixx, Brody, Tellabs*, and *Zucco*—and the facts are *not* on Plaintiffs' side. Intuitive's motion to dismiss should be granted.

Dated: February 28, 2014                                KEKER & VAN NEST LLP

By:   /s/ *Michael D. Celio*
     MICHAEL D. CELIO
     JO W. GOLUB
     REID P. MULLEN
     Attorneys for Defendants