UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE INTUITIVE SURGICAL SECURITIES LITIGATION | Case No. 5:13-CV-01920-EJD<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION**<br><br>**[Re: Dkt. No. 93]** |

Presently before the court is Defendants Intuitive Surgical, Inc. ("Intuitive"), Lonnie M. Smith ("Defendant Smith"), Gary S. Guthart ("Defendant Guthart"), and Marshall L. Mohr's ("Defendant Mohr") (collectively, "Defendants") Motion for Reconsideration of the court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss. For the reasons stated below, Defendants' motion is DENIED.

## I.   BACKGROUND

The factual and procedural backgrounds were discussed extensively in this court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss. See Dkt. No. 83, Order. Briefly, Intuitive is a biomedical corporation that designs, manufactures, and sells da Vinci Surgical Systems ("da Vinci"), its sole product and primary source of revenue. See Dkt. No. 48, Am. Compl. at ¶¶ 29, 40. The da Vinci is a robotic surgical system that uses three-dimensional computer technology to allow surgeons to remotely operate a suite of tiny computer-assisted tools through a small tube inside a patient. Id. at ¶ 41. Plaintiff purchased or otherwise acquired Intuitive stock during the period between February 6, 2012 and July 18, 2013 (the "Class Period").

1  Id. at ¶ 25.  Intuitive enjoyed a rapid growth during the Class Period because da Vinci is the only
2  robotic surgical system in the United States approved by the Food and Drug Administration
3  ("FDA") for soft tissue procedures.  Id. at ¶¶ 38-39.  As a result of Intuitive's financial success,
4  stock prices began to rise.  Id. at ¶ 10.
5        Plaintiff alleges that one of da Vinci's most commonly used tools had a defect that
6  Intuitive became aware of through medical device reports ("MDRs").  Id. at ¶¶ 44-46.  Pursuant to
7  FDA regulations, if an adverse event (death or serious injury) occurs at a hospital, and the hospital
8  receives or otherwise becomes aware of information that reasonably suggests that a medical
9  device may have caused or contributed to that event, the hospital must report that information to
10  the manufacturer through an MDR.  Id. at ¶ 62.  If the hospital's report reasonably suggests that
11  the device may have contributed to a serious injury or death, or malfunctioned in such a way that it
12  could have caused serious injury or death, then the manufacturer must also report the MDR to the
13  FDA.  Id. at ¶ 63.  Plaintiff alleges that, instead of reporting the MDRs to the FDA, Intuitive
14  responded by issuing "secret recalls."  Id. at ¶¶ 51-54.  Plaintiff further alleges that Defendants
15  misclassified and/or failed to report the MDRs that it received.  Id. at ¶ 5.  As a result of a meeting
16  with the FDA, Intuitive changed its reporting policies, which led to an increased number of
17  "serious injury" MDRs reported by Intuitive.  Id. at ¶¶ 73, 209.  Due to this increase, the FDA
18  began a safety probe of Intuitive.  Id. at ¶ 84.  When news of this probe and a link to at least 70
19  deaths attributed to da Vinci became public, Intuitive's stock price dropped.  Id. ¶¶ 84, 175-77.
20        Plaintiff alleges that during the Class Period, Defendants made numerous materially false
21  and misleading statements and omissions regarding the safety of the da Vinci system and
22  Intuitive's compliance with FDA regulations.  Id. at ¶¶ 182-269.  Defendants alleged statements
23  spanned fourteen months and arose within Intuitive's public filings with the SEC, press releases,
24  and quarterly earnings call with investors.  Id.
25        In December 2013, Defendants' filed a Motion to Dismiss the Amended Class Action
26  Complaint.  See Dkt. No. 53.  Plaintiff filed an opposition brief, and Defendants filed a reply brief.
27  See Dkt. Nos. 58, 62.  The matter was taken into submission by this court without oral argument.
28

2
Case No: 5:13-CV-01920-EJD
ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION

1  See Dkt. No. 77.  In August 2014, this court issued an Order Granting in Part and Denying in Part
2  Defendants' Motion to Dismiss ("Order").  See Dkt. No. 83.  In October 2014, Defendants filed a
3  Motion for Leave to File a Motion for Reconsideration of the court's Order.  See Dkt. No. 88.
4  Defendants argued that several weeks after the Order was issued, the Ninth Circuit issued two
5  decisions that reach the opposite result of the Order: Police Retirement System of St. Louis v.
6  Intuitive Surgical, Inc., 759 F.3d 1051 (9th Cir. 2014) ("PRS"), and In re NVIDIA Corp.
7  Securities Litigation, 768 F.3d 1046 (9th Cir. 2014) ("In re NVIDIA").  See id. at 1.  The court
8  granted Defendants' Motion for Leave to File, and Defendants filed its Motion for
9  Reconsideration.  See Dkt Nos. 92, 93.  The Motion for Reconsideration was fully briefed by the
10 parties, and the matter was then submitted.  See Dkt. Nos. 92, 96, 97.

## II.   LEGAL STANDARD

The process for filing a motion for reconsideration is described in Civil Local Rule 7–9. The party seeking reconsideration of a prior order must first obtain permission to make such a request. See Civil L.R. 7–9(a).  In requesting leave of court, the moving party must make a specific showing supporting one of the following bases:

> (1)  That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party also must show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
> (2)  The emergence of new material facts or a change of law occurring after the time of such order; or
> (3)  A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil L.R. 7–9(b).  Additionally, the party must accomplish the appropriate showing without repeating any oral or written argument previously made with respect to the interlocutory order that the party now seeks to have reconsidered.  Civil L.R. 7–9(c).  Interlocutory orders and rulings may be modified by a district court judge at any time prior to final judgment.  Amarel v. Connell, 102 F.3d 1494, 1515 (9th Cir. 1996); Fed. R. Civ. P. 54(b).  "A district court may reconsider and reverse a previous interlocutory decision for any reason it deems sufficient, even in the absence of

1  new evidence or an intervening change in or clarification of controlling law." Abada v. Charles
2  Schwab & Co., Inc., 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000).  A court, however, should leave
3  a previous decision undisturbed if there is no showing that it represented clear error or would work
4  a manifest injustice. Id.

**III. DISCUSSION**

Plaintiff alleges that Defendants engaged in a scheme to defraud investors by representing that da Vinci was a safe and viable alternative to open surgery, when in fact Defendants knew that da Vinci had been experiencing defects that, when discovered, would seriously impair its marketability.  To state a claim for violations of Section 10(b) of the Securities Exchange Act of 1934 or Securities Exchange Commission Rule 10b–5, a plaintiff must allege sufficient facts to establish: "(1) a material representation or omission by the defendant, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation, (5) economic loss, and (6) loss causation." In re NVIDIA, 768 F.3d at 1051-52.  The plaintiff must also satisfy the heightened pleading standard of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Id. at 1052.  Defendants challenge the sufficiency of the allegations as to the elements of material misstatements and scienter, arguing that the PRS and In re NVIDIA decisions shed light as to these issues.  Consistent with this court's Order Granting Defendants' Motion for Leave to File Motion for Reconsideration, the instant motion will be limited to discussion of these two Ninth Circuit decisions. See Dkt. No. 92.

**A.  Material Misstatements Regarding da Vinci's Safety and Efficacy**

In its Order, this court found that Defendant's alleged statements regarding da Vinci's safety and efficacy were false and misleading and, thus, were sufficient to state a claim under the PSLRA. Order at 12.  Plaintiff alleges that Defendants made numerous statements via their SEC filings and press releases pronouncing da Vinci as a beneficial, safe, and effective alternative to traditional surgery. Id.  These statements were allegedly false or misleading because Intuitive failed to disclose unreported adverse event reports, the number and nature of products liability claims brought against the company, and three "secret recalls." Id.  The court concluded that it

1  was plausible for a reasonable investor to reasonably rely on Defendants' alleged assertions of
2  safety. Id. at 14.

3  Defendants argue that under In re NVIDIA and PRS, general statements regarding product
4  quality and statements evincing a company's overall belief in its product are statements of
5  corporate optimism, and not misleading. Mot. at 3. They contend that, in In re NVIDIA, the
6  Ninth Circuit held that upbeat statements evincing a company's belief in its own product, even
7  when an alleged product defect affects the company's flagship product, is not sufficient to support
8  a claim. Id. at 10.

9  Relying on a patchwork of excerpts from the In re NVIDIA decision, Defendants'
10 interpretation of the decision is overly stated. There is no indication that the Ninth Circuit "held"
11 that a company's upbeat statements evincing its belief of its own product is insufficient to support
12 a securities fraud claim. The decision focused on whether plaintiffs' allegations were sufficient to
13 create a strong inference of scienter, not whether they were sufficient to constitute a material
14 misrepresentation. In re NVIDIA, 768 F.3d at 1057. The Ninth Circuit found that plaintiffs'
15 allegations were not sufficient to meet the scienter element. Id. at 1064. Thus, this decision is
16 inapposite to the matter at hand—whether the alleged statements regarding da Vinci's safety and
17 efficacy can constitute material misstatements at the motion to dismiss stage.

18 As to the PRS decision, defendants' alleged statements pertained to the company's
19 financial status and economic growth. PRS, 759 F.3d at 1060. The Ninth Circuit found that the
20 alleged statements were corporate puffery; since the financial market already knew of the
21 company's financial difficulties, any reasonable investor would have understood the company's
22 statements of economic growth as mere corporate optimism. Id. Here, however, the alleged
23 statements pertain to a product's safety—an issue which a reasonable investor may rely on and not
24 disregard as mere corporate optimism. This court properly held that Defendants' repeated
25 statements regarding da Vinci's safety, ergonomic benefits, and efficacy could be objectively
26 assessed through safety reports, and that it is plausible that a reasonable investor would rely on
27 these assertions of safety when considering the total mix of information available. Order at 14.
28

5
Case No: 5:13-CV-01920-EJD
ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION

1 As such, Defendants' reliance on the PRS decision is unpersuasive.

2 Defendants have failed to show how the In re NVIDIA or PRS decision changes the
3 assessment of this issue. Accordingly, this court's ruling remains.

**B.     Scienter**

In its Order, this court found that Plaintiff pled scienter with sufficient particularity to support its claims as to statements made regarding da Vinci safety benefits. Order at 21. This ruling was based on two grounds: (1) Plaintiff sufficiently relied on statements from a confidential witness to allege that individual Defendants knew about da Vinci related injuries, FDA violations, and the concealment of serious defects and, thus, knew that their statements regarding the da Vinci safety benefits were false or misleading; and (2) Plaintiff sufficiently alleged that Defendants' stock sales were so unusual and suspicious that they too give rise to a strong inference of scienter. Id. at 19-20. Defendants challenge both of these grounds in the instant motion.

1.     Confidential Witness Statement

Defendants argue that the Ninth Circuit held in PRS that when a plaintiff relies on a corroborating witness to demonstrate that an executive's statement was knowingly false on the basis of certain company reports, that witness must detail the actual contents of the reports. Mot. at 4-5. They argue that the In re NVIDIA decision further highlights the high degree of specificity and first-hand knowledge a confidential witness must provide to satisfy the scienter requirement. Id. at 5.

In PRS, the Ninth Circuit examined a single statement by a lone witness to assess whether it was sufficient to support allegations of scienter. PRS, 759 F.3d at 1063. The Ninth Circuit found the following to be determinative in deeming it insufficient: the witness was a low-level employee who worked for the company for three months; and the complaint lacked critical information to substantiate the witness's vague statement. Id. While the plaintiff did not rely on other witness accounts, the Ninth Circuit considered the entire complaint and found that other witness statements lacked foundation because "they do not detail the actual contents of the reports the executives purportedly referenced or had access to; the statements provide only snippets of

6
Case No: 5:13-CV-01920-EJD
ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION

information, not a view of the company's overall health; and the witnesses lack first hand knowledge regarding what the individual defendants knew or did not know about [the company's] financial health." Id.  In In re NVIDIA, the Ninth Circuit similarly examined the account of a confidential witness and found it to be insufficient because the witness lacked personal knowledge that the individual defendants knew the critical information. In re NVIDIA, 768 F.3d at 1064. The following appear to be indicative: the witness was not an executive employee; and the witness merely assumed that, based on his/her boss's status in the corporate hierarchy, the boss was communicating with executive level personnel. Id.  Thus, the Ninth Circuit found that the witness did "not appear to have the requisite personal knowledge to assert that the company's management team received specific information regarding the defective products." Id.

In sum, it appears that the Ninth Circuit finds the following to be determinative when evaluating a witness account to support an inference of scienter: (1) whether the witness is a low-level employee; and (2) whether the witness's statement contains sufficient critical information to substantiate the statement, including the contents of reports the executives purportedly referenced or had access to, a view of the company overall, and first-hand knowledge regarding what the individual defendants knew or did not know.  This aligns with the analysis this court conducted in its Order—whether Plaintiff sufficiently described the relationship and employment of the witness, and has pled statements that are indicative of scienter.  Order at 19.

Here, Plaintiff relies on the following witness statements: (1) the witness confirmed that the company tracked adverse events and compiled the data that was auto-emailed to Intuitive executives; (2) Defendants Smith and Guthart closely monitored reports of adverse events, discussed them frequently, and recited the totals to the witness; (3) Intuitive executives received reports that reflected the information obtained from OnSite—a system that allowed Intuitive to remotely monitor da Vinci in "real time;" and (4) adverse events were discussed at quarterly meetings, quarterly financial "close meetings," and semiannual national sales meetings that individual Defendants attended.  Am. Compl. at ¶¶ 166-69.

7
Case No: 5:13-CV-01920-EJD
ORDER DENYING DEFENDANTS' MOTION FOR RECONSIDERATION

As to the relationship and employment of the witness, Plaintiff alleges that the witness is a former Intuitive Financial Planning and Analysis Manager in Sales and Marketing, who reported to the Director of Financial Planning and Analysis. Id. at ¶ 164. The witness allegedly worked in Intuitive for over six years, and frequently interacted with individual Defendants because he sat next to "executive row" and drafted reports for them. Id. at ¶¶ 164-65. These allegations are sufficient to establish that the witness was not a low-level employee, but rather had direct access to individual Defendants. As to whether the witness's statement contains sufficient critical information to substantiate his/her statements, Defendants focus on one thing—the witness did not detail the actual contents of the reports he/she allegedly provided individual Defendants. Mot. at 4-5. While Defendants are correct that Plaintiff does not specifically allege the witness's detailing of the actual contents of the reports, Plaintiff does allege other facts that sufficiently plead scienter. Plaintiff sufficiently alleges that the witness had first-hand knowledge of what the individual Defendants knew because Defendants Smith and Guthart recited the totals of the adverse event reports to the witness, and the witness participated in various meetings attended by individual Defendants where adverse events were discussed. Am. Compl. at ¶¶ 166, 168-69. The Ninth Circuit does not appear to require the contents of the report to be alleged, but rather provides that as an example to demonstrate how a witness statement can be corroborated. In this matter, the witness appears to have the requisite personal knowledge to assert that the individual Defendants received specific information about da Vinci's defects.

Defendants have failed to show how the In re NVIDIA or PRS decision changes this court's evaluation of this issue. Accordingly, this court's ruling remains.

2. Defendants' Stock Sales

In its Order, this court found that Plaintiff pled sufficient facts of Defendants' unusual stock sales so as to give rise to a strong inference of scienter. Order at 20-21. Defendants' challenge to this conclusion hinges on Plaintiff's failure to sufficiently plead the confidential witness's statement. Mot. at 9. Defendants argue that allegations relating to stock sales, standing alone, cannot establish a strong inference of scienter. Id. Given that this court did not change its

ruling regarding the witness statement, the ruling as to this issue also stands because collectively there is a strong inference of scienter.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Defendants' Motion for Reconsideration. Given the resolution of this motion, the stay on discovery is lifted. See Dkt. No. 95, Order Continuing Case Management Conference.

**IT IS SO ORDERED.**

Dated: December 15, 2014

						_____
						EDWARD J. DAVILA
						United States District Judge