KEKER & VAN NEST LLP
JOHN W. KEKER - # 49092
jkeker@kvn.com
MICHAEL D. CELIO - # 197998
mcelio@kvn.com
LAURIE C. MIMS - # 241584
lmims@kvn.com
CODY S. HARRIS - # 255302
charris@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:    415 397 7188

Attorneys for Defendants INTUITIVE SURGICAL, INC., LONNIE M. SMITH, GARY S. GUTHART, and MARSHALL L. MOHR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE INTUITIVE SURGICAL SECURITIES LITIGATION | Case No. 5:13-cv-01920 EJD (HRL)<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:     June 29, 2017<br>Time:    9:00 a.m.<br>Dept.:    Courtroom 4 - 5th Floor<br>Judge:   Hon. Edward J. Davila |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. BACKGROUND ....................................................................................................................2

III. ARGUMENT .........................................................................................................................4

    A. The Challenged Statements are inactionable. ............................................................4

        1. Plaintiffs fail to explain why each Challenged Statement is false or misleading. ......................................................................................................4

        2. *Omnicare* set a new standard for actionable opinion statements. ................4

        3. The challenged opinion statements fail under *Omnicare*. ..........................5

    B. Plaintiffs have failed to plead a strong inference of scienter. ..................................8

        1. Knowledge differs from intent. ....................................................................9

        2. The SACC's meager allegations of fraudulent intent are insufficient. ...................................................................................................11

        3. Plaintiffs' cannot rely on the core operations inference. ..........................12

        4. A "holistic" assessment of the facts supports dismissal. ...........................13

    C. The action must be stayed while Defendants' motion is pending. ........................15

IV. CONCLUSION....................................................................................................................15

1150223

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Berson v. Applied Signal Tech., Inc.*
527 F.3d 982 (9th Cir. 2008) .................................................................................................. 12

*In re Immune Response Sec. Litig.*
375 F. Supp. 2d 983 (S.D. Cal. 2005) ..................................................................................... 14

*In re Intuitive Surgical Sec. Litig.*
65 F. Supp. 3d 821 (N.D. Cal. 2014) ........................................................................................ 8

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*
697 F.3d 869 (9th Cir. 2012) ................................................................................... 6, 7, 8, 9, 15

*In re Sanofi Sec. Litig.*
87 F. Supp. 3d 510 (S.D.N.Y. 2015) ....................................................................................... 14

*In re Tesla Motors, Inc., Sec. Litig.*
75 F. Supp. 3d 1034 (N.D. Cal. 2014) ........................................................................... 7, 10, 11

*In re Vivendi, S.A. Sec. Litig.*
838 F.3d 223 (2d Cir. 2016) ...................................................................................................... 5

*Matrixx Initiatives, Inc. v. Siracusano*
563 U.S. 27 (2011) ....................................................................................................... 6, 10, 15

*Medina v. Clovis Oncology, Inc.*
2017 WL 530344 (D. Colo. Feb. 9, 2017) .............................................................................. 14

*Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund*
135 S. Ct. 1318 (2015) ..................................................................................................... *passim*

*Public Pension Fund Grp. v. KV Pharm. Co.*
2013 WL 1831427 (E.D. Mo. Apr. 30, 2013) ......................................................................... 14

*S. Ferry LP, No. 2 v. Killinger*
542 F.3d 776 (9th Cir. 2008) ............................................................................................. 12, 13

*Schueneman v. Arena Pharmaceuticals, Inc.*
840 F.3d 698 (9th Cir. 2016) ............................................................................................... 7, 15

*Se. Penn. Transp. Auth. v. Orrstown Fin. Serv., Inc.*
2015 WL 3833848 (M.D. Penn. June 22, 2015) ....................................................................... 5

*Tellabs Inc. v. Makor Issues & Rights, Ltd.*
551 U.S. 308 (2007) .................................................................................................................. 9

*Tongue v. Sanofi*
816 F.3d 199 (2d Cir. 2016) ...................................................................................................... 5

**Federal Statutes**

15 U.S.C. § 78u-4(b)(1) ................................................................................................................ 4

15 U.S.C. § 78u-4(b)(3)(B) .......................................................................................................... 15

**Other Authorities**

Brian T. Frawley et al., *Keeping Current: Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund: Liability for Opinions in Registration Statements*, 2014-APR, Bus. L. Today 1 (Apr. 2015) .................................................................................. 5

Jon Eisenberg, *1 Year Later: Omnicare's Effect on Opinion Liability*, Law360 (Mar. 23, 2016) ........................................................................................................................................ 5

*U.S. Supreme Court Issues Landmark Securities Decision*, Nat'l L. R. (Mar. 27, 2015) ................................................................................................... 5

## I. INTRODUCTION

Plaintiffs' Opposition to Defendants' Motion to Dismiss the Second Amended Class Action Complaint ("SACC") is best summed up as, "Nothing new to see here, please move along." According to Plaintiffs, this Court need do nothing more than re-issue its August 2014 Order granting in part and denying in part Defendants' prior motion to dismiss (the "August 2014 Order"), blind itself to intervening Supreme Court authority, ignore the differences between the two complaints, and allow this meritless case to proceed to trial. Never mind that Plaintiffs filed the SACC solely because the key allegations Plaintiffs presented to this Court the first time around—and on which this Court relied—were false. Never mind that the documents and testimony Plaintiffs obtained in discovery flatly contradict their allegations and arguments. Never mind that a Supreme Court opinion issued *after* this Court's August 2014 Order makes clear that the statements Plaintiffs challenge as misleading cannot support a fraud claim. And never mind that after full and complete fact discovery, Plaintiffs can point to nothing evincing a willful intent to defraud anyone. The Court should decline Plaintiffs' invitation and perform a careful review of the SACC in light of binding legal authority.

Such a review makes clear that the SACC must be dismissed for two independent reasons. *First*, the statements Plaintiffs have identified as misleading (the "Challenged Statements") are inactionable under the Private Securities Litigation Reform Act ("Reform Act"). Plaintiffs' opposition fails to proceed statement-by-statement, as the Reform Act requires, neglecting entirely to rebut Defendants' arguments regarding each specific Challenged Statement. In addition, contrary to Plaintiffs' arguments, the Supreme Court's opinion in *Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund* ("*Omnicare*"), 135 S. Ct. 1318 (2015), provided important new guidance regarding how properly to assess opinion statements in securities fraud cases. The vast majority of the Challenged Statements fail *Omnicare*'s test.

*Second*, Plaintiffs' scienter allegations fall far short of what is required to survive a motion to dismiss. Given that Plaintiffs rely heavily on documents and testimony produced in discovery, they can no longer hide behind speculation, innuendo, and legal inferences. The Court must consider the fact that Plaintiffs can point to no evidence of fraudulent intent on the part of

1  any of the individual defendants.  If there was any evidence of scienter, Plaintiffs should have
2  identified it.  They didn't, and can't.  The Court should dismiss the SACC.

## II.  BACKGROUND

By now the Court is well familiar with the general contours of this case.  But because the "Background" section in Plaintiffs' opposition brief (ECF 220 or "Opp.") plays fast and loose with key facts—and even contradicts the SACC itself—Defendants will correct some of Plaintiffs' more glaring misstatements.

To begin with, Plaintiffs claim they sought leave to amend "to conform the pleading to the evidence gathered during discovery, to remove allegations Plaintiffs were no longer relying upon, and to streamline the action for trial," adding that they removed certain confidential witness statements "in favor of stronger evidence produced in this action."  Opp. at 3–4 & n.5.  This assertion contains a conspicuous omission.  Plaintiffs sought leave to amend because (a) the confidential witness on whom they (and this Court) relied never made the statements Plaintiffs knowingly attributed to him, and (b) Defendants demanded Plaintiffs withdraw those statements under Rule 11.  *See* ECF 190, 191.  In a case Plaintiffs bill as one involving Defendants' supposedly intentional omissions, *Plaintiffs'* intentional omissions stand out.

Plaintiffs next assert that Defendants knew about an alleged "defect" in a surgical accessory called a "tip cover" in 2008, yet took no "substantive 'corrective action' until almost three years later, in October 2011."  Opp. at 5.  These statements are demonstrably false.  There was no "defect."  As Plaintiffs ought to know by now, no version of the tip cover was ***ever*** subject to a recall.  *See* Espinosa Depo. Tr. at 159:13–17 (incorporated by reference at SACC ¶ 80 n.61) (noting that the tip cover was subject to a "market withdrawal," not a recall).  Even so, in an effort to continuously improve its products, Intuitive opened a Corrective and Preventative Action ("CAPA") in 2008 regarding the low incidence of tip cover complaints, and was in routine communication with both the FDA and hospitals that experienced issues with the tip cover.  *See* SACC ¶¶ 53–54.

Plaintiffs further claim that when Intuitive sent customer letters regarding the tip cover to all *da Vinci* hospitals in October 2011, it "brazenly failed to notify customers" that the letters

concerned electrical "arcing," "burning," and other "dangers." Opp. at 5. This, too, is false. The letters expressly refer the reader to specific portions of the tip cover's Instructions for Use, which repeatedly note in bold letters that failing to follow the directions and precautions "will result in electrical arcs from the wrist and alternate site burns." ISRGCL50023601 at § 4-2 (referenced in the SACC at ¶ 144). The entire point of the letter was to reinforce these instructions.

Next, Plaintiffs state that none of the October 2011 letters was "publicly disclosed" and that "**no one except defendants and the hospitals** that received notice knew about the letters until the FDA issued its Warning Letter on July 16, 2013." Opp. at 5 (emphasis added). Where to begin with this false allegation? As Plaintiffs well know (and have alleged), Intuitive sent the tip cover letter to the FDA before sending it to customers. SACC ¶ 65. When the FDA official asked why the company did not consider the letter a "recall," Intuitive explained its reasoning clearly, transparently, and at some length:

> This letter is not a recall and has therefore not been reported to our local FDA district. The communications are reiterations of exiting product labeling, which we have found effective in reducing repeat reports of arcing often associated with accidentally damaged tip covers. All of the information contained in the letter has been shared with the FDA in previous communications. We felt that wider communication, even given the low occurrence of complaints on tip covers, was an important step for prevention of accidental damage and the use of excessive peak voltages. . . . We hope that this information answers your question, however, if it does not, please feel free to contact me at any time.[1]

The FDA said nothing and took no further action with respect to the letters at that time. Intuitive then sent the letters to foreign regulatory bodies, which **posted the letters on the Internet**. *See* ECF 135-1, Exs. 12, 13 (Internet archive documents showing that the customer letters were posted contemporaneously on multiple regulatory agencies' websites). And even if one were to ignore all of this evidence of disclosure, Plaintiffs would still be wrong that the letters remained a mystery until the July 2013 Warning Letter. Opp. at 5. The letters were mentioned in the publicly-available May 30, 2013 Form 483. *See* ECF 135-1, Exs. 37–38. Although these letters form the lynchpin of Plaintiffs' fraud allegations, their disclosure had no effect on the market. Remarkably, Plaintiffs have never alleged that the Form 483—which (again) disclosed these so-called "secret recalls"—constituted a corrective disclosure or affected Intuitive's stock

---

[1] *See* Reeves Ex. 141 (incorporated by reference at SACC ¶ 54 n.16).

price.  *See* Order Certifying Pl. Class at 23, ECF 204 (listing alleged corrective disclosures).

Although Defendants could go on, the point should be clear.  If Plaintiffs are going to rely on documents and testimony obtained in discovery to support their allegations, they should avoid misleading the Court by ignoring documents and testimony that directly contradict their claims.

## III.   ARGUMENT

### A.   The Challenged Statements are inactionable.

#### 1.   Plaintiffs fail to explain why each Challenged Statement is false or misleading.

At no point in their opposition brief do Plaintiffs perform the analysis the Reform Act requires: explaining why each Challenged Statement is false and misleading.  *See* 15 U.S.C. § 78u-4(b)(1).  Defendants' motion to dismiss (ECF 215 or "Mot.") proceeded statement-by-statement, explaining why none supports a fraud claim.  *See* Mot. at 10–16 & Attachment A.  Remarkably, Plaintiffs offer no rebuttal at all to Defendants' arguments, opting instead to block quote the Court's August 2014 Order.  *See* Opp. at 16.  The lack of a responsive argument is telling.  Plaintiffs fail to focus on the Challenged Statements because doing so dooms the SACC.

For example, Plaintiffs make no attempt whatsoever to explain how Challenged Statement A4 is actionable.  *See* Mot. at 13–14.  Having nothing to do with Intuitive or the *da Vinci* system, Statement A4 discusses minimally invasive surgery ("MIS") in general—and accurate—terms.  *Id*.  Plaintiffs are likewise silent regarding Statement C, Intuitive's March 13, 2013 Press Release, which, as Defendants explained, was not false even in hindsight.  *See* SACC ¶ 239; Mot. at 16.  Plaintiffs' failure even to attempt to defend these statements necessitates their dismissal.

#### 2.   *Omnicare* set a new standard for actionable opinion statements.

The other Challenged Statements fare no better.  As Plaintiffs concede, the majority of them are statements of opinion or belief.  *See* Opp. at 15 n.12; Mot. at 10–13.  Thus, to be actionable, these statements must pass muster under *Omnicare*, which the Supreme Court emphasized is "no small task for an investor."[2]  135 S. Ct. at 1332.  Because Plaintiffs are not up to that task, they resort to arguing that *Omnicare* broke "no new ground" in securities fraud cases,

---

[2] Plaintiffs agree that *Omnicare* applies to Section 10(b) cases.  *See* Opp. at 13 n.8.

allowing the Court to simply re-issue its August 2014 order and be done with it.  Opp. at 14.

Plaintiffs are wrong.  *Omnicare* did not leave the law on opinion statements where it found it.  In fact, legal observers immediately heralded *Omnicare* as a "landmark securities decision" that "provide[d] a welcome clarification of the standard of liability for statements of opinion."  Mary P. Hansen & Tracy S. Combs, *In Omnicare, U.S. Supreme Court Issues Landmark Securities Decision*, Nat'l L. R. (Mar. 27, 2015), *available at* http://www.natlawreview.com/article/omnicare-us-supreme-court-issues-landmark-securities-decision.  The American Bar Association agreed, explaining that "[t]he Court's guidance [in *Omnicare*] is significant in light of the critical role of pleading standards and motions to dismiss in securities litigation."  Brian T. Frawley et al., *Keeping Current: Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund: Liability for Opinions in Registration Statements* at 3, 2014-APR, Bus. L. Today 1 (Apr. 2015).  And one year after the Court issued its opinion, a third observer put it succinctly: "*Omnicare* was a departure from existing law."  Jon Eisenberg, *1 Year Later: Omnicare's Effect on Opinion Liability*, Law360 (Mar. 23, 2016); *see also Se. Penn. Transp. Auth. v. Orrstown Fin. Serv., Inc.*, 2015 WL 3833848, at *14 (M.D. Penn. June 22, 2015) (noting that "[c]ourts have long grappled with the application of the 'materially false or misleading statement' standard as it applies to statements of opinion or beliefs," and that *Omnicare* "clarified the issue").[3]  Put simply, the Court must scrupulously apply *Omnicare* to the Challenged Statements identified in the SACC.

### 3. The challenged opinion statements fail under *Omnicare*.

*Omnicare* holds that opinion statements may be actionable in only two circumstances: (1) when the speaker did not actually hold the stated belief, or (2) when the opinion statement omitted a material fact that rendered it misleading to an ordinary investor.  135 S. Ct. at 1327–28.

---

[3] To support their argument that *Omnicare* announced nothing new about opinion-statement liability, Plaintiffs point to a Second Circuit case, *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016).  But *Vivendi*'s discussion regarding *Omnicare*'s effect on opinion statements was dicta; the court determined that the defendants' argument regarding opinion statements was "not preserved for appellate review."  *Id.* at 243.  Moreover, the Second Circuit in no way concluded (even in dicta) that *Omnicare* broke no new ground.  In fact, that court has held—in a case Plaintiffs ignore—that *Omnicare*'s "holding altered the standard" regarding opinion statements in that circuit.  *Tongue v. Sanofi*, 816 F.3d 199, 209 (2d Cir. 2016).

1150223

Importantly, Plaintiffs disclaim any attempt to satisfy *Omnicare*'s first prong, arguing only that they satisfy the second one. *See* Opp. at 15. In other words, they concede that Defendants sincerely believed that *da Vinci* is safe, effective, and provides benefits to patients—a concession fatal to Plaintiffs' scienter argument. *See infra* at 9.

Plaintiffs fail *Omnicare*'s second prong as well. Recall what the Challenged Statements say: "We believe that this new generation of surgery . . . combines the benefits of minimally invasive surgery (MIS) for patients with the ease of use, precision, and dexterity of open surgery." SACC ¶ 224(a). "We believe that da Vinci Surgery continues to be a safe and effective surgical method." *Id.* ¶ 245(b). Plaintiffs contend that three alleged omissions render those opinion statements false: (1) misreporting of MDRs; (2) the 2011 customer letters; and (3) failure to disclose "specific information" about products liability suits. Opp. at 12. None of these allegedly omitted facts (assuming for present purposes they *are* facts) renders any of the Challenged Statements misleading.

Relevant caselaw eviscerates Plaintiffs' liability theory. *Omnicare* affirms that a statement is not misleading simply because the speaker "knows, but fails to disclose some fact pointing the other way." 135 S. Ct. at 1329. Plaintiffs simply ignore this portion of *Omnicare*, just as they ignore the many caveats and disclosures Intuitive provided in its statements and SEC filings, and which a reasonable investor would understand. *See* Mot. at 12. Plaintiffs also analogize their case to *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011), arguing that like the defendants in *Matrixx*, Intuitive knew about and actively concealed safety issues, rendering their statements about safety actionable. Opp. at 23. But Plaintiffs misread *Matrixx*. In fact, they make the same error plaintiffs made in *In re Rigel Pharmaceuticals, Inc. Securities Litigation*, 697 F.3d 869 (9th Cir. 2012)—namely, assuming that "once a company chooses to disclose any safety information, it must disclose all material information regarding safety." *Id.* at 880 n.8. As the Ninth Circuit explained, *Matrixx* "made it clear that not all adverse events would be material and, more importantly, that not all material adverse events would have to be disclosed." *Id.* Accordingly, "a company is not required to disclose every safety-related result . . . even if the company discloses some safety-related results and even if investors would

consider the omitted information significant." *Id.* *Rigel*'s reasoning applies will full force here.

The Ninth Circuit's recent opinion in *Schueneman v. Arena Pharmaceuticals, Inc.*, 840 F.3d 698 (9th Cir. 2016), strongly supports Defendants' argument. There, plaintiffs alleged that a weight-loss drug manufacturer improperly withheld information about a clinical study involving rats (the "Rat Study"), the troubling results of which caused the FDA to delay approving the drug. *Id.* at 702–03. The key fact—and the one missing here—is that the manufacturer chose to tell the market about animal studies performed, while failing to disclose the Rat Study or its results. *Id.* Finding the company's statements actionable (albeit in a "close case"), the Ninth Circuit explained that "**once they raised the animal studies**, Defendants were obligated to disclose the Rat Study's existence to the market." *Id.* at 704 (emphasis added).

Plaintiffs have no answer to this fundamental pleading problem. They have alleged no statement in which Defendants chose to speak about the tip cover accessory's safety record. They have alleged no statement discussing the Monopolar Curved Scissors ("MCS") instrument, or even electrocautery devices generally. All they point to are near-boilerplate statements affirming that the company believes that *da Vinci* surgery is a "new generation of surgery" that is safe, effective, and beneficial—all self-evident notions confirmed by the fact that the FDA allows *da Vinci* on the market. By opining only on *da Vinci*'s general safety and efficacy, Defendants did not assume the obligation "[to] disclose all material information regarding safety." *Rigel*, 697 F.3d at 880 n.8. The SACC founders on these shoals.

What's more, all three allegedly omitted categories of information were actually public—a fact this Court can and should consider on a motion to dismiss. *See In re Tesla Motors, Inc., Sec. Litig.*, 75 F. Supp. 3d 1034, 1046 (N.D. Cal. 2014) (noting, while dismissing a securities fraud case, that an allegedly omitted fact was widely and contemporaneously available on YouTube). First, it is undisputed that a simple search of the FDA's publicly available MAUDE database generates tip cover MDRs dating back to 2008 and through the Class Period. There was no concerted effort to hide such MDRs. Second, the 2011 customer letters were likewise publicly available. *See supra* at 3. Third, Plaintiffs' references to products liability lawsuits and tolling agreements are red herrings. The Court previously *dismissed* Plaintiffs' claims that Intuitive

failed adequately to disclose details relating to product liability suits, holding that "omitting specific details such as the number of products liability lawsuits made against them was not" an actionable omission. *In re Intuitive Surgical Sec. Litig.*, 65 F. Supp. 3d 821, 836 (N.D. Cal. 2014). Plaintiffs nonetheless try to shoehorn those dismissed claims into their case, faulting Defendants for failing to disclose "how many tolling agreements had been entered into and the nature of the claims." Opp. at 6. Plaintiffs cannot get in through the backdoor what this Court barred from the front. Plaintiffs also refer to tolling agreements Intuitive signed with putative claimants as "secret tolling agreements." *Id.* at 23. Like the so-called "secret recalls," these agreements were not secret; the company disclosed them in its April 2013 10-Q. SACC ¶ 80. And most tellingly, Plaintiffs have never alleged that the tolling agreements' disclosure had any effect on the stock price.

In sum, Defendants had no obligation to disclose the information Plaintiffs allege was withheld—beyond the fulsome public disclosures they made—and none of the Challenged Statements are actionable under *Omnicare*.[4]

**B.   Plaintiffs have failed to plead a strong inference of scienter.**

Defendants' motion makes a simple argument regarding scienter: because fact discovery is over, Plaintiffs ought to be able to point to concrete evidence that gives rise to a strong inference that Defendants *intended to defraud the investing public*. Instead, Plaintiffs point to facts that, they say, show *knowledge* of information that was allegedly withheld. But knowledge is *not equivalent to scienter*. Because there exists no "affirmative duty to disclose any and all material information," *Rigel*, 697 F.3d at 880 n.8, Plaintiffs' burden is to show that the individual defendants *intended to mislead*—not merely that they (allegedly) remained silent. For the purposes of this motion, Defendants will indulge in the fictions that the information was not disclosed.[5] Even if that were true, it is not enough.

---

[4] The few Challenged Statements that are not statements of opinion are also inactionable for the reasons stated in the Motion and its attached chart. *See* Mot. at 10–16 & Attachment A. Because Plaintiffs' opposition makes no effort to rebut Defendants' arguments regarding those specific statements, Defendants see no reason to repeat their arguments in this reply.

[5] In every case the information *was* public, and Plaintiffs are well aware of this fact; their allegations to the contrary may be the subject of further motion practice at an appropriate time.

The "strong inference" of scienter Plaintiffs must plead "must be cogent and compelling, thus *strong in light of other explanations*." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007) (emphasis added). This is an inherently comparative inquiry; the Court must consider not only inferences favoring the plaintiff, but also "plausible, nonculpable explanations for the defendant's conduct." *Id.* The obvious nonculpable explanation here is that the Defendants honestly believed in their opinion that the *da Vinci* was safe and effective, notwithstanding the supposed issues identified. Crucially, Plaintiffs have conceded this point—they make no effort to justify any of the Challenged Statements under *Omnicare*'s first prong, which tests whether the speaker subjectively believed the stated opinion. *See supra* at 6; Opp. at 15. This concession drastically undermines any inference of scienter—Defendants could hardly have been intentionally defrauding investors when they honestly believed their statements were accurate, and well-supported by published studies.

### 1. Knowledge differs from intent.

The vast majority of Plaintiffs' scienter argument focuses on Defendants' knowledge of or exposure to the information allegedly withheld from the market. *See* Opp. at 17–22. The argument is puzzling, since Defendants' motion nowhere argues that the individual defendants lacked awareness regarding their products' performance. On the contrary, Defendants argued (for example, as to Mr. Mohr) that "there is nothing alleged other than *knowledge*." Mot. at 21. But it is well-established in this Circuit that knowledge of a material fact does not equate to scienter.

Again, the Ninth Circuit's opinion in *Rigel* is instructive. There, the plaintiffs accused a drug manufacturer of withholding certain clinical trial data related to an arthritis drug, specifically results showing that certain patients experienced hypertension. *Rigel*, 697 F.3d at 883–84. Affirming dismissal of the complaint, the Ninth Circuit held that even if the plaintiffs had "adequately pled that all of the defendants had knowledge of the detailed clinical results at the time the allegedly false statements were made, such an allegation does not support a strong inference of scienter." *Id.* 883. Knowledge, the Ninth Circuit held, is not enough—a plaintiff must assert that the defendants "*believed* that they made false or misleading statements." *Id.* (emphasis added). Here, Plaintiffs have admitted they have no evidence of any such belief.

Again, Plaintiffs look to *Matrixx* for support, but *Matrixx* in no way aids their scienter argument. There, the Court held that there is no requirement "that . . . manufacturers must disclose all reports of adverse events. Adverse event reports are daily events in the pharmaceutical industry; in 2009, the FDA entered nearly 500,000 such reports into its reporting system." *Matrixx*, 563 U.S. at 43. Thus, a company may remain silent about adverse information without giving rise to *any* inference of scienter. What is forbidden—and what Plaintiffs have failed to plead here—is information creating a strong inference that Defendants made *intentional false statements*. In *Matrixx*, the company issued press releases saying that public allegations that the drug it was marketing was causing people to lose their sense of smell were "unfounded and misleading," and that "[i]n no clinical trial" had the drug caused "a single report of lost or diminished [smell]." *Id.* at 34. But because the company was in fact aware of evidence directly at odds with those specific statements, the company's statement that it was unaware of a "single report" of diminished smell gave rise to an inference of scienter. *Id.* at 49–50. In this case, had Dr. Guthart told investors, "We are unaware of a single complaint regarding the tip cover," Plaintiffs could plausibly rely on *Matrixx*. But the Court will search the SACC in vain for any such statement by Defendants.

In contrast to *Matrixx*, the five categories of knowledge alleged here are consistent with honest behavior. Plaintiffs allege that Defendants (1) discussed product safety with the FDA; (2) attended meetings in which Intuitive reviewed data regarding the safety of its products; (3) discussed the safety of the tip cover accessory with its Board of Directors; and (4) sold stock that they were granted as part of their compensation. Opp. at 19–22.[6] None of these actions gives rise to any inference of intentionally wrongful conduct. Indeed, all of these actions are routine in a medical device company and most are required by law.

This is why Judge Breyer's opinion in *Tesla* is so directly on point. As set forth in Defendants' opening brief, investors sued Tesla over broad statements regarding Tesla's safety record—including that Tesla makes "the Safest Car in America"—while failing to disclose tests showing that the cars' electric batteries were defective and prone to catching fire. *Tesla*, 75 F.

---

[6] The fifth allegation, relating to the insurance litigation, is discussed in section 2, below.

Supp. 3d at 1044. Judge Breyer dismissed the complaint in its entirety. Carefully reviewing each challenged statement one-by-one, the court concluded that Tesla was under no obligation to disclose test results, even when the company's CEO specifically discussed battery fires. *See id.* at 1046. Here, the company **never chose to speak about the tip cover**. Scienter cannot flow from (alleged) nondisclosure where there is no duty to disclose.[7]

### 2.   The SACC's meager allegations of fraudulent intent are insufficient.

Although the bulk of Plaintiffs' opposition is directed to allegations of knowledge, they do identify three actions that they claim are intentionally wrongful: (1) sending letters to hospitals about the tip cover; (2) entering into tolling agreements regarding product liability claims, and (3) allegedly underreporting Medical Device Reports. Opp. at 23. These are the same categories of information that Plaintiffs claim were improperly omitted from the Challenged Statements. *See* Opp. at 12. They fare no better as indications of scienter than they did as indications of falsity.

First, Plaintiffs argue that Intuitive's decision to send a letter to every hospital known to have a *da Vinci* about proper instrument usage shows intentional misconduct. This allegation is completely backwards; *not* sending the letter would be indicative of scienter. And, as discussed above, Plaintiffs well know that the letter was contemporaneously posted on the Internet. In fact, Plaintiffs conceded that point at class certification, arguing only that foreign websites don't count. ECF 140 at 11 n.13. Whatever the merits of that proposition for class-certification purposes, it cannot possibly support an inference of scienter. The last thing a person seeking to keep something secret would do is put it in writing and make it available worldwide.

Next, Plaintiffs argue that separate litigation between Intuitive and its insurers somehow gives rise to an inference of intentional misconduct. Note, however, that Plaintiffs' cited facts come from an order *denying* the insurer's motion for summary judgment. *See* Opp. at 22. And to be clear, the allegation in the insurance litigation is **not** that Intuitive kept information regarding product liability claims secret, but rather whether that information was disclosed soon enough to

---

[7] Plaintiffs' halfhearted effort to distinguish *Tesla* falls flat. Plaintiffs argue that Intuitive failed to disclose "much more serious recalls demonstrating a potential Tip Cover defect" than the battery fires at issue in *Tesla*. Opp. at 16 n.14. This argument is frankly bizarre. As Plaintiffs well know, **the tip cover was never recalled**.

trigger policy coverage. Even in the insurers' view, the information was disclosed well before the end of the Class Period in this case. Moreover, it simply does not follow that a contract dispute about the parties' obligations under an insurance policy says anything about a required securities disclosure. Indeed, Plaintiffs' allegations underscore the lack of any connection between the products liability claims and Plaintiffs' securities fraud theory. Plaintiffs argue that the existence of tolling agreements and the number of products liability claims were so important to investors that a short delay in disclosing them demonstrates both falsity and scienter. And yet, Plaintiffs have never argued that those disclosures affected the stock price. *See* ECF 204 at 23.

Finally, Plaintiffs allege that Intuitive was underreporting MDRs, thereby painting a false picture regarding patient safety. But the very document on which they rely clearly states that Intuitive's voluntary decision to adjust its MDR reporting policies—a decision the FDA later determined was unnecessary and led to *over-reporting*—has nothing to do with injuries. *See* SACC ¶¶ 8, 100 n.79, 239 (citing March 13, 2013 Press Release). Rather, the MDR increase related solely to *non-injury* malfunctions. *See id*.

### 3. Plaintiffs' cannot rely on the core operations inference.

In a last ditch effort to plead scienter, Plaintiffs argue that their allegations raise "pervasive safety issues" of "such prominence" that it would be "absurd" not to infer scienter. Opp. at 22. It is far from clear whether Plaintiffs can rely on the "core operations" inference in this manner *after having taken discovery*. As Plaintiffs use it here, the core operations inference is a *substitute* for particularized allegations of *knowledge*. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785–86 (9th Cir. 2008) ("[S]uch allegations may conceivably satisfy the PSLRA standard . . . . without accompanying particularized allegations, in rare circumstances where the nature of the relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter."). But, for purposes of this motion, knowledge is uncontested. And with discovery over, this legal crutch has no application.

In any event, the core operations inference applies only in rare instances in which a company fails to disclose a fact of such importance that it threatens the entire company. *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987–89 (9th Cir. 2008). Here, the error rate

for tip cover malfunctions was 0.003%.  *See* Mot. at 13.  The injury rate was even lower.  Of course, the company was proactively striving to drive that number as close to zero as possible—a tough task given the vagaries of surgery.  *See* Guthart Depo. Tr. at 110:23–111:1 ("Gen 1 tip cover worked extremely well.  And in fact . . . the rates of issue are exceptionally low.  But we wanted to make it more robust, and so we did."); Brogna Depo. Tr. at 160:22–23 ("As I said, very low frequency.  Clearly traceable to use patterns.  But we felt deeply obligated to even eliminate those rare occurrences.").[8]  To argue, as Plaintiffs do, that a 0.003% failure rate in a single accessory—one that was never subject to recall—raises a strong inference of scienter because it threatened "the Company's profitability," Opp. at 23, is utter nonsense.

### 4. A "holistic" assessment of the facts supports dismissal.

Defendants agree with Plaintiffs about one thing: the Court must "consider the totality of the circumstances" rather than looking at each scienter allegation separately.  *S. Ferry*, 542 F.3d at 784.  In this case, the totality of the circumstances supports the SACC's dismissal.  Indeed, because this case has been pending since 2013, this is an unusual motion to dismiss: not only does the Court have the benefit of those discovery documents Plaintiffs have chosen to cite, but it also has the benefit of the three years that have passed since this case was filed.  Both the documents and judicially-noticeable events over the past three years contribute to the "totality of the circumstances" that demand dismissal.

First, as Defendants' motion made clear, the "totality" of the evidence shows that Plaintiffs have managed to develop no real evidence of scienter at all.  Not only is there no smoking gun, there isn't even smoke.  Plaintiffs can point to no admission at any of the many depositions, have identified no emails authored by any defendant suggesting wrongdoing, and can produce no disgruntled former employees pointing fingers.  Given the broad scope of discovery in this case—literally hundreds of thousands of pages of documents and numerous depositions—it is remarkable that they cannot find a single example of someone saying something that can be twisted or taken out of context.  And the Court should bear in mind that for two of the three

---

[8] The Brogna Depo. Tr. is incorporated by reference in the SACC at ¶ 53 n.11.  The Guthart Depo. Tr. is incorporated by reference in the SACC at ¶ 202 n.118.

individual defendants, the only allegedly false or misleading statements with which they are connected are those in Intuitive's routine SEC filings. While such filings *can be* the basis for liability,[9] it is remarkable that after full discovery, they can point to *nothing* beyond stock sales.

Second, and more importantly, Plaintiffs want the Court to ignore a broader reality when it performs its holistic review: Intuitive Surgical is an incredible success story. The FDA believes that the *da Vinci* is safe and effective and it has *never taken any enforcement action against Intuitive*. This is undeniably relevant in a case where the allegedly misleading information concerns whether the device is safe and effective. *See In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 524 (S.D.N.Y. 2015) (noting that the FDA eventually cleared the drug at issue in the lawsuit, even though the approval post-dated the lawsuit). In fact, the cases Plaintiffs rely on are so dramatically distinguishable in this regard that they prove Defendants' point. Plaintiffs' cases concern stocks that cratered, companies that went bankrupt, CEOs that were fired, drugs that proved ineffective and that the FDA declined to approve, and so on. *See, e.g.*, *Medina v. Clovis Oncology, Inc.*, 2017 WL 530344 (D. Colo. Feb. 9, 2017); *Public Pension Fund Grp. v. KV Pharm. Co.*, 2013 WL 1831427 (E.D. Mo. Apr. 30, 2013); *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983 (S.D. Cal. 2005). None of that is present here—not even close.

Surgeons and patients clearly believe that the *da Vinci* is safe and effective: sales have skyrocketed and the number of procedures performed has grown exponentially. The FDA has taken no enforcement action against Intuitive. Investors have continued to demonstrate their confidence in *da Vinci*'s safety and efficacy; Intuitive's stock stands at over $740 per share, almost double what it was at the end of the Class Period. The growth in Intuitive's share price exceeds Google's. An investor who bought at the class period *high* would still have made a massive profit by holding on to the stock. These facts are judicially noticeable and undisputed. What's more, Intuitive's management team has remained consistent. Dr. Guthart remains the company's CEO. Mr. Mohr is CFO, and Mr. Smith retains his post as Chairman.

---

[9] The opposition invents and attacks a strawman when it claims that Defendants argued "that Plaintiff's scienter allegations concerning Mohr and Smith . . . should be disregarded because they only signed SEC filings." Opp. at 24. Defendants made no such argument. Rather, Defendants argued that the scienter analysis must proceed defendant-by-defendant—something Plaintiffs still refuse to do—and that the case against those two Defendants is particularly weak.

These are not the sorts of facts one typically sees in a meritorious securities fraud case. Plaintiffs' case has always been one of fraud by hindsight. With three years gone by, that hindsight looks blurrier all the time.

### C. The action must be stayed while Defendants' motion is pending.

Plaintiffs complain that Defendants' motion delays the case. Opp. at 25. But Defendants are not to blame for the results of Plaintiffs' litigation strategy. *Plaintiffs* decided to amend their complaint after the Charles Endweiss debacle. Defendants *opposed* that motion. When the Court granted Plaintiffs the leave they sought, Defendants obtained the right to seek the SACC's dismissal. The Reform Act stays the case while that motion is pending. *See* 15 U.S.C. § 78u-4(b)(3)(B). Plaintiffs nowhere argue that the Reform Act's mandatory stay is inapplicable.

When the parties last appeared before this Court, the Court first said it wished to "push the case forward," before immediately stating, "maybe that is not the right word." Trial Setting Conf. Tr. at 4 (Dec. 15, 2016). The Court clarified that its wish was to allow the parties "to proceed in your case for the benefit of your clients." *Id.* The instant motion is consistent with the Court's directive. The Challenged Statements at issue—which will be the focus of any trial in this case—are not legally actionable under binding precedents such as *Omnicare*, *Matrixx*, *Schueneman*, and *Rigel*. Defendants must preserve these issues for the Ninth Circuit's review, if necessary.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

Dated: March 2, 2017                                   KEKER & VAN NEST LLP

                                                       By: /s/ *Michael D. Celio*
                                                       JOHN W. KEKER
                                                       MICHAEL D. CELIO
                                                       LAURIE C. MIMS
                                                       CODY S. HARRIS

                                                       Attorneys for Defendants INTUITIVE SURGICAL, INC., LONNIE M. SMITH, GARY S. GUTHART, and MARSHALL L. MOHR