United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE INTUITIVE SURGICAL SECURITIES LITIGATION | Case No. 5:13-cv-01920-EJD<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT; DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION RE CLASS CERTIFICATION**<br><br>Re: Dkt. No. 215, 227 |

## I. INTRODUCTION

This is a securities fraud class action suit. Presently before the Court is Defendants' motion to dismiss the Second Amended Complaint ("SAC"). The Court finds it appropriate to take the motion under submission for decision without oral argument pursuant to Civil Local Rule 7-1(b). Based upon all pleadings filed to date, the Court DENIES Defendants' motion.

## II. BACKGROUND

Intuitive Surgical, Inc. ("Intuitive") is a biomedical corporation that designs, manufactures, and sells da Vinci Surgical Systems ("da Vinci"), its sole product and primary source of revenue. Da Vinci is a robotic surgery system consisting of three or four robotic arms, depending on the model, which performs laparoscopic surgeries through tiny incisions. Surgeons sitting at a console away from the patient are able to look through a viewfinder and use two joystick-like gadgets to control the robotic arms to perform surgery. Plaintiffs purchased or otherwise acquired

Intuitive stock during the period between February 6, 2012 and July 18, 2013 (the "Class Period"). Plaintiffs allege that during the Class Period, Defendants made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading regarding the safety of da Vinci.

In August of 2014, the Court upheld the sufficiency of Plaintiffs' falsity and scienter allegations in the Amended Complaint. Defendants filed an answer and a motion for reconsideration, which the Court denied. In doing so, the Court reaffirmed its previous ruling that Plaintiffs had adequately alleged actionable false or misleading statements regarding da Vinci's safety and scienter. Approximately two years later, Plaintiffs sought leave to amend their complaint to conform the pleading to the evidence gathered during discovery and to remove allegations attributed to a confidential witness after the witness denied making the statements. Defendants moved to strike the Amended Complaint. The Court granted the motion to amend and denied the motion to strike.

Despite the Court's previous rulings affirming the sufficiency of Plaintiffs' allegations at the pleading stage, Defendants move to dismiss the SAC, contending once again that Plaintiffs have failed to plead actionable misstatements or omissions, and have failed to allege scienter. Defendants' motion is predicated primarily upon the Supreme Court's opinion in Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund, 135 S.Ct. 1318 (2015).

### III. STANDARDS

Federal Rule of Civil Procedure 8 requires that a complaint contain a short and plain statement showing the pleader is entitled to relief. A motion to dismiss under Rule 12(b)(6), Fed.R.Civ.P., "tests the legal sufficiency" of the complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A court may dismiss a claim for "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988). In reviewing the sufficiency of a claim, the court accepts as true all of the plaintiff's allegations and construes them in the light most favorable to the plaintiff. In re

CASE NO.: 5:13-CV-01920-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

2

Gilead Sciences Sec. Litig., 536 F.3d 1049, 1055 (9th Cir. 2008).

Fraud cases are also governed by the heightened pleading standard of Rule 9(b), Fed.R.Civ.P. A plaintiff averring fraud must plead with particularity the circumstances constituting fraud. Fed.R.Civ.P. 9(b). Securities fraud claims must also satisfy the pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"), which states that the complaint "shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). The PSLRA also requires a plaintiff to state with particularity facts giving rise to a strong inference of a defendant's scienter. See 15 U.S.C. §78u-4(b)(2).

## IV. DISCUSSION

### A. The Alleged Misstatements or Omissions

Defendants contend that the statements at issue must be dismissed because they are not "misleading as to a material fact." Basic v. Levinson, 485 U.S. 224, 238 (1988). In Omnicare, the Supreme Court instructed that opinion statements can serve as the basis of a securities fraud claim under two circumstances. The first is when the speaker did not "actually hold the stated belief." Omnicare, 135 S.Ct. at 1326. Thus, for example, an opinion statement such as, "I believe our TVs have the highest resolution available on the market" would be an actionable false statement if the speaker knew that the company's TV only placed second (assuming the misrepresentation were material). Id. The second is when the opinion statement omitted a material fact that rendered it "misleading to an ordinary investor," even if it was "literally accurate." Id. 1327-28. Thus, for example, an opinion statement such as, "[w]e believe our conduct is unlawful," could be misleadingly incomplete if the speaker made the statement without having consulted a lawyer. Id. at 1328. The Court reasoned, "[i]n the context of the securities market, an investor, though recognizing that legal opinions can prove wrong in the end, still likely expects such an assertion to

CASE NO.: 5:13-CV-01920-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

3

rest on some meaningful legal inquiry –rather than, say, on mere intuition, however sincere. Similarly, if the issuer made the statement in the face of its lawyers' contrary advice, or with knowledge that the Federal Government was taking the opposite view, the investor again has cause to complain: He expects not just that the issuer believes the opinion (however irrationally), but that it fairly aligns with the material facts about the issuer's inquiry into or knowledge concerning a statement of opinion." Id. at 1328-1329. Therefore, to plead fraud based on an opinion statement under an omissions theory, a plaintiff must "identify particular (and material) facts going to the basis for the issuer's opinion – facts about the inquiry the issuer did or did not conduct or the knowledge it did or did not have – whose omission makes the opinion statement at issue misleading to a reasonable person reading the statement fairly and in context." Id. at 1332.

This Court has already ruled that the alleged statements of opinion in the Amended Complaint are sufficiently pled. The SAC is based on the very same alleged statements of opinions. Upon reexamination of the alleged statements with the benefit of the Omnicare decision, the Court reaffirms its prior determination that Plaintiffs' allegations are sufficient at the pleading stage. Plaintiffs' allegations fall within the second category of Omnicare statements of opinion, namely those that allegedly omit material facts that render the statements misleading to an ordinary investor. In the SAC, Plaintiffs allege that Defendants made several positive opinion statements regarding da Vinci's safety and efficacy: "[w]e believe that it combines the benefits of minimally invasive surgery (MIS) for patients with the ease of use, precision, and dexterity of open surgery"; "[w]e believe that da Vinci continues to be a safe and effective surgical method"; "[d]espite a concerted effort by vocal critics of robotic surgery, support remains strong among patients, surgeons and hospitals . . . . da Vinci has clinically proven benefits in offering a minimally invasive option to a broader group of patients than traditional technologies"; and da Vinci "has proven safety, efficacy, economic and ergonomic benefits when compared to open surgical procedures it is replacing." SAC, ¶¶224, 227, 241, 242, 245(a), 245(b).

Plaintiffs allege that the opinion statements regarding da Vinci's safety and efficacy were

misleading because they omitted numerous material facts. Among other things, Plaintiffs allege that Defendants misclassified numerous adverse event reports of serious injury under the "other" category instead of in the "serious injury" category and categorically suppressed thousands of medical device reports ("MDRs") by failing to report them to the FDA database. It is plausible that a reasonable investor would find that the existence and misclassification of the MDRs constitute material information. Further, it is plausible that a reasonable investor would find that the statements of opinion regarding da Vinci's safety and efficacy did not "fairly align[]" with the unreported and misclassified MDRs.

Plaintiffs also allege that Defendants failed to disclose the existence or the nature of the corrective letters sent out to hospitals in October of 2011 regarding a tip cover defect that caused serious injuries. Further, Plaintiffs allege that Defendants failed to disclose specific information about the number and nature of product liability suits Intuitive faced during the Class Period. It is plausible that a reasonable investor would find information about the corrective letters and product liability suits material. In addition and contrary to Defendants' assertions, it is entirely plausible that a reasonable investor would find the information about corrective letters and product liability suits rendered a statement like, "[w]e believe that DaVinci continues to be a safe and effective surgical method" materially misleading.

Citing to In re Rigel Pharmaceuticals, Inc. v. Securities Litigation, 697 F.3d 869 (9th Cir. 2012), Defendants argue that they were not required to disclose all material information regarding safety. Defendants are correct. The Rigel court also stated, however that the defendant in that case was not required to disclose all material information regarding safety "as long as the omissions do not make the actual statements misleading." Id. at 880 n.8. For the reasons already discussed above, it is plausible that a reasonable investor would find that the omitted information regarding MDRs, corrective letters and product liability suits, rendered the statements of opinion misleading.

Defendants next contend that the alleged statements of opinion are not misleading when placed in a "broader frame" that includes several other public statements Intuitive made warning

CASE NO.: 5:13-CV-01920-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

5

shareholders that patient injuries, or even deaths, are inherent to the medical device industry; that Intuitive's business could be affected if DaVinci were to cause injury or death; and that defects in the design or manufacture of our products might necessitate a product recall. At the pleading stage, however, the allegations in the complaint are accepted as true and all reasonable inferences are drawn in Plaintiffs' favor. See In re Tesla Motors, Inc. Sec. Litig., 75 F.Supp.3d 1034 (N.D. Cal. 2014) (citing Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987). Applying these standards, the Court finds Plaintiffs' allegations of materially misleading statements of opinion are adequately pled.

B. Allegations of Scienter

Defendants contend that the SAC must be dismissed because Plaintiffs have failed to plead facts giving rise to a strong inference of scienter. This Court has already determined that Plaintiffs' allegations of scienter in the Amended Complaint are sufficient, and Plaintiffs contend that the SAC allegations are even stronger because the SAC now incorporates evidence developed through discovery that shows Defendants knew about the safety problems affecting da Vinci and intentionally or reckless concealed them from investors.

The PSLRA requires a plaintiff to "state with particularity facts giving rise to a strong inference that the defendant acted with the required statement of mind." 15 U.S.C. §78u-4(b)(2). "A defendant is liable under Section 10(b) and Rule 10b-5 when he acts with scienter, a 'mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness.'" City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Tech., 856 F.3d 605, 619 (9th Cir. 2017) (quoting Schueneman v. Arena Pharm., Inc., 840 F.3d 698, 705 (9th Cir. 2016). "Deliberate recklessness is 'an *extreme* departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it.'" Schueneman, 840 F.3d at 705 (italics in original). In ruling on a motion to dismiss, the inquiry is "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual

CASE NO.: 5:13-CV-01920-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

6

allegation, scrutinized in isolation, meets that standard." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 310 (2007) (italics in original). "A securities fraud complaint will survive a motion to dismiss under Rule 12(b)(6) 'if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" New Mexico State Investment Council v. Ernst & Young LLPU, 641 F.3d 1089, 1095 (9th Cir. 2012) (quoting Tellabs, 551 U.S. at 324).

Applying the standards above, the Court finds that the SAC contains sufficient allegations, which when taken collectively, give rise to a strong inference of scienter. Plaintiffs allege that Defendants, particularly Smith and Guthart, received communications with the FDA regarding injuries resulting from the da Vinci Tip Cover. SAC, ¶¶188-189. Plaintiffs allege that all of the individual Defendants regularly attended internal meetings and received reports apprising them of problems with the Tip Cover and the rise in MDRs and adverse events. Id. at ¶¶199-207. Plaintiffs specifically allege that Defendants Guthart and Mohr attended quarterly QRB meetings during which they were updated on: (1) five separate internal inquiries relating to arcing, the failure to report MDRs, and Intuitive's noncompliance with FDA regulations; (2) procedure counts including converted and aborted procedures; (3) total complaints, reportable events, arcing events, and related injuries; (4) the number of regulatory requests for additional information related to arcing through the Tip Cover; (5) the number of Return Material Authorizations related to arcing through the Tip Cover; (6) product quality issues facing the Company; and (7) the status of internal and external audits and findings that identified major deficiencies in Intuitive's quality management system. Plaintiffs also rely on public documents filed in a derivative action to establish the Board's knowledge of and involvement with the Tip Cover and MDR reporting issues, and Defendants' intentional or reckless failure to disclose problems with the Tip Cover and MDR reporting.

Plaintiffs' allegations regarding the individual Defendants' stock sales during the Class Period, taken collectively with the allegations summarized above, also support a strong inference

CASE NO.: 5:13-CV-01920-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

7

of scienter for the reasons previously stated in the Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss the Amended Complaint. The SAC provides more detail regarding stock sales than the Amended Complaint, specifically with respect to the individual Defendants 10b-5 trading plans. In short, Plaintiffs allege that the individual Defendants terminated and manipulated their 10b-5 plans during the Class Period. SAC at ¶¶177-87. Further, Plaintiffs allege that Defendant Smith's sales during the Class Period totaled $100,068,631, which represented approximately 40% of the total share he had available for sale during the Class Period. SAC at ¶162. Defendant Mohr sold 27,400 shares during the Class Period, which represented approximately 16 times his average shareholdings, and resulted in proceeds of $15,274,248. Id. Defendant Guthart's sales during the Class Period totaled $8,743,264, which represented approximately 30% of the total shares he had available for sale during the Class Period.

The SAC also includes allegations that the individual Defendants authorized Intuitive to enter into hundreds of tolling agreements with individuals who had been injured allegedly by da Vinci. SAC at ¶211. More specifically, Plaintiffs allege that two of Intuitive's insurance carriers filed suit seeking rescission of their insurance policies based on Intuitive's concealment of the tolling agreements. The number of tolling claims allegedly reached 2,248 by June of 2013. Id. The tolling agreements, as well as the allegations regarding corrective letters sent to hospitals and the underreported and mislabeled MDR complaints, support a cogent and compelling inference that the individual Defendants actively concealed material information that did not align with the public statements made regarding the safety and efficacy of da Vinci.

Defendants nevertheless contend that Plaintiffs' allegations of scienter are insufficient because there are "plausible, nonculpable explanations" for Defendants' conduct. Tellabs, 551 U.S. at 324. Defendants contend that the obvious, nonculpable explanation for Defendants' statements is that Defendants honestly believed in their opinion that the da Vinci was safe and effective. The Supreme Court in Omnicare, however, rejected this argument. In Omnicare, the defendant argued that "as long as an opinion is sincerely held. . . it cannot mislead as to any

CASE NO.: 5:13-CV-01920-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

8

matter, regardless what related facts the speaker has omitted." <u>Omnicare</u>, 135 S.Ct. at 1328. Although finding more than a "kernel of truth" in Omnicore's argument, the Court ultimately concluded that "literal accuracy is not enough: An issuer must as well desist from misleading investors by saying one thing and holding back another." <u>Id</u>. at 1330. In this case, Plaintiffs have alleged that Defendants said "one thing" regarding the safety and efficacy of da Vinci, and "held back" several "particular and material facts going to the basis" of Defendants' opinion statements, whose omission makes the opinion statements misleading to a reasonable investor.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss the Second Amended Complaint is DENIED. Pursuant to the parties' Stipulation and Order Regarding the Case Schedule, the parties shall file a new proposed case schedule (or competing schedules, if the parties cannot agree), no later than October 15, 2017.

Finally, Plaintiffs' motion for reconsideration of the Court's order regarding class certification is DENIED.

**IT IS SO ORDERED.**

Dated: September 29, 2017

EDWARD J. DAVILA
United States District Judge

CASE NO.: 5:13-CV-01920-EJD
ORDER DENYING DEFENDANTS' MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT

9