1 **KERR & WAGSTAFFE LLP**
JAMES M. WAGSTAFFE (95535)
2 IVO LABAR (203492)
101 Mission Street, 18th Floor
3 San Francisco, CA 94105–1727
Telephone: (415) 371-8500
4 Fax: (415) 371-0500
wagstaffe@kerrwagstaffe.com
5 labar@kerrwagstaffe.com

6 *Local Counsel for Plaintiffs and the Class*

7 **LABATON SUCHAROW LLP**
JONATHAN GARDNER (*pro hac vice*)
8 SERENA P. HALLOWELL (*pro hac vice*)
MICHAEL P. CANTY (*pro hac vice*)
9 CHRISTINE M. FOX (*pro hac vice*)
THEODORE J. HAWKINS (*pro hac vice*)
10 ALEC T. COQUIN (*pro hac vice*)
140 Broadway
11 New York, NY 10005
Telephone: (212) 907-0700
12 Fax: (212) 818-0477
jgardner@labaton.com
13 shallowell@labaton.com
mcanty@labaton.com
14 cfox@labaton.com
thawkins@labaton.com
15 acoquin@labaton.com

16 *Lead Counsel for Plaintiffs and the Class*

17 **UNITED STATES DISTRICT COURT**

18 **NORTHERN DISTRICT OF CALIFORNIA**

19 **SAN JOSE DIVISION**

20 | | |
|---|---|
| IN RE INTUITIVE SURGICAL | Case No. 5:13-cv-01920-EJD (HRL) |
| SECURITIES LITIGATION | |

21 IN RE INTUITIVE SURGICAL
SECURITIES LITIGATION

**CLASS REPRESENTATIVES' NOTICE
OF MOTION AND MOTION FOR
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT AND PLAN OF
ALLOCATION AND MEMORANDUM
OF POINTS AND AUTHORITIES IN
SUPPORT THEREOF**

Date: December 20, 2018
Time: 10:00 a.m.
Dept.: Courtroom 4, 5th Floor
Judge: Hon. Edward J. Davila

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ........................................................................................................... 1

PRELIMINARY STATEMENT ............................................................................................ 2

PRELIMINARY APPROVAL AND THE NOTICE PROGRAM ........................................ 3

ARGUMENT ......................................................................................................................... 5

I. THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER THE APPLICABLE STANDARDS AND SHOULD BE APPROVED ............ 5

    A. The Standards for Final Approval of Class Action Settlements .............................. 5

    B. Application of the Approval Criteria Supports Final Approval of the Settlement ................................................................................................................. 7

        1. The Class Has Been Robustly Represented by the Class Representatives and Class Counsel and the Settlement Is the Result of Thorough and Arm's-Length Efforts .................................................. 7

        2. The Strength of the Class Representatives' Case and the Risks Associated with Continued Litigation ................................................. 8

            (a) Loss Causation and Damages Challenges ........................................... 8

            (b) Materiality Defenses ........................................................................ 11

            (c) Scienter Defenses ............................................................................ 12

        3. The Complexity, Expense, and Likely Duration of Further Litigation ........ 13

        4. The Risk of Maintaining Class-Action Status Through Trial ..................... 14

        5. The Amount Offered in the Settlement ..................................................... 14

        6. The Extent of Discovery Completed and the Stage of the Proceedings....... 16

        7. The Experience and Views of Counsel ..................................................... 17

        8. The Presence of a Governmental Participant ............................................ 18

        9. Reaction of the Class to Date .................................................................. 18

II. THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND FOR DISTRIBUTING RELIEF TO THE CLASS IS FAIR, ADEQUATE, AND REASONABLE AND SHOULD BE APPROVED ....................................................... 20

CONCLUSION .................................................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Apple Comput. Sec. Litig.*,
    886 F. 2d 1109 (9th Cir. 1989) ...........................................................................11

*Churchill Vill. L.L.C. v. Gen. Elec.*,
    361 F.3d 566 (9th Cir. 2004) ................................................................................6

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) .....................................................................5, 7, 20

*Destefano v. Zynga Inc.*,
    No. 12-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ...................13, 18

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)...............................................................................................9

*Eisen v. Porsche Cars N. Am., Inc.*,
    No. 2:11-cv-09405-CAS-FFMx, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ........17, 19

*Garner v. State Farm Mut. Auto Ins. Co.*,
    No. CV 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010).........................5

*Glickenhaus & Co., v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) .........................................................................13, 14

*In re Heritage Bond Litig.*,
    No. 02-ML-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005).........................20

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007).................................................................19

*Int'l Bd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
    No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012)....................15

*Janus Capital Grp. v. First Derivative Traders*,
    564 U.S. 135 (2011).............................................................................................14

*In re Linkedin User Privacy Litig.*,
    309 F.R.D. 573 (N.D. Cal. 2015)..........................................................................13

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998).................................................................................7

*Lovallo v. Pacira Pharms., Inc.*,
    No. 14-06172, 2015 WL 7300492 (D.N.J. Nov. 18, 2015) .............................11, 12

*McPhail v. First Command Fin. Planning, Inc.*,
   No. 05cv179-IEG- JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...................................15

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................................... *passim*

*Mendoza v. Tucson Sch. Dist. No. 1*,
   623 F.2d 1338 (9th Cir. 1980) ....................................................................................4

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ......................................................................................4

*Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).................................................................................18

*Nguyen v. Radient Pharms. Corp.*,
   No. SACV 11-00406, 2014 WL 180229 (C.D. Cal. May 6, 2014) ........................................10

*Officers for Justice v. Civil Serv. Comm'r*,
   688 F.2d 615 (9th Cir. 1982) ..............................................................................5, 6, 7

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................14, 15, 18, 20

*In re Portal Software, Inc. Sec. Litig.*,
   No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)............................6, 17

*Redwen v. Sino Clean Energy, Inc.*,
   No. 11-3936, 2013 U.S. Dist. LEXIS 100275 (C.D. Cal. July 9, 2013)................................20

*Rodriguez v. W. Publ'g Corp*
   563 F.3d 948 (9th Cir. 2009) ................................................................................17, 18

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ......................................................................................19

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) .................................................................................6, 13

*In re TracFone Unlimited Serv. Plan Litig.*,
   112 F. Supp. 3d 993 (N.D. Cal. 2015).............................................................................6

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) .......................................................................................5

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................15

*In re Warner Commc'ns Sec. Litig.*,
   618 F. Supp. 735 (S.D.N.Y 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)....................................10

**Statutes**

28 U.S.C. §1715 ........................................................................................................4

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................1, 20

Fed. R. Civ. P. 23(B) ..................................................................................................8

Fed. R. Civ. P. 23(c)(1)(C) .......................................................................................14

Fed. R. Civ. P. 23(e) ...............................................................................................2, 6

Fed. R. Civ. P. 23(e)(2)(A) .........................................................................................8

Fed. R. Civ. P. 23(e)(2)(A)-(D) ..................................................................................6

Fed. R. Civ. P. 23(e)(2)(C)(i)....................................................................................13

Fed. R. Civ. P. 23(e)(2)(C)(ii)...................................................................................22

Fed. R. Civ. P. 23(e)(3)...............................................................................................6

Fed. R. Civ. P. 23(f)................................................................................2, 14, 16, 17

CASE NO. 5:13-CV-01920-EJD (HRL)
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

iv

1

2

## NOTICE OF MOTION

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3

4

5

6

7

8

9

PLEASE TAKE NOTICE that on December 20, 2018, at 10:00 a.m., or as soon thereafter as they may be heard, Class Representatives the Employees' Retirement System of the State of Hawaii ("Hawaii ERS") and Greater Pennsylvania Carpenters' Pension Fund ("Greater Pennsylvania"), on behalf of themselves and all members of the certified Class, will move this Court for orders, pursuant to Rule 23 of the Federal Rules of Civil Procedure:  (i) granting final approval of the proposed Settlement of the Action; and (ii) approving the proposed Plan of Allocation for the net proceeds of the Settlement.

10

11

12

13

14

This motion is supported by the following memorandum of points and authorities and the accompanying Declaration of Jonathan Gardner in Support of Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses, dated November 15, 2018 ("Gardner Declaration" or "Gardner Decl."), and the exhibits attached thereto.[1]

15

16

17

Proposed orders will be submitted with the Class Representatives' reply submission on December 13, 2018, after the November 29, 2018 deadline for requesting exclusion or objecting has passed.

18

## STATEMENT OF ISSUES TO BE DECIDED

19

20

1.      Whether the Court should grant final approval to the proposed class action Settlement; and

21

22

2.      Whether the Court should approve the proposed Plan of Allocation for distributing the proceeds of the Settlement to eligible Class Members.

23

24

25

26

27

28

---

[1]   The Gardner Declaration contains a detailed description of the allegations and claims, the procedural history of the Action, the risks faced by the Class in pursuing litigation, the efforts that led to a settlement, among other matters.  All exhibits referenced herein are annexed to the Gardner Declaration.  For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___-___."  The first numerical reference is to the designation of the entire exhibit attached to the Gardner Declaration and the second alphabetical reference is to the exhibit designation within the exhibit itself.

## MEMORANDUM OF POINTS AND AUTHORITIES

Hawaii ERS and Greater Pennsylvania ("Plaintiffs" or "Class Representatives") through their counsel Labaton Sucharow LLP ("Labaton Sucharow" or "Class Counsel"), respectfully submit this memorandum of points and authorities in support of their motion, pursuant to Federal Rule of Civil Procedure 23(e), requesting (i) final approval of the proposed settlement of the above-captioned class action (the "Settlement"); and (ii) approval of the proposed Plan of Allocation.[2]

## PRELIMINARY STATEMENT

As detailed in the Stipulation, Intuitive Surgical, Inc. ("Intuitive" or the "Company"), and Gary S. Guthart, Marshall L. Mohr, and Lonnie M. Smith (collectively, the "Individual Defendants," and, together with Intuitive, the "Defendants") have agreed to deposit $42,500,000 in cash, to secure a settlement of the claims in the Action and all Released Claims.  The terms of the Settlement are set forth in the Stipulation, which was previously filed with the Court.  ECF No. 298-1.  This recovery is a very favorable result for the Class and avoids the substantial risks and expenses of continued litigation, including the risk of recovering less than the Settlement Amount, or nothing at all.

As described below and in the accompanying Gardner Declaration, the decision to settle was well-informed by more than five years of contentious and hard-fought litigation involving a comprehensive investigation; two rounds of motion to dismiss briefing, including Defendants' motion for reconsideration; extensive fact and expert discovery (involving the analysis of approximately 550,000 pages of documents produced by Defendants and third parties, such as the FDA, 18 fact depositions, six expert depositions, and 11 expert reports); certification of the Class and overcoming Defendants' petition for permission to appeal pursuant to Rule 23(f); intensive summary judgment motion practice; and trial preparation. Trial was scheduled to begin on October 30, 2018.

---

[2]   All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation and Agreement of Settlement, dated as of September 11, 2018 (the "Stipulation," ECF No. 298-1).

CASE NO. 5:13-CV-01920-EJD (HRL)
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

2

1   The $42.5 million recovery represents approximately 7.34% of the $580 million in

2   maximum damages estimated by the Class Representatives' damages expert, Chad Coffman,

3   assuming pre-Class Period gains are netted and the Class prevailed on all claims through trial

4   and appeals, which includes prevailing in full on Defendants' summary judgment motion

5   pending at the time of settlement and, particularly, their argument that Class Representatives

6   could not establish loss causation for any of the three remaining alleged corrective disclosures.

7   *See* Gardner Decl. ¶¶5, 81.  If Defendants' arguments prevailed, the Class would have recovered

8   substantially less than the Settlement Amount, or nothing at all.  Class Counsel, who has

9   extensive experience and expertise in prosecuting securities class actions, believes that the

10  Settlement represents a very favorable resolution of this complex litigation in light of the specific

11  risks of continued litigation, particularly the challenges of establishing loss causation and

12  materiality.  The Class Representatives, who were actively involved in the Action, vigorously

13  represented the Class and have approved the Settlement.  *See* Declaration of Elmira K.L. Tsang

14  on Behalf of Hawaii ERS, dated November 2, 2018 (Ex. 1), and the Declaration of James R.

15  Klein on Behalf of Greater Pennsylvania, dated November 2, 2018 (Ex. 2).

16  Accordingly, the Class Representatives respectfully request that the Court grant final

17  approval of the Settlement.  In addition, the Plan of Allocation, which was developed with the

18  assistance of the Class Representatives' damages expert, is a fair and reasonable method for

19  distributing the Net Settlement Fund and should also be approved by the Court.

20  **PRELIMINARY APPROVAL AND THE NOTICE PROGRAM**

21  On October 4, 2018, the Court entered an order preliminarily approving the Settlement

22  and approving the proposed forms and methods of providing notice to the Class (the

23  "Preliminary Approval Order", ECF No. 304).  Pursuant to and in compliance with the

24  Preliminary Approval Order, through records maintained by Intuitive's transfer agent,

25  information gathered from the previous mailing of the notice of the pendency of the Action (the

26  "Class Notice"), and information provided by brokerage firms and other nominees, beginning on

27  October 15, 2018, the Court-appointed Claims Administrator the Garden City Group, LLC

28  ("GCG"), which was recently acquired by Epiq Class Action and Claims Solutions, Inc. and is

CASE NO. 5:13-CV-01920-EJD (HRL)
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

3

1   now continuing operations as part of Epiq, caused, among other things, the Settlement Notice

2   and Proof of Claim and Release form (together, the "Claim Packet") to be mailed by first-class

3   mail to potential Class Members. *See* Declaration Regarding (A) Mailing of the Settlement

4   Notice and Proof of Claim Form; (B) Publication of Summary Notice; and (C) Requests for

5   Exclusion in Connection with Settlement Notice, dated November 13, 2018 ("Mailing

6   Affidavit"), Ex. 3 ¶¶3-8. A total of 233,036 Claim Packets have been mailed as of November

7   13, 2018. *Id*. ¶8. On October 22, 2018, the Summary Notice was published in *Investor's*

8   *Business Daily* and was disseminated over the internet using *PR Newswire*. *Id*. ¶9 and Exhibits

9   C and D attached thereto. The Settlement Notice and Proof of Claim were also posted, for

10  review and easy downloading, on the case-dedicated website established by GCG for purposes of

11  this Action, as well as Labaton Sucharow's website. *Id*. ¶10.

12      The Settlement Notice described, *inter alia*, the claims asserted in the Action, the

13  contentions of the Parties, the course of the litigation, the terms of the Settlement, the maximum

14  amounts that would be sought in attorneys' fees and expenses, the Plan of Allocation, the right to

15  object to the Settlement, the right to seek to be excluded from the Class, and the right to opt-back

16  into the Class (for those who previously requested exclusion in connection with the Class

17  Notice). *See generally* Ex. 3-B. The Settlement Notice also gave the deadlines for objecting,

18  seeking exclusion, or opting back into the Class, and advised potential Class Members of the

19  scheduled Settlement Hearing before this Court. *Id*.

20      Defendants also mailed notice of the Settlement pursuant to the Class Action Fairness

21  Act, 28 U.S.C. §1715. Gardner Decl. ¶108.

22      The Ninth Circuit has held that notice must be "reasonably calculated, under all the

23  circumstances, to apprise interested parties of the pendency of the action and afford them an

24  opportunity to present their objections." *Mendoza v. Tucson Sch. Dist. No. 1*, 623 F.2d 1338,

25  1351 (9th Cir. 1980) (citation omitted). The Ninth Circuit has also ruled that the objection

26  deadline should fall after motions in support of approval and attorneys' fees and expenses have

27  been filed. *See, e.g., In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010)

28  (requiring that fee motion be made available to the class before the deadline for objecting to the

fee).  The Class Representatives respectfully submit that the notice program utilized here readily meets these standards.

To date, the Class's reaction to the proposed Settlement has been positive.  While the deadline (November 29, 2018) for requesting exclusion or objecting to the Settlement has not yet passed, to date there has only been one new request for exclusion (submitted by an individual investor that bought four shares), no objections to the proposed Settlement, and no objections to the Plan of Allocation.[3]

## ARGUMENT

### I.    THE PROPOSED SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE UNDER THE APPLICABLE STANDARDS AND SHOULD BE APPROVED

#### A.    The Standards for Final Approval of Class Action Settlements

Strong judicial policy favors settlement of class actions.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'r*, 688 F.2d 615, 625 (9th Cir. 1982).  Indeed, "there is an overriding public interest in settling and quieting litigations," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).  Class-action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.  Settlements of complex cases such as this one greatly contribute to the efficient utilization of scarce judicial resources and achieve the speedy resolution of claims.  *See, e.g.*, *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08 1365 CW (EMC), 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain and substantial recovery for the Plaintiff class.") (citation and internal quotation marks omitted).

---

[3]    A full report on the requests for exclusion submitted in response to the Settlement Notice and responses to any objections will be provided with the Class Representatives' reply papers on December 13, 2018.  The reply papers will also include information about the claims submitted to date.

CASE NO. 5:13-CV-01920-EJD (HRL)
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

5

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of the compromise of claims brought on a class basis.  The standard for determining whether to grant final approval to a class action settlement is whether the proposed settlement is "fundamentally fair, adequate, and reasonable."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 997 (N.D. Cal. 2015).  In making this determination, courts in the Ninth Circuit consider and balance a number of factors, including:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.[4]

*See Churchill Vill. L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575-76 (9th Cir. 2004) (citing *Hanlon*, 150 F.3d at 1026); *Officers for Justice,* 688 F.2d at 625 (same).  Courts have also considered "the role taken by the lead plaintiff in [the settlement] process, a factor somewhat unique to the PSLRA."  *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *3 (N.D. Cal. Nov. 26, 2007) (internal citation omitted).  Not all of these factors will apply to every class action settlement and, under certain circumstances, one factor alone may prove determinative in finding sufficient grounds for court approval.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).

The determination of whether a settlement is fair, adequate, and reasonable is committed to the Court's sound discretion.  *See Mego*, 213 F.3d at 458 ("Review of the district court's decision to approve a class action settlement is extremely limited.") (citing *Linney v. Cellular*

---

[4]   Effective on December 1, 2018, Rule 23(e) will be amended to, among other things, specifically add that in considering approval of a settlement, courts should assess whether (i) the class representatives and class counsel have adequately represented the class; (ii) the settlement was negotiated at arm's-length; (iii) the relief is adequate given "the costs, risks, and delay of trial and appeal," the effectiveness of distributing the relief to the class, the terms of any proposed award of attorney's fees, including the timing, and any agreements required to be identified under Rule 23(e)(3); and (iv) the settlement treats class members equitably relative to each other.  *See* amendments to Rule 23(e)(2)(A)-(D). Many of these considerations are already among the factors that courts within the Ninth Circuit weigh and each are readily satisfied here, as discussed below and in the related submissions.

*Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)).  In applying the pertinent factors, the Court

need not reach conclusions about the merits of the case, in part because the Court will be called

upon to decide the merits if the action proceeds.  *See Officers for Justice*, 688 F.2d at 625

("[T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the

merits. . . .  [I]t is the very uncertainty of outcome in litigation and avoidance of wasteful and

expensive litigation that induce consensual settlements.").  The Court's discretion in assessing

the fairness of the settlement is also circumscribed by "the strong judicial policy that favors

settlements, particularly where complex class action litigation is concerned."  *Linney*, 151 F.3d at

1238 (quoting *Officers for Justice*, 688 F.2d at 626); *Class Plaintiffs*, 955 F.2d at 1276 (same).

**B.     Application of the Approval Criteria Supports
            Final Approval of the Settlement**

**1.     The Class Has Been Robustly Represented by the Class
              Representatives and Class Counsel and the Settlement
              Is the Result of Thorough and Arm's-Length Efforts**

As is evident from the record before the Court, the Parties have vigorously and, at times,

contentiously litigated this Action for five years.  *See generally* Gardner Decl. §§III-V.

Throughout the litigation, the Class had the benefit of representation by two sophisticated

institutional investors, Hawaii ERS and Greater Pennsylvania, each of which dedicated

substantial efforts to overseeing the prosecution of the claims.  *See* Declaration of Elmira K.L.

Tsang on Behalf of Hawaii ERS, (Ex. 1), and the Declaration of James R. Klein on Behalf of

Greater Pennsylvania, (Ex. 2).  As discussed below, it also had the able representation of

knowledgeable counsel with extensive experience in shareholder class action litigation and

securities fraud cases.  Labaton Sucharow is among the most experienced and skilled firms in the

securities litigation field, and has a long and successful track record in such cases.  Gardner Decl.

¶140.

Before and during the negotiations between counsel, the strengths and weaknesses of the

Class Representatives' and Defendants' respective claims and defenses were fully understood

and explored by the Parties.  Leading up to the Settlement, Counsel engaged in frank and

knowledgeable discussions.  With an informed understanding, the Class Representatives agreed

Case No. 5:13-cv-01920-EJD (HRL)                                                                                    7
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

to the Settlement.  *Id*. ¶¶99-101.  There has been no collusion and there can be no doubt that the Settlement was reached through anything other than arm's-length efforts.  Accordingly, as evidenced by the discussion below, the Settlement readily satisfies the approval criteria proposed by the Rule 23 amendments set forth in Rule 23(e)(2)(A) and (B).

### 2. The Strength of the Class Representatives' Case and the Risks Associated with Continued Litigation

To determine whether the proposed Settlement is fair, reasonable, and adequate, the Court must balance the risks of continued litigation against the benefits afforded to class members and the certainty of a recovery.  *See Mego*, 213 F.3d at 458.  Although the Class Representatives believe that the case against Defendants is strong, that confidence must be tempered by the fact that the Settlement is certain and that every case involves significant risk of no recovery, particularly in a complex case such as the one at bar.  Here, there was no restatement, Company admission, or parallel governmental or criminal proceeding, which would have aided the Class Representatives in proving key elements of the case, like materiality, loss causation, and scienter.  There is no question that to prevail here, the Class Representatives would have confronted a number of legal and factual challenges, while trying to prove difficult securities claims within the context of complex scientific and regulatory evidence and testimony.  For instance, the Class Representatives would have had to argue, and the Court would need to rule on, the pending summary judgment motion, which sought judgment as a matter of law on the elements of materiality and loss causation.  There was no guarantee that the claims would survive this challenge, and, even if they did, how the Court's rulings would affect the future prosecution of the claims.

### (a) Loss Causation and Damages Challenges

The principle risk in continuing the litigation is the difficulty of proving loss causation and damages, which were hotly contested by Defendants at every turn, particularly class certification and summary judgment, and would continue to be challenged in *Daubert* motions, at trial, in post-trial proceedings and appeals.  *See* Gardner Decl. ¶¶73-74, 84-87.  To succeed at trial "a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct)

1    proximately caused the plaintiff's economic loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336,

2    346 (2005).  If a jury were to find that any of the three remaining alleged corrective disclosures

3    were not truly corrective, the potential recovery for the Class would be significantly diminished,

4    as happened in connection with class certification where the Court rejected certain other alleged

5    corrective disclosure dates.

6           Principally, Defendants have argued that the "corrective" disclosures do not correct the

7    allegedly false statements.  Gardner Decl. ¶¶84-87.  This was a centerpiece of Defendants'

8    summary judgment motion.  *Id*. ¶¶73-74.  For example, Defendants argued that nothing in the

9    February 28, 2013 Bloomberg article – announcing that the FDA was surveying surgeons at

10   several hospitals regarding da Vinci and any complications they have may have encountered –

11   corrected any alleged omissions regarding a purported defect or supposed internal recalls.

12   Defendants would also argue that the Class Representatives' argument that news of the FDA

13   survey was a partial corrective disclosure has been rejected by the Ninth Circuit in a line of cases

14   finding that an announcement of an investigation, standing alone, is insufficient to establish loss

15   causation.  *Id*. ¶¶73, 84.

16          Defendants would also have continued to argue that the March 5, 2013 Bloomberg

17   article, which reported on allegations from two personal injury lawsuits that had been filed

18   against Intuitive as well as other lawsuits filed against the Company, did not reveal anything new

19   to the market, because this information was all publicly available.  Accordingly, the

20   accompanying stock drop cannot be evidence of loss causation.  *Id*. ¶73, 85.

21          Regarding the July 18, 2013 Warning Letter where the Company announced, on July 18,

22   2013, that it received a Warning Letter from the FDA, Defendants would have argued that the

23   Warning Letter revealed no information that Defendants had allegedly concealed, and

24   accordingly, the Class Representatives cannot establish loss causation based on the stock price

25   movement on July 18-19, 2013. Defendants would have argued that the only "new" information

26   revealed on July 18, 2013, was the existence of a Warning Letter (the contents of which were not

27   made public until July 31, 2013). Defendants would have noted that since the July 18

28   announcement revealed only the receipt of the letter itself, which the Class Representatives do

1  not allege Defendants concealed, the announcement cannot qualify as a corrective disclosure,

2  and the accompanying stock drop cannot be a basis for proving loss causation.  *Id*. ¶¶73, 86.

3      The elimination of even one of these alleged corrective disclosures would have

4  considerably reduced damages, leaving the Class Representatives to seek significantly less than

5  $580 million.

6      Defendants would also dispute the Class Representatives' expert's damages

7  methodology.  Defendants would continue to challenge Mr. Coffman's analyses, arguing, among

8  other things, that he failed to conduct an adequate analysis to determine which of the challenged

9  statements were material to the market and did not determine which corrective disclosures

10  corrected any particular prior statements.  *Id*. ¶89.

11      The Class Representatives' expert has estimated maximum aggregate damages to be

12  approximately $580 million, if the Class Representatives were to prevail on all of their claims,

13  including all three alleged corrective disclosures.  Accordingly, the proposed Settlement

14  represents a recovery of approximately 7.34% of this estimate.  Of course if Defendants

15  prevailed at summary judgment on their argument that there is no loss causation, then the Class

16  would recover nothing at all.  *Id*. ¶90.

17      Resolution of these loss causation and damages issues would involve dense and complex

18  testimony of expert witnesses and the Parties would end up in a "battle of the experts" where it

19  would be impossible to predict with any certainty which arguments would find favor with a jury.

20  *See*, *e.g.*, *Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC (MLGx), 2014 WL

21  1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in securities case where

22  "[p]roving and calculating damages required a complex analysis, requiring the jury to parse

23  divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that

24  analysis is inherently difficult to predict and risky") (citation omitted); *In re Warner Commc'ns*

25  *Sec. Litig.*, 618 F. Supp. 735, 744, 745 (S.D.N.Y 1985) (approving settlement where "it is

26  virtually impossible to predict with any certainty which testimony would be credited, and

27  ultimately, which damages would be found to have been caused by actionable, rather than the

28  myriad nonactionable factors such as general market conditions"), *aff'd*, 798 F.2d 35 (2d Cir.

1986).  The outcome could well have depended on whose testifying expert the jury believed or even whether the jury was able to follow the economic theories used by the experts.

### (b) Materiality Defenses

The Class Representatives also faced substantial risks in proving that Defendants' statements and alleged omissions were materially misleading at the time that they were made or occurred.

As Defendants had in their summary judgment motion, they would have continued to assert a "truth on the market defense," arguing that each piece of allegedly concealed information was actually publicly available to the market.  Gardner Decl. ¶88.  For example, Defendants would have argued that Class Representatives' claim that Defendants failed to disclose that the Company sent letters in October 2011 to all da Vinci customers regarding the proper use of the Tip Cover, was immaterial because the letters were in fact widely publicized before the first allegedly misleading statement was made on February 6, 2012.  Additionally, Defendants would have argued that a Citron Research analyst report, published on December 19, 2012, discussed the "gathering storm of legal liability accruing to the company" due to the Company's alleged failure to disclose the risks associated with da Vinci.  Defendants would also argue that another Citron Report, published on January 17, 2013, discussed pending litigation against Intuitive arising from the risks associated with the robot instruments.  *Id*; *see also In re Apple Comput. Sec. Litig.*, 886 F. 2d 1109, 1113 (9th Cir. 1989) (truth on the market defense satisfied where "information was transmitted to the public with a degree of intensity and credibility sufficient to effectively counter-balance any misleading impressions created by the insiders' one-sided representation") (citation omitted); *Lovallo v. Pacira Pharms., Inc.*, No. 14-06172, 2015 WL 7300492, at *10 (D.N.J. Nov. 18, 2015) (finding truth on the market where plaintiff is able to find the information "based on a single Web search" and where "information was not buried").

While the Class Representatives would advance a number of arguments in response, including that the allegedly concealed information did not receive adequate exposure and was

1   essentially impossible for an investor to aggregate and understand, there is no certainty as to how

2   the Court or a jury would come out on this issue.  *See, e.g., Id.*

3       If Defendants' motion were successful, the Class Representatives' case would have been

4   severely curtailed, if not over.

5                   **(c)      Scienter Defenses**

6       Defendants cannot be liable under the Securities Exchange Act of 1934 unless they acted

7   with scienter – *i.e.*, knowledge of falsity, or reckless disregard for whether their statements were

8   true or false.  Here, Defendants have strongly contested that the Class Representatives would be

9   able to prove motive or that Defendants knew or recklessly disregarded facts indicating that their

10  public statements were false when made.  Gardner Decl. ¶¶92-95.

11      Regarding the alleged insider trading of each of the Individual Defendants, Defendants'

12  would likely seek to put forth expert testimony arguing, among other things, that the sales of the

13  Individual Defendants followed 10b5-1 trading plans that were entered into before any of the

14  alleged corrective disclosures and were consistent with SEC requirements and Company insider

15  trading policies.  Defendants would also argue that Defendants Mohr and Guthart approved a

16  stock ***repurchase*** plan prior to the Class Period, which negates any finding of scienter because it

17  tends to show that they believed the share price would rise in the future.  *Id.* ¶93.

18      With respect to knowledge of the allegedly concealed information, Defendants would

19  likely continue to press that the Class Representatives cannot prove that they knew facts contrary

20  to each alleged misrepresentation or omission.  For instance, Defendants maintained that the July

21  2013 FDA Warning Letter was not known to them ahead of time and was not kept "secret."  *Id.*

22      The Class Representatives would counter with evidence showing that Defendants, among

23  other things, exchanged communications with the FDA discussing the serious problems with,

24  and injuries resulting from, the Tip Cover, as well as documents and testimony establishing that

25  all of the Individual Defendants regularly attended internal meetings and received reports

26  apprising them of the sharp rise in MDRs and adverse events, as well as the Tip Cover issues

27  affecting patients.  *Id.* ¶94.  While the Class Representatives' would put forth evidence and

28  expert opinion to support their claims, there is no certainty about which side a jury would credit.

1    Indeed, the Class Representatives would have been forced to tell its story to the jury through

2    current or former employees of the Company, who would likely be adverse to the Class.

3        In sum, as a result of the various defenses described above and in the Gardner

4    Declaration, it is possible that, even if the Court or a jury were to find that Defendants knowingly

5    made materially misleading statements, in the end Class Members could recover nothing.

6        In light of the above, the Settlement satisfies the Ninth Circuit's first and second factors,

7    as well as the proposed criteria set forth in amended Rule 23(e)(2)(C)(i), regarding the adequacy

8    of the relief provided to the Class taking into account the risks of further litigation.

9        **3.    The Complexity, Expense, and Likely Duration of Further Litigation**

10       Final approval is also supported by the complexity, expense, and likely duration of

11   continued litigation. *See Torrisi*, 8 F.3d at 1376 ("the cost, complexity and time of fully

12   litigating the case all suggest that this settlement was fair"); *see also* proposed amendment to

13   Rule 23(e)(2)(C)(i) (codifying the measure of adequacy by, among other things, "the costs, risks,

14   and delay of trial and appeal").  "Generally, unless the settlement is clearly inadequate, its

15   acceptance and approval are preferable to lengthy and expensive litigation with uncertain

16   results." *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) (citation

17   omitted).

18       Here, at every turn, the litigation raised difficult legal and factual issues that required

19   creativity and sophisticated analysis.  The complexity, expense, and duration of preparing and

20   trying the case before a jury, subsequent post-trial motion practice, and a likely appeal of the

21   Court's rulings on class certification, summary judgment, post-trial motions, and a jury verdict

22   would be significant.  Barring a settlement, there is no question that this case would be litigated

23   for years, taking a considerable amount of court time and costing millions of additional dollars,

24   with the possibility that the end result would be no better for the class, and might be worse. *See*

25   *Destefano v. Zynga Inc.,* No. 12-04007-JSC, 2016 WL 537946, at *10 (N.D. Cal. Feb. 11, 2016)

26   ("continuing litigation would not only be costly – representing expenses that would take away

27   from any ultimate classwide recovery – but would also delay resolution and recovery for

28   Settlement Class Members"); *cf. Glickenhaus & Co., v. Household Int'l, Inc.,* 787 F.3d 408 (7th

1   Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on

2   loss causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First*

3   *Derivative Traders*, 564 U.S. 135 (2011)).

4          Likewise, as described in greater detail in the Gardner Declaration, the Action involved

5   difficult, hotly disputed, and expert-intensive issues related to market efficiency, loss causation,

6   damages, insider trading, and FDA regulations.  Presenting this complex evidence persuasively

7   to a jury presented its own significant challenges, in addition to the risks created by the "battle of

8   the experts" that would have ensued.

9          Importantly, there was no road-map for Class Counsel to follow in this Action as neither

10  the SEC nor the Department of Justice brought any proceedings against Defendants.

11         The Settlement, therefore, provides sizeable and tangible relief to the Class now, without

12  subjecting Class Members to the risks, duration, and expense of continuing litigation.  This

13  factor weighs strongly in favor of final approval of the Settlement.

14         **4.       The Risk of Maintaining Class-Action Status Through Trial**

15         This Court's certification of the Class withstood Defendants' petition to the Ninth Circuit

16  pursuant to Fed. R. Civ. P. 23(f).  However, while the Class Representatives are confident that

17  the certification of the Class would have remained intact, under Rule 23(c)(1)(C), a Court's prior

18  grant of certification "may be altered or amended before final judgment."  Accordingly, there

19  was an ongoing risk that the Class could be decertified or modified if the litigation were to

20  continue.  *See In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008)

21  (noting that even if a class is certified, "there is no guarantee the certification would survive

22  through trial, as Defendants might have sought decertification or modification of the class").

23  Thus, the risk of failing to maintain class certification through trial favors approval of the

24  Settlement.

25         **5.       The Amount Offered in the Settlement**

26         In evaluating the fairness of a settlement, a fundamental question is how the value of the

27  settlement compares to the amount the class potentially could recover at trial, discounted for risk,

28  delay, and expense.  Thus, "[i]t is well-settled law that a cash settlement amounting to only a

1    fraction of the potential recovery does not per se render the settlement inadequate or unfair."

2    *Mego*, 213 F.3d at 459 (citation omitted).  Indeed, "[t]here is a range of reasonableness with

3    respect to a settlement – a range which recognizes the uncertainties of law and fact in any

4    particular case and the concomitant risks and costs necessarily inherent in taking any litigation to

5    completion[.]"  *Wal-Mart Stores*, *Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005).

6        The proposed $42.5 million Settlement is well within the range of reasonableness in light

7    of the potential recovery at trial and the risks of continued litigation.  As noted above, the Class

8    Representatives' damages expert has estimated that if liability were to be established with

9    respect to all of the claims, including all three alleged corrective disclosures, the maximum

10   aggregate damages recoverable at trial would be approximately $580 million.  As a percentage of

11   this maximum estimate of damages, the $42.5 million Settlement represents a recovery of

12   approximately 7.34%.  Gardner Decl. ¶5.  Of course this estimated recovery assumes that the

13   Class Representatives were able to establish damages based on all remaining corrective

14   disclosures, which was vigorously contested by Defendants in connection with summary

15   judgment and would be contested at trial and beyond.

16       Since the passage of the Private Securities Litigation Reform Act of 1995 ("PSLRA"),

17   courts have approved settlements that recovered a similar, or smaller, percentage of maximum

18   damages.  *See, e.g.*, *McPhail v. First Command Fin. Planning, Inc.*, No. 05cv179-IEG- JMA,

19   2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009) (finding a $12 million settlement recovering

20   7% of estimated damages was fair and adequate); *Omnivision*, 559 F. Supp. 2d at 1042

21   ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was

22   "higher than the median percentage of investor losses recovered in recent shareholder class

23   action settlements") (citation omitted); *Int'l Bd. of Elec. Workers Local 697 Pension Fund v.*

24   *Int'l Game Tech., Inc.*, No. 3:09-cv-00419-MMD-WGC, 2012 WL 5199742, at *3 (D. Nev. Oct.

25   19, 2012) (approving $12.5 million settlement recovering about 3.5% of the maximum damages

26   that plaintiffs believe could be recovered at trial and noting that the amount is within the median

27   recovery in securities class actions settled in the last few years).

28

1   The Settlement also presents a superior recovery when compared to the median and

2   average settlement values in securities class action settlements in 2017, which was reported by

3   Cornerstone Research to be $5 million and $18.2 million, respectively. *See,* Laarni T. Bulan,

4   Ellen M. Ryan, and Laura E. Simmons, *Securities Class Action Settlements – 2017 Review and*

5   *Analysis,* at 3 (Cornerstone Research 2018), Ex. 4.

6   Accordingly, it is respectfully submitted that the Settlement is a favorable result that falls

7   well within the range of reasonableness.

8   **6.      The Extent of Discovery Completed and the Stage of the Proceedings**

9   The stage of the proceedings and the amount of discovery completed are also factors

10   courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See*

11   *Mego*, 213 F.3d at 459.  This factor strongly weighs in favor of approval of the Settlement.

12   At the time the Parties agreed to settle, the Class Representatives and Class Counsel had

13   exhaustively litigated the Action and had a thorough and realistic understanding of the strengths

14   and weaknesses of the claims and defenses asserted.  The Action has been hotly contested from

15   its inception, more than five years ago.  As a result, the Class Representatives' and Class

16   Counsel's knowledge of the strengths and weaknesses of the claims alleged and the stage of the

17   proceedings are more than adequate to support the Settlement.  This knowledge is based on,

18   among other things, Class Counsel's wide-ranging investigation before filing the consolidated

19   complaints; the briefing and order on Defendants' two motions to dismiss, and Defendants'

20   motion for reconsideration; Class Counsel's extensive class, fact, and expert discovery; as well

21   as the briefing on class certification and Defendants' Rule 23(f) petition, and the motion for

22   summary judgment. *See* Gardner Decl. §III-V.

23   In particular, Class Counsel conducted an extensive review of publicly available

24   information before filing the complaints, including documents filed publicly by the Company

25   with the U.S. Securities and Exchange Commission; press releases, news articles, analyst reports,

26   and other public statements concerning Intuitive's business and the da Vinci Surgical System;

27   and other publicly available information and data concerning Intuitive, its securities, and the

28   markets therefor. *Id.* ¶¶15, 26.

1    In connection with fact discovery, Class Counsel engaged in an extremely labor intensive

2    meet and confer process with Defendants on the scope of discovery, and ultimately obtained and

3    analyzed approximately 550,000 pages of documents from Defendants and non-parties, such as

4    medical professors who promoted the da Vinci System and manufacturers of the da Vinci Tip

5    Cover, and took or defended 18 fact depositions (including each of the Individual Defendants

6    and four Class Representative depositions).  *Id*. §IV.A-E.  Class Counsel also reviewed the

7    patent application for the redesigned Tip Cover filed with the U.S. Patent and Trademark

8    Office's, which Defendants raised in connection with their class certification "truth-on-the-

9    market" defense.  *Id*. ¶34.

10    In connection with expert discovery, Class Counsel worked extensively with experts on

11    issues related to loss causation and damages, insider trading, and FDA regulatory practices and

12    procedures for medical devices, and these experts issued 11 opening or rebuttal reports

13    (including three reports submitted in connection with class certification).  Class Counsel also

14    challenged Defendants' three experts during their depositions and through rebuttal reports.  In

15    total, Class Counsel took or defended six expert depositions.  *Id*. §IV.F.

16    In sum, the Class Representatives had a full understanding of the likelihood of success

17    and the potential recovery at trial at the time the Settlement was entered into.  *See Portal*

18    *Software*, 2007 WL 4171201, at *4 ("The settlement reflects three and a half years of completed

19    work including pre-filing investigation, locating and interviewing over twenty-one witnesses, . . .

20    and plaintiff's analysis of defendants' motion for summary judgment. . . . As a result, the true

21    value of the class's claims [were] well-known."); *Eisen v. Porsche Cars N. Am., Inc.*, No. 2:11-

22    cv-09405-CAS-FFMx, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement

23    when record established that "all counsel had ample information and opportunity to assess the

24    strengths and weaknesses of their claims and defenses").  This factor strongly supports final

25    approval of the Settlement.

26    **7.    The Experience and Views of Counsel**

27    Experienced counsel, negotiating at arm's-length, have weighed the factors discussed

28    above and endorse the Settlement.  As the Ninth Circuit observed in *Rodriguez v. West*

*Publishing Corporation,* "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action.  563 F.3d 948, 965 (9th Cir. 2009).  The views of the attorneys actively conducting the litigation and who are most closely acquainted with the facts of the underlying litigation, are entitled to "great weight."  *Nat'l Rural Telecomm. Coop. v. DirectTV, Inc.,* 221 F.R.D. 523, 528 (C.D. Cal. 2004) ; *see also Zynga,* 2016 WL 537946, at *13 ("A district court is entitled to give consideration to the opinion of competent counsel that the settlement is fair, reasonable, and adequate.") (internal quotation omitted).

Class Counsel firmly believes that the Settlement is fair, adequate, and reasonable, and particularly so in view of the risks, burdens, and expense of continued litigation.  Further, it is respectfully submitted that Class Counsel is experienced and able in this area of practice (*see* Gardner Decl. ¶140 and Ex. 5-D) and "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable."  *Omnivision,* 559 F. Supp. 2d at 1043.  Accordingly, this factor strongly favors approval of the Settlement.

### 8.      The Presence of a Governmental Participant

With respect to the seventh factor, there was no governmental proceeding that assisted with the investigation or prosecution of the Action – no "roadmap" to be followed, or criminal convictions that have aided the Class Representatives in proving elements of the case, like loss causation, materiality, and scienter.  Accordingly, this factor supports approval of the Settlement.

### 9.      Reaction of the Class to Date

As discussed above, pursuant to this Court's Preliminary Approval Order, the Court-approved Settlement Notice and Claim Form were mailed to potential Class Members who were (i) identified in connection with the Class Notice or (ii) identified through continued outreach to banks, brokers, and other nominees.  *See* Ex. 3 ¶¶4-6.  The Summary Notice was published in *Investor's Business Daily* on October 22, 2018 and transmitted over the internet using *PRNewswire* on October 22, 2018.  *Id*. ¶9.  Additionally, the Stipulation, Settlement Notice, Claim Form, and Preliminary Approval Order, among other documents, were posted to the website dedicated to the Action (*id*. ¶10), as well as Labaton Sucharow's website.

1    When measuring the adequacy of notice in a class action under either the Due Process

2    Clause or the Federal Rules, the Court should look to its reasonableness.  *See, e.g., Silber v.*

3    *Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) ("We therefore conclude that the appropriate

4    question remains . . . 'what notice is reasonably certain to inform the absent members of the

5    plaintiff class,' and the appropriate standard is the 'best notice practicable' under *Eisen* and

6    *Mullane*") (internal citation omitted).  Here, the method of dissemination of the Notices to

7    potential Class Members followed the industry gold-standard in securities cases and satisfies

8    these standards.  *See, e.g., In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1170 (S.D.

9    Cal. 2007) (approving notice where it was mailed directly to class members and summary notice

10   was published).

11   The Settlement Notice advised the Class of the terms of the Settlement, the Plan of

12   Allocation, and the maximum amount of Class Counsel's request for an award of attorneys' fees

13   and expenses, as well as the procedure and deadline for filing objections, opting out of the Class,

14   and opting back in.  *See generally* Ex. 3-B.  The Settlement Notice also stated that the motions in

15   support of approval of the Settlement and the request for attorneys' fees and expenses would be

16   filed with the Court no later than November 15, 2018, and be available to the public through the

17   website, Class Counsel's website, request to the Claims Administrator, the Clerk's Office, or

18   PACER.  Ex. 3-B at Question 20.

19   To date, 233,036 Claim Packets have been mailed to potential Class Members and

20   nominees.  Ex. 3 ¶8.  While the objection/exclusion deadline – November 29, 2018 – has not yet

21   passed, to date, no objections and only one new exclusion request, by an individual investor

22   representing four shares, has been received.[5]  *Id*. ¶14.

23

24

25   _____

26   [5]   In connection with the previously issued Class Notice, the Claims Administrator received six valid and timely exclusion requests. *See* ECF No. 285, Mailing Decl. ¶2.  No institutional investor or pension fund requested exclusion and the requests relate to only 190 shares of Intuitive stock.  Investors who requested exclusion in connection with the Class Notice were not required to request exclusion in response to the Settlement Notice.  A full report on the additional exclusion requests will be submitted with the Class Representatives' December 13, 2018 reply papers.

27

28

**II.    THE PLAN OF ALLOCATION OF THE NET SETTLEMENT FUND FOR DISTRIBUTING RELIEF TO THE CLASS IS FAIR, ADEQUATE, AND REASONABLE AND SHOULD BE APPROVED**

The standard for approval of a plan of allocation in a class action under Rule 23 of the Federal Rules of Civil Procedure is the same as the standard applicable to the settlement as a whole – the plan must be fair, reasonable, and adequate. *Class Plaintiffs*, 955 F.2d at 1284; *Omnivision*, 559 F. Supp. 2d at 1045. An allocation formula need only have a reasonable basis, particularly if recommended by experienced class counsel. *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005).

Here, the Class Representatives' damages expert, Chad Coffman, prepared the Plan of Allocation after careful consideration of the Class Representatives' theories of liability and damages under the Exchange Act. Gardner Decl. ¶112. The Plan of Allocation was fully described in the Settlement Notice and, to date, there has been no objection to the proposed plan. *See* Ex. 3-B at 9-12.

"[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen v. Sino Clean Energy, Inc.*, No. 11-3936, 2013 U.S. Dist. LEXIS 100275, at *29 (C.D. Cal. July 9, 2013) (citation and internal quotation marks omitted). Here, the Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on "Recognized Loss" formulas tied to liability and damages. These formulas consider the amount of alleged artificial inflation in the prices of Intuitive publicly traded common stock, as quantified by Mr. Coffman. *See* Gardner Decl. ¶113. Mr. Coffman analyzed the movement in the prices of Intuitive stock and took into account the portion of the price drops allegedly attributable to the alleged fraud. *Id*. Claimants will be eligible for a payment based on when they purchased, held, or sold their Intuitive stock, which is consistent with the Exchange Act. *Id*. ¶114. The claims of all claimants, including the Class Representatives, will be determined on a *pro rata* basis based on the Plan of Allocation.

CASE NO. 5:13-CV-01920-EJD (HRL)
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

20

1   The Claims Administrator will calculate claimants' Recognized Losses using the

2   transactional information provided by claimants in their Claim Forms.  Because the vast majority

3   of securities are held in "street name" by the brokers that buy them on behalf of clients, the

4   Claims Administrator, Class Counsel, and Defendants do not independently have class members'

5   transactional data.  Claims can be submitted in paper format, electronically through the case

6   website, or for large investors with thousands of transactions through email to GCG's electronic

7   filing team.  *Id*.

8   Once the Claims Administrator has processed all submitted claims and provided

9   claimants with an opportunity to cure deficiencies or challenge rejection determinations,

10  payment distributions will be made to eligible Authorized Claimants using checks and, in some

11  instances, wire transfers.  After an initial distribution of the Net Settlement Fund, if there is any

12  balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed

13  checks or otherwise) after at least six (6) months from the date of initial distribution, Class

14  Counsel will, if feasible and economical, re-distribute the balance among Authorized Claimants

15  who have cashed their checks.  Re-distributions will be repeated until the balance in the Net

16  Settlement Fund is no longer economically feasible to distribute to Authorized Claimants.  Any

17  balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible

18  or economical to reallocate, after payment of any outstanding Notice and Administration

19  Expenses or Taxes, will be donated in equal amounts to Bay Area Legal Aid and Consumer

20  Federation of America, as directed by the Court at the preliminary approval hearing.  *See* Ex. 3-B

21  at 11; Gardner Decl. ¶115.

22  Accordingly, for all of the reasons set forth herein and in the Gardner Declaration, it is

23  respectfully submitted that the Plan of Allocation is fair, reasonable and adequate and should be

24  approved, and that the Settlement satisfies the proposed approval criteria set forth in Rule

25  23(e)(2)(C)(ii).

26

27

28

Case No. 5:13-cv-01920-EJD (HRL)
Motion for Final Approval of Class Action Settlement and
Plan of Allocation and Memorandum in Support Thereof

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CONCLUSION**

For all the foregoing reasons, the Class Representatives respectfully request that the Court:  (i) grant final approval of the Settlement; and (ii) approve the Plan of Allocation as fair, reasonable, and adequate.

Dated: November 15, 2018

Respectfully submitted,

*s/ Jonathan Gardner*

**LABATON SUCHAROW LLP**
Jonathan Gardner (*pro hac vice*)
Serena P. Hallowell (*pro hac vice*)
Michael P. Canty (*pro hac vice*)
Christine M. Fox (*pro hac vice*)
Theodore J. Hawkins (*pro hac vice*)
Alec T. Coquin (*pro hac vice*)
140 Broadway
New York, NY  10005
Telephone:  (212) 907-0700
Facsimile:   (212) 818-0477

*Lead Counsel for Plaintiffs and the Class*

**KERR & WAGSTAFFE LLP**
JAMES M. WAGSTAFFE (95535)
IVO LABAR (203492)
101 Mission Street, 18th Floor
San Francisco, CA 94105–1727
Telephone: (415) 371-8500
Fax: (415) 371-0500
wagstaffe@kerrwagstaffe.com
labar@kerrwagstaffe.com

*Local Counsel for Plaintiffs and the Class*

CASE NO. 5:13-CV-01920-EJD (HRL)
MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
PLAN OF ALLOCATION AND MEMORANDUM IN SUPPORT THEREOF

22

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2018, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Service List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 15, 2018

/s/ *Jonathan Gardner*
JONATHAN GARDNER

**Electronic Mail Notice List**

**Eric J. Belfi**
ebelfi@labaton.com,kgutierrez@labaton.com,ElectronicCaseFiling@labaton.com,4076904420@filings.docketbird.com

**Mary K. Blasy**
mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

**Michael P. Canty**
mcanty@labaton.com,kgutierrez@labaton.com,7677707420@filings.docketbird.com,fmalonzo@labaton.com,acarpio@labaton.com,electroniccasefiling@labaton.com

**Michael D. Celio**
MCelio@gibsondunn.com,EOldiges@gibsondunn.com

**Susannah Ruth Conn**
SConn@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com,3022905420@filings.docketbird.com

**Alec T Coquin**
acoquin@labaton.com,kgutierrez@labaton.com,7391740420@filings.docketbird.com,electroniccasefiling@labaton.com

**Jennifer Rae Crutchfield**
jcrutchfield@cpmlegal.com,mkeilo@cpmlegal.com,jacosta@cpmlegal.com

**Alexander Barnes Dryer**
adryer@keker.com,dawncurran3389@ecf.pacerpro.com,dcurran@keker.com,efiling@keker.com,alexander-dryer-2761@ecf.pacerpro.com

**Christine M. Fox**
cfox@labaton.com,kgutierrez@labaton.com,electroniccasefilings@labaton.com,fmalonzo@labaton.com,6312349420@filings.docketbird.com

**Jonathan Gardner**
jgardner@labaton.com,kgutierrez@labaton.com,jjohnson@labaton.com,cvillegas@labaton.com,cfox@labaton.com,tdubbs@labaton.com,4027988420@filings.docketbird.com,ryamada@labaton.com,cboria@labaton.com,thawkins@labaton.com,acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,agreenbaum@labaton.com

**Michael M. Goldberg**
michael@goldberglawpc.com

**Jo W. Golub**
jgolub@keker.com,sandy-giminez-6735@ecf.pacerpro.com,SHarmison@keker.com,efiling@keker.com,jah@keker.com,jo-golub-8129@ecf.pacerpro.com

1  **Serena Hallowell**
   shallowell@labaton.com,2853304420@filings.docketbird.com,kgutierrez@labaton.com,acoquin
2  @labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,electroniccasefiling@labaton.com

3  **Cecily Gwyn Harris**
   cecily.harris@keker.com
4

5  **Theodore J. Hawkins**
   thawkins@labaton.com
6

7  **John Watkins Keker**
   jwk@kvn.com,efiling@kvn.com,noelle-nichols-
8  8018@ecf.pacerpro.com,nnichols@keker.com,john-keker-0604@ecf.pacerpro.com

9  **Ivo Michael Labar**
   labar@kerrwagstaffe.com,smoot@kerrwagstaffe.com,phan@kerrwagstaffe.com
10

11 **Arthur Charles Leahy**
   artl@rgrdlaw.com,e_file_sd@rgrdlaw.com
12

   **Jeremy A Lieberman**
13 jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.c
   om
14 **Laurie Carr Mims**
   lmims@keker.com,smccabe@keker.com,susan-mccabe-
15 8631@ecf.pacerpro.com,efiling@keker.com,laurie-mims-6204@ecf.pacerpro.com

16
   **Reid Patrick Mullen**
17 rmullen@keker.com,patty-lemos-9042@ecf.pacerpro.com,reid-mullen-
   2561@ecf.pacerpro.com,tsherman@keker.com,plemos@keker.com,efiling@keker.com
18

19 **Danielle Suzanne Myers**
   dmyers@rgrdlaw.com,3045517420@filings.docketbird.com,e_file_sd@rgrdlaw.com,sconn@rgr
20 dlaw.com

21 **Laurence J Pino**
   ljp@pinonicholsonlaw.com
22

23 **Laurence James Pino**
   ljp@pinonicholsonlaw.com
24

25 **Ekaterini Maria Polychronopoulos**
   kpolychronopoulos@seyfarth.com,sstitt@seyfarth.com
26

27 **Elizabeth Rosenberg**
   ewierzbowski@labaton.com

28

**Philip James Tassin**
ptassin@keker.com,sandy-giminez-6735@ecf.pacerpro.com,sharmison@keker.com,philip-tassin-6713@ecf.pacerpro.com,efiling@keker.com

**Carol C. Villegas**
cvillegas@labaton.com,kgutierrez@labaton.com,5739893420@filings.docketbird.com,jchristie@labaton.com,acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,electroniccasefiling@labaton.com

**James Matthew Wagstaffe**
wagstaffe@kerrwagstaffe.com,reboredo@kerrwagstaffe.com,bechtol@kerrwagstaffe.com

**Shawn A. Williams**
shawnw@rgrdlaw.com,kmccarty@rgrdlaw.com,e_file_sd@rgrdlaw.com

**Nicole M. Zeiss**
nzeiss@labaton.com,5854006420@filings.docketbird.com,kgutierrez@labaton.com,ElectronicCaseFiling@labaton.com,cboria@labaton.com

**Manual Notice List**
The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

• **(No manual recipients)**