1   **KERR & WAGSTAFFE LLP**
    JAMES M. WAGSTAFFE (95535)
2   IVO LABAR (203492)
    101 Mission Street, 18th Floor
3   San Francisco, CA 94105–1727
    Telephone: (415) 371-8500
4   Fax: (415) 371-0500
    wagstaffe@kerrwagstaffe.com
5   labar@kerrwagstaffe.com

6   *Local Counsel for Plaintiffs and the Class*

7   **LABATON SUCHAROW LLP**
    JONATHAN GARDNER (*pro hac vice*)
8   SERENA P. HALLOWELL (*pro hac vice*)
    MICHAEL P. CANTY (*pro hac vice*)
9   CHRISTINE M. FOX (*pro hac vice*)
    THEODORE J. HAWKINS (*pro hac vice*)
10  ALEC T. COQUIN (*pro hac vice*)
    140 Broadway
11  New York, NY 10005
    Telephone: (212) 907-0700
12  Fax: (212) 818-0477
    jgardner@labaton.com
13  shallowell@labaton.com
    mcanty@labaton.com
14  cfox@labaton.com
    thawkins@labaton.com
15  acoquin@labaton.com

16  *Lead Counsel for Plaintiffs and the Class*

17              **UNITED STATES DISTRICT COURT**

18              **NORTHERN DISTRICT OF CALIFORNIA**

19                    **SAN JOSE DIVISION**

20
                                          Case No. 5:13-cv-01920-EJD (HRL)
21  IN RE INTUITIVE SURGICAL
    SECURITIES LITIGATION                 **CLASS COUNSEL'S NOTICE OF**
22                                        **MOTION AND MOTION FOR AN**
                                          **AWARD OF ATTORNEYS' FEES AND**
23                                        **PAYMENT OF EXPENSES AND**
                                          **MEMORANDUM OF POINTS AND**
24                                        **AUTHORITIES IN SUPPORT THEREOF**

25                                        Date: December 20, 2018
                                          Time: 10:00 a.m.
26                                        Dept.: Courtroom 4, 5th Floor
                                          Judge: Hon. Edward J. Davila
27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION ................................................................................. 1

PRELIMINARY STATEMENT ...................................................................... 2

ARGUMENT ............................................................................................. 3

I.   CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 19% OF THE
     COMMON FUND SHOULD BE APPROVED ............................................ 3

     A.   Counsel Are Entitled to an Award of Attorneys' Fees from the Common
          Fund .......................................................................................... 3

     B.   A Reasonable Percentage of the Fund Recovered Is the Appropriate Method
          for Awarding Attorneys' Fees in Common Fund Cases .............................. 4

     C.   Analysis Under the Percentage Method and the *Vizcaino* Factors Justify a
          Fee Award of 19% in this Case ........................................................ 5

          1.   The Result Achieved ............................................................. 6

          2.   The Risks of Litigation ......................................................... 7

          3.   The Skill Required and the Quality of Work ............................... 11

          4.   The Contingent Nature of the Fee and the Financial Burden Carried
               by Class Counsel ................................................................ 12

          5.   A 19% Fee Award Is *Below* the Ninth Circuit's Benchmark and Is
               Less than Awards in Similar Cases .......................................... 14

          6.   Reaction of the Class ........................................................... 16

          7.   Lodestar Cross-Check .......................................................... 16

     D.   The Requested Fee Is Entitled to a Presumption of Reasonableness as it Is
          Based on a Fee Agreement Entered into at the Outset of the Litigation ........ 18

II.  CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE
     NECESSARY TO ACHIEVE THE BENEFIT OBTAINED ........................... 18

III. CLASS REPRESENTATIVES' REQUEST FOR PSLRA REIMBURSEMENT ......... 20

CONCLUSION ......................................................................................... 21

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*In re Amgen Inc. Sec. Litig.*,
5     Case No. CV 7-2536 PSG, 2016 WL 10571773 (C.D. Cal. Oct 25, 2016)............................17

6

*Anixter v. Home-Stake Prod. Co.*,
    77 F.3d 1215 (10th Cir. 1996) ...............................................................13
7

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
8     472 U.S. 299 (1985).............................................................................12

9

*Billitteri v. Sec. Am., Inc.*,
    No. 3:09-cv-01568-F, 2011 WL 3585983 (N.D. Tex. Aug. 4, 2011)....................................15
10

11

*In re Biolase, Inc. Sec. Litig.*,
    Case No. SACV 13-1300-JLS, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015)......................17
12

*Blum v. Stenson*,
13     465 U.S. 886 (1984).............................................................................4

14

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980).............................................................................4
15

16

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)...............................................................18
17

*In re Coordinated Pretrial Proceedings In Petroleum Prods. Antitrust Litig.*,
18     109 F.3d 602 (9th Cir. 1997) ...............................................................16

19

*Destefano v. Zynga Inc.*,
    No. 12-cv-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .............................. *passim*
20

21

*In re Equity Funding Corp. Sec. Litig.*,
    438 F. Supp. 1303 (C.D. Cal. 1977) ...............................................................12
22

*Glickenhaus & Co. v. Household Int'l, Inc.*,
23     787 F.3d 408 (7th Cir. 2015) ...............................................................14

24

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...............................................................18
25

26

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983).............................................................................6
27

*In re Heritage Bond Litig.*,
28     No. 02-ML-1475-DT (RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ............11, 12, 16

*Hicks v. Stanley*,
    No. 01 Civ. 10071(RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...............................21

*In re Immune Response Sec. Litig*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007)...............................................................................19, 20

*Janus Capital Grp. v. First Derivative Traders*,
    131 S.Ct. 2296 (2011)................................................................................................................14

*In re Marsh & McLennan Cos. Sec. Litig.*,
    No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)..........................18, 21

*McPhail v. First Command Fin. Planning, Inc.*,
    No. 05cv179-IEG- JMA, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ..................................7

*In re Merrill Lynch & Co., Research Reports Sec. Litig.*,
    No. 02 MDL 1484 (JFK), 2007 WL 313474 (S.D.N.Y. Feb. 1, 2007)....................................7

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)..................................................................................................................17

*Nguyen v. Radient Pharms. Corp.*,
    No. SACV 11-00406, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ........................................9

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................7, 10, 12

*In re Oracle Corp. Sec. Litig.*,
    No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627
    F.3d 376 (9th Cir. 2010) ..........................................................................................................13

*In re Pac. Enters. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) ...............................................................................................2, 3, 7

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) .....................................................................................................5

*In re Portal Software, Inc. Sec. Litig.*,
    No. C-03-5138 VRW, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007)....................................17

*Powers v. Eichen*,
    229 F.3d 1249 (9th Cir. 2000) ...........................................................................................5, 14

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ...............................................................................................13

*Rutti v. Lojack Corp. Inc.*,
    No. SACV 06-350 DOC JCX, 2012 WL 3151077 (C.D. Cal. July 31, 2012) .......................17

CASE NO. 5:13-CV-01920-EJD (HRL)
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

iii

*Schuler v. Meds. Co.*,
　No. 14 Civ. 1149, 2016 WL 3457218 (D.N.J. June 24, 2016) .................................................7

*Steiner v. Am. Broad. Co.*,
　248 F. App'x. 780 (9th Cir. 2007) ......................................................................................17

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (2007).............................................................................................................12

*Torrisi v. Tucson Elec. Power Co.*,
　8 F.3d 1370 (9th Cir. 1993) ..................................................................................................5

*Vincent v. Hughes Air W., Inc.*,
　557 F.2d 759 (9th Cir. 1977) .................................................................................................4

*Vincent v. Reser*,
　No. C-11-03572 CRB, 2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ................................4, 18

*Vizcaino v. Microsoft Corp.*,
　290 F.3d 1043 (9th Cir. 2002) ...................................................................................... *passim*

*Ward v. Succession of Freeman*,
　854 F.2d 780 (5th Cir. 1998) ...............................................................................................13

*In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*,
　19 F.3d 1291 (9th Cir. 1994), *aff'd in part, Class Plaintiffs v. Jaffe
　Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994)..................................................................4, 5

*In re Xcel Energy, Inc. Securities, Derivative & "ERISA" Litigation*,
　364 F. Supp. 2d 980 (D. Minn. 2005).................................................................................13

**Docketed Cases**

*In re BP Prudhoe Bay Royalty Trust Sec. Litig.*,
　No. C06-1505 MJP, slip op. (W.D. Wash. June 30, 2009)...................................................15

*In re Broadcom Corp. Class Action Litig.*,
　No. CV-06-5036-R, slip op. (C.D. Cal. Dec. 4, 2012). ......................................................21

*In re Celestica Inc. Sec. Litig.*,
　No. 07-cv-00312-GBD, slip op. (S.D.N.Y. July 28, 2015) .................................................15

*Central Laborers' Pension Fund v. Sirva*,
　No. 04 C-7644, slip op. (N.D. Ill. Oct. 31, 2007) ..............................................................15

*Hatamian v. Advanced Micro Devices, Inc.*,
　Case No. 14-cv-00226-YGR, slip op. (N.D. Cal. Mar. 2, 2018) ....................................20, 21

*In re Hewlett-Packard Co. Sec. Litig.*,
   Case No. SACV 11-1404-AG, slip op. (C.D. Cal. Sept. 15, 2014) ..................................14, 15

*In re NII Holdings Inc. Sec. Litig.*,
   Civ. No. 1:14-cv-00227-LMB-JFA, slip op. (E.D. Va. Sept. 16, 2016)................................15

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
   No. 07-cv-02830, SHM dkv, slip op. (W.D. Tenn. Aug. 5, 2013)  ........................................15

*In re Satyam Comput. Servs. Ltd. Sec. Litig.*,
   No. 09-MD-2027-BSJ, slip op. (S.D.N.Y. Sept. 13, 2011) ....................................................21

*South Ferry LP #2 v. Killinger*,
   No. C04-1599-JCC, slip op. (W.D. Wash. June 5, 2012) ........................................................15

*Stanley v. Safeskin Corp.*,
   No. 99CV454 BTM (LSP), slip op. (S.D. Cal. Apr. 2, 2003)..................................................15

*In re Titan, Inc. Sec. Litig.*,
   No. 04-cv-0676-LAB(NLS), slip op. (S.D. Cal. Dec. 20, 2005) ............................................15

*In re Verisign, Inc. Sec. Litig.*,
   No. C-02-2270-JWC (PVT), slip op. (N.D. Cal. Apr. 24, 2007)............................................15

*Weston v. RCS Capital Corp. et al.*,
   No. 1:14-CV-10136-GBD, slip op. (S.D.N.Y. Sept. 28, 2017) ..............................................15

**Statutes**

15 U.S.C. § 78u-4(a)(6) ..................................................................................................................5

15 U.S.C. § 78u-4(a)(4) ........................................................................................................1, 2, 20

**Rules**

Fed. R. Civ. P. 23(f)......................................................................................................................11

**Other Authorities**

Charles Silver, Class Actions In The Gulf South Symposium, *Due Process and
   the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809,
   1819-20 (2000)...................................................................................................................5

**<u>NOTICE OF MOTION</u>**

TO: ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on December 20, 2018, at 10:00 a.m., or as soon thereafter as it may be heard, Labaton Sucharow LLP ("Labaton Sucharow" or "Class Counsel"), on behalf of itself and all Plaintiffs' Counsel, will move for an order: (i) awarding attorneys' fees of 19% of the Settlement Fund; (ii) awarding payment of litigation expenses; and (iii) approving Class Representatives' request for payment of their costs and expenses related to their representation of the Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

This motion is based upon the following memorandum in support thereof; the Declaration of Jonathan Gardner in Support of Class Representatives' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Class Counsel's Motion for an Award of Attorneys' Fees and Payment of Expenses ("Gardner Declaration" or "Gardner Decl."), dated November 15, 2018, with annexed exhibits; the Stipulation and Agreement of Settlement, dated as of September 11, 2018 (ECF No. 298-1) ("Stipulation"); all of the prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.

A proposed order will be submitted with Class Counsel's reply submission on December 13, 2018, after the December 6, 2018 deadline for requesting exclusion or objecting has passed.

**<u>STATEMENT OF ISSUES TO BE DECIDED</u>**

1.    Whether the Court should approve Class Counsel's application for an award of attorneys' fees;

2.    Whether the Court should approve Class Counsel's application for payment of expenses; and

3.    Whether the Court should approve the Class Representatives' requests for payment of their reasonable costs and expenses related to their representation of the Class, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4).

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2      Class Counsel respectfully submits this memorandum of points and authorities in support

3  of its application, on behalf of all Plaintiffs' Counsel, for: (i) an award of attorneys' fees of 19%

4  of the Settlement Fund; (ii) payment of litigation expenses in the amount of $1,988,789.66; and

5  (iii) reimbursement in the aggregate amount of $58,854.18 to the Class Representatives, for their

6  representation of the Class, pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4).[1]

7

## PRELIMINARY STATEMENT

8      As detailed in the Stipulation, Intuitive Surgical, Inc. ("Intuitive" or the "Company") and

9  Gary S. Guthart, Marshall L. Mohr, and Lonnie M. Smith (collectively, the "Individual

10  Defendants," and, together with Intuitive, the "Defendants") have agreed to deposit or cause to

11  be deposited $42,500,000 to secure a settlement of the claims in this class action and related

12  claims (the "Settlement").  This recovery is a very favorable result for the Class when evaluated

13  in light of all the relevant circumstances – most notably the complicated nature of the claims and

14  the risks of pursuing the Action through a decision on summary judgment and trial.

15      Class Counsel has not received any compensation for its successful prosecution of this

16  case, which required five years of vigorous advocacy.  Class Counsel respectfully requests that

17  Plaintiffs' Counsel be awarded an attorneys' fee of 19% of the Settlement Fund, which will

18  include any accrued interest, that Class Counsel be paid out of the Settlement Fund for litigation

19  expenses in the amount of $1,988,789.66, and that the Class Representatives' request for

20  reimbursement in the amount of $58,854.18, pursuant to the PSLRA, be approved.  This 19% fee

21  request is below the Ninth Circuit's "benchmark" for contingent fees and, as discussed below,

22  would provide a negative multiplier of Plaintiffs' counsel's lodestar.  *See, e.g., In re Pac. Enters.*

23

24      [1] All capitalized terms not otherwise defined herein shall have the same meanings as those
set forth in the Stipulation.

25      Class Counsel was assisted in this case by Local Counsel, Kerr & Wagstaffe LLP, and

26  attorney Anthony Takitani and The Thornton Law Firm, which provided additional legal
assistance to Hawaii ERS (collectively "Plaintiffs' Counsel").  Any attorneys' fees awarded by

27  the Court to Class Counsel will be allocated by Class Counsel to other Plaintiffs' Counsel.  No
other law firms will share in the attorneys' fees awarded by the Court and the payments to Kerr

28  & Wagstaffe, Mr. Takitani and the Thornton Law Firm will not increase the amount of attorneys'
fees deducted from the Settlement Fund.

CASE NO. 5:13-CV-01920-EJD (HRL)
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

2

1  *Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) ("Twenty-five percent is the 'benchmark' that

2  district courts should award in common fund cases.").

3     The requested fee is based on a pre-settlement agreement with Class Representative

4  Employees' Retirement System of the State of Hawaii ("Hawaii ERS") and has been approved

5  by both Hawaii ERS and Greater Pennsylvania Carpenters' Pension Fund ("Greater

6  Pennsylvania"). *See* Ex. 1 ¶¶8-9; Ex. 2 ¶¶8-9.[2]  The Class Representatives were actively

7  involved in the litigation and believe that the Settlement represents a very favorable recovery for

8  the Class.  Ex. 1 ¶¶2, 5-7; Ex. 2 ¶¶2, 5-7.

9     As discussed herein, as well as in the Gardner Declaration, it is respectfully submitted

10  that the requested fee is fair and reasonable when considered under the applicable standards in

11  the Ninth Circuit and is well within the range of awards in class actions in the Ninth Circuit and

12  courts nationwide, particularly in view of the substantial risks of pursuing the Action, the

13  considerable litigation efforts, and the results achieved for the Class.  Moreover, the expenses

14  requested are reasonable in amount and were necessarily incurred for the successful prosecution

15  of the Action.  As such, the requested fees and expenses should be awarded in full.

16  **ARGUMENT**

17  I.    **CLASS COUNSEL'S REQUEST FOR ATTORNEYS' FEES OF 19% OF THE
       COMMON FUND SHOULD BE APPROVED**

18
19     A.    **Counsel Are Entitled to an Award of Attorneys' Fees
            from the Common Fund**

20     It is well settled that attorneys who represent a class and achieve a benefit for class

21  members are entitled to a reasonable fee as compensation for their services.  The Supreme Court

22

23  _____

      [2] All exhibits referenced herein are annexed to the Declaration of Jonathan Gardner in
    Support of Class Representatives' Motion for Final Approval of Class Action Settlement and
24  Plan of Allocation and Class Counsel's Motion for an Award of Attorneys' Fees and Payment of
    Expenses ("Gardner Declaration" or "Gardner Decl.").  For clarity, citations to exhibits that
    themselves have attached exhibits, will be referenced herein as "Ex.__-__."  The first numerical
25  reference is to the designation of the entire exhibit attached to the Gardner Declaration and the
    second alphabetical reference is to the exhibit designation within the exhibit itself.
26     The Gardner Declaration is an integral part of this motion and is incorporated herein by
    reference.  For the sake of brevity, the Court is respectfully referred to the Gardner Declaration
27  for, *inter alia*, a detailed description of the allegations and claims, the procedural history of the
    Action, the risks faced by the Class in pursuing litigation, the efforts that led to a settlement, and
28  a description of the services provided by Plaintiffs' Counsel.

has recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (citation omitted); *see also Vincent v. Reser*, No. C-11-03572 CRB, 2013 WL 621865, at *4 (N.D. Cal. Feb. 19, 2013) (quoting *Boeing*, 444 U.S. at 478). Indeed, the Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc*., 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this rule, known as the "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*, 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe Schlesinger, P.A*., 19 F.3d 1306 (9th Cir. 1994).

## B.     A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class. . . ." *Id*. at 900 n.16. In this Circuit, a district court has discretion to award fees in common fund cases based on either the lodestar/multiplier method or the percentage-of-the-fund method. *WPPSS*, 19 F.3d at 1296. However, the percentage-of-recovery method has become the prevailing method in the Ninth Circuit. *See Vizcaino v. Microsoft Corp*., 290 F.3d 1043 (9th Cir. 2002). Other circuits have similarly endorsed the percentage-of-recovery method.

The rationale for compensating counsel in common fund cases on a percentage basis is sound. Principally, it more closely aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time. Indeed, one of the nation's leading scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has concluded that the percentage method of awarding fees is the only method of fee awards that is consistent with class members' due process rights. Professor Silver notes:

CASE NO. 5:13-cv-01920-EJD (HRL)
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

4

***The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.*** It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges, including those who contributed to the Manual for Complex Litigation, the Report of the Federal Courts Study Committee, and the report of the Third Circuit Task Force. Indeed, it is difficult to find anyone who contends otherwise. No one writing in the field today is defending the lodestar on the ground that it minimizes conflicts between class counsel and absent claimants.

***In view of this, it is as clear as it possibly can be that judges should not apply the lodestar method in common fund class actions.*** The Due Process Clause requires them to minimize conflicts between absent claimants and their representatives. The contingent percentage approach accomplishes this.

Charles Silver, Class Actions In The Gulf South Symposium, *Due Process and the Lodestar Method: You Can't Get There From Here*, 74 Tul. L. Rev. 1809, 1819-20 (2000) (emphasis added and footnotes omitted). This is particularly appropriate in cases under the PSLRA where Congress recognized the propriety of the percentage method of fee awards. *See* 15 U.S.C. § 78u-4(a)(6) ("Total attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class".).

C.   **Analysis Under the Percentage Method and the *Vizcaino* Factors Justify a Fee Award of 19% in this Case**

In *Paul, Johnson*, *Alston & Hunt v. Graulty,* 886 F.2d 268 (9th Cir. 1989), the Ninth Circuit established 25% of a common fund as the "benchmark" award for attorneys' fees. *See also Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993) (reaffirming 25% benchmark); *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) (same); *see also Destefano v. Zynga Inc.,* No. 12-cv-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016) ("In common fund cases in the Ninth Circuit, the 'benchmark' percentage award is 25 percent of the recovery obtained, with 20 to 30 percent as the usual range.") (citing *Vizcaino,* 290 F.3d at 1047).

The guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296 (citation and emphasis omitted). In employing the percentage method, courts may perform a lodestar cross-check to confirm the reasonableness of the requested fee. *Vizcaino*, 290 F.3d at 1047 (affirming use of percentage method and applying

CASE NO. 5:13-CV-01920-EJD (HRL)
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

5

1   the lodestar method as a cross-check).  Here, as discussed in detail below, Plaintiffs' counsel

2   have dedicated 41,813.90 hours to the prosecution of the case over the past five years, with a

3   lodestar value of $21,548,609.00.  *See* Ex. 7.  Accordingly the requested fee, if granted, would be

4   only a portion of counsel's lodestar in the case.

5          The fee request readily satisfies the five *Vizcaino* factors that are used by courts within

6   the Ninth Circuit to evaluate the reasonableness of a requested fee:  (1) the result achieved; (2)

7   the risk of litigation; (3) the skill required and quality of the work; (4) awards made in similar

8   cases; and (5) the contingent nature of the fee and financial burden carried by counsel.  *Vizcaino*,

9   290 F.3d at 1048-50.  The Ninth Circuit has explained that these factors should not be used as a

10  rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of

11  the circumstances.  *Id*.  As set forth below, all of the *Vizcaino* factors militate in favor of

12  approving the requested fee.

13                      **1.       The Result Achieved**

14         Courts have consistently recognized that the result achieved is an important factor to be

15  considered in making a fee award.  *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the

16  most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048 n.7 (noting

17  "[e]xceptional results are a relevant circumstance" in awarding attorneys' fees).  Class Counsel

18  submits that the $42.5 million proposed Settlement is an excellent result for the Class, both

19  quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded

20  through a decision on summary judgment and trial.

21         In terms of potentially recoverable damages, the Settlement represents a recovery of

22  approximately 7.34% of the Class Representatives' damages expert's estimate of maximum

23  recoverable damages ($580 million), assuming that the Class Representatives prevailed on all

24  claims, including all three remaining alleged corrective disclosures.  Defendants of course

25  disputed, even if liability were to be proven, the amount that the Class was allegedly damaged,

26  and would have argued that damages were significantly less, if any.  Moreover, if Defendants'

27  arguments prevailed at summary judgment or trial (including Defendants' loss causation

28

1    contentions for any or all of the three remaining alleged disclosures), the Class's damages would

2    be severely or completely diminished.  *See* Gardner Decl. ¶¶5, 81.

3         This percentage of recovery compares well to recoveries in other securities class actions

4    within the Ninth Circuit.  *See, e.g., In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042

5    (N.D. Cal. 2008) (noting $13.75 million settlement yielding 6% of potential damages after

6    deducting fees and costs was "higher than the median percentage of investor losses recovered in

7    recent shareholder class action settlements") (citation omitted); *McPhail v. First Command Fin.*

8    *Planning, Inc.*, No. 05cv179-IEG- JMA, 2009 WL 839841, at *5 (S.D. Cal. Mar. 30, 2009)

9    (finding a $12 million settlement recovering 7% of estimated damages was fair and adequate).

10   The recovery also compares favorably to recoveries achieved in cases in other Circuits.  *See, e.g.,*

11   *In re Merrill Lynch & Co., Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK), 2007 WL

12   313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("The Settlement Fund is approximately $40.3 million.

13   The settlement thus represents a recovery of approximately 6.25% of estimated damages.  This is

14   at the higher end of the range of reasonableness of recovery in class actions securities

15   litigations.") (citation omitted); *Schuler v. Medicines Co.*, No. 14 Civ. 1149, 2016 WL 3457218,

16   at *8 (D.N.J. June 24, 2016) (approving $4,250,000 securities fraud settlement that reflects

17   approximately 4.0% of the estimated recoverable damages and noting percentage "falls squarely

18   within the range of previous settlement approvals").

19        Additionally, the $42.5 million Settlement is significantly greater than the median and

20   average reported settlement amounts in securities class actions in 2017 ($5 million and $18.2

21   million, respectively).  *See* Laarni T. Bulan, Ellen M. Ryan, and Laura E. Simmons, Securities

22   Class Action Settlements – 2017 Review and Analysis, at 3 (Cornerstone Research 2018), Ex. 4;

23   Gardner Decl. ¶81.

24        In sum, the Settlement provides a very favorable percentage of recovery for the Class.

25              **2.      The Risks of Litigation**

26        The risk of further litigation is also an important factor in determining a fair fee award.

27   *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys'

28   fees); *In re Pac. Enters. Sec. Litig.*, 47 F.3d  at 379 (finding that attorneys' fees were justified

1   "because of the complexity of the issues and the risks"); *see also Zynga*, 2016 WL 537946, at

2   *17 (approving requested fee and noting that "as to the second factor . . . the risks associated

3   with the case were substantial given the challenges of obtaining class certification and

4   establishing the falsity of the misrepresentations and loss causation").  As set forth in detail in

5   Section VI of the Gardner Declaration, there is no question that the Class Representatives faced,

6   and Class Counsel resisted, formidable defenses to liability and damages.  Although the Class

7   Representatives have prevailed at several crucial stages of the litigation, including two motions

8   to dismiss and class certification, Defendants vehemently denied liability and there was no

9   assurance that the Class Representatives' claims would survive Defendants' pending motion for

10   summary judgment and upcoming *Daubert* motions, let alone trial.

11          For instance, the Parties have asserted significantly different positions regarding loss

12   causation and damages.  *Id*. ¶¶83-91.  Defendants would principally have asserted, as they did on

13   summary judgment, that the three remaining "corrective" disclosures do not correct the allegedly

14   false statements.  *Id*. ¶84.  Defendants would have argued that nothing in the February 28, 2013

15   Bloomberg article announcing that the FDA was surveying surgeons at several hospitals

16   regarding complications they may have encountered with da Vinci, corrected any alleged

17   omissions regarding a purported defect or supposed internal recalls.  *Id*.  Defendants would also

18   have continued to argue that the March 5, 2013 Bloomberg article, which reported on allegations

19   from two personal injury lawsuits that had been filed against Intuitive as well as other lawsuits

20   filed against the Company, did not reveal anything new to the market, because this information

21   was all publicly available.  *Id*. ¶85.  And, regarding the July 18, 2013 Warning Letter where the

22   Company announced that it received a Warning Letter from the FDA, Defendants would have

23   argued that the Warning Letter revealed no information that Defendants had allegedly concealed.

24   Defendants would have argued that the only "new" information revealed on July 18, 2013, was

25   the existence of a Warning Letter (the contents of which were not made public until July 31,

26   2013), and since the July 18 announcement revealed only the receipt of the letter itself, which the

27   Class Representatives do not allege Defendants concealed, the announcement cannot qualify as a

28   corrective disclosure, and the accompanying stock drop cannot be a basis for proving loss

1   causation.  *Id*. ¶86.  Class Counsel tenaciously rebutted these arguments throughout the class

2   certification briefing, expert discovery, and summary judgment briefing.

3         Additionally, Defendants would have continued to assert their "truth on the market

4   defense," arguing that each piece of allegedly concealed information was publicly available to

5   the market.  *Id*. ¶88.  Defendants would have argued that the Class Representatives' claim that

6   Defendants failed to disclose that the Company sent letters in October 2011 to all da Vinci

7   customers regarding the proper use of the Tip Cover, was immaterial because the letters were in

8   fact widely publicized before the first allegedly misleading statement was made on February 6,

9   2012.  Additionally, Defendants would have argued that a Citron Research analyst report,

10  published on December 19, 2012, discussed the "gathering storm of legal liability accruing to the

11  company" due to the Company's alleged failure to disclose the risks associated with da Vinci.

12  Defendants would also argue that another Citron Report, published on January 17, 2013,

13  discussed pending litigation against Intuitive arising from the risks associated with its robot

14  instruments.  *Id*.  Countering these arguments took significant skill and dedication.  For instance

15  Defendants used the publicly filed patent application for the redesigned Tip Cover filed with the

16  U.S. Patent and Trademark Office to further their truth on the market defense in connection with

17  class certification, arguing that the redesign disclosed defects in the Tip Cover.  *Id*. ¶34.  Class

18  Counsel reviewed the patent application for the redesigned Tip Cover in order to evaluate and

19  rebut such arguments.

20        Moreover, Defendants were adamant in their arguments disputing the opinions of the

21  Class Representatives' damages and loss causation expert, Mr. Coffman.  *Daubert* motions

22  would likely have been filed seeking to exclude all or most of Mr. Coffman's testimony, as well

23  as the testimony of the Class Representatives' FDA expert and insider trading expert.  If the

24  Court agreed with Defendants' motions, presenting the Class Representatives' evidence on these

25  issues would be exceptionally challenging.  *See Nguyen v. Radient Pharms. Corp.*, No. SACV

26  11-00406 DOC (MLGx), 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving

27  requested attorneys' fee and noting the particular challenges of proving and calculating

28  damages).

1    The Class Representatives also faced challenges in proving that Defendants' alleged

2    misstatements were made with scienter, as required by the federal securities laws.  Gardner Decl.

3    ¶¶92-95.  Defendants denied that the Class Representatives could prove that there was an

4    intentional or severely reckless violation of the Exchange Act.  Among other things, regarding

5    the alleged insider trading of each of the Individual Defendants, Defendants would seek to put

6    forth expert testimony arguing that the sales of the Individual Defendants followed 10b5-1

7    trading plans.  Defendants would also argue that Defendants Mohr and Guthart approved a stock

8    repurchase plan prior to the Class Period, negating a finding of scienter.  *Id.* ¶93.

9    Class Counsel worked closely with their three testifying experts in the areas of loss

10    causation/materiality/damages, insider trading and executive compensation, and FDA regulatory

11    practice to establish the Class's claims.  The Class Representatives intended to rely heavily on

12    their expert witnesses, to present opinions on whether Defendants' statements were contrary to

13    internal Company data and internal statements as they relate to safety and efficacy of da Vinci,

14    among other things.  *Id.*, *e.g.*, ¶¶62-71, 95.  Had Defendants prevailed in excluding any of the

15    experts' opinions or had the jury discounted certain opinions, the presentation of many aspects of

16    the Class Representatives' case would have been more difficult.  Moreover, presenting this

17    complex evidence persuasively to a jury created its own significant challenges, in addition to the

18    risks inherently present in any "battle of the experts" that would have ensued.

19    Overall, the Class Representatives faced the significant possibility that the Court or a jury

20    would agree with Defendants' experts and, regardless of who would ultimately be successful at

21    trial, there is no doubt that both sides would have had to present complex and nuanced

22    information to a jury with no certainty as to the outcome.  *See In re Omnivision*, 559 F. Supp. 2d

23    at 1047 (noting that the risk of litigation, including the ability to prove loss causation and the risk

24    that Defendants prevail on damages support the requested fee).

25    If not settled, the Class in this case faced the considerable risk of years of additional

26    litigation with no guarantee of a greater recovery.  Class Counsel worked tirelessly to achieve a

27    significant result for the Class in the face of these very real risks.  Under these circumstances, the

28    requested fee is fully appropriate.

1

3.     **The Skill Required and the Quality of Work**

2      Courts have recognized that the "prosecution and management of a complex national

3 class action requires unique legal skills and abilities." *In re Heritage Bond Litig.*, No. 02-ML-

4 1475-DT (RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005) (citation omitted); *see*

5 *also Vizcaino,* 290 F.3d at 1048. "'This is particularly true in securities cases because the Private

6 Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past

7 a motion to dismiss.'" *Zynga*, 2016 WL 537946, at *17 (quoting *Omnivision*, 559 F. Supp. 2d at

8 1047).

9      Here, in addition to the complexities of this being a securities case, the claims centered

10 on Defendants' alleged false and misleading statements and omissions concerning the safety risk

11 profile of the Company's flagship product, a robotic surgical system.  Class Counsel worked

12 very hard to investigate, develop, and prove the complex claims against Defendants.  Class

13 Counsel conducted its own proprietary investigation without the benefit of any governmental or

14 criminal proceeding, restatement, or Company admission to formulate its theory of the case and

15 develop sufficient facts to ultimately defeat, in part, Defendants' motion to dismiss the first

16 Complaint, and to defeat, in its entirety, the motion to dismiss the Second Amended Complaint.

17 Additionally, Class Counsel:  (i) successfully moved for class certification and rebuffed a Rule

18 23(f) petition; (ii) engaged in thorough and diligent fact discovery, including (a) an extremely

19 labor intensive meet and confer process with Defendants on the scope of discovery which led to

20 the production and review of approximately 555,000 pages of documents; and (b) taking or

21 defending 18 depositions; (iii) engaged in extensive and complicated expert discovery, including

22 submission of expert and rebuttal reports from three experts, the review and analysis of reports

23 from Defendants' three experts, and taking or defending six expert depositions; (iv) opposed

24 Defendants' motion for summary judgment seeking dismissal of the Action; and (v) began trial

25 preparations.  *See* Gardner Decl. §§III-V.

26      Class Counsel has extensive and significant experience in the highly specialized field of

27 securities class action litigation and is known as a leader in the field.  *See* Gardner Decl. ¶140.

28 Class Counsel has not only used its knowledge and skill from prior cases but also developed

CASE NO. 5:13-CV-01920-EJD (HRL)
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

11

1  specific expertise in the issues presented here to overcome the obstacles presented by

2  Defendants.  The favorable Settlement is attributable in large part to the diligence, determination,

3  hard work, and skill of Class Counsel, who developed, litigated, and successfully settled the

4  Action.

5         The quality of opposing counsel is also important in evaluating the quality of the work

6  done by Class Counsel.  *See, e.g.*, *Heritage Bond*, 2005 WL 1594389, at \*12; *In re Equity*

7  *Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal. 1977).  Class Counsel was

8  opposed in this Action by very skilled and highly respected lawyers with well-deserved

9  reputations for vigorous advocacy in the defense of complex civil cases such as this.  In the face

10  of this formidable opposition, Class Counsel was able to develop the Class Representatives' case

11  so as to persuade Defendants to settle the Action on terms favorable to the Class.

12      **4.**    **The Contingent Nature of the Fee and the Financial**
             **Burden Carried by Class Counsel**

13

14         It has long been recognized that attorneys are entitled to a larger fee when their

15  compensation is contingent in nature.  *See Vizcaino*, 290 F.3d at 1048-50; *Omnivision*, 559 F.

16  Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could

17  not otherwise afford competent attorneys justifies providing those attorneys who do accept

18  matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat

19  fee."); *see also Zynga,* 2016 WL 537946, at \*18 (noting that "when counsel takes on a

20  contingency fee case and the litigation is protracted, the risk of non-payment after years of

21  litigation justifies a significant fee award").  The Supreme Court has emphasized that private

22  securities actions such as this provide "'a most effective weapon in the enforcement' of the

23  securities laws and are 'a necessary supplement to [SEC] action.'"  *Bateman Eichler, Hill*

24  *Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *Tellabs, Inc. v. Makor*

25  *Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (noting that the court has long recognized that

26

27

28

Case No. 5:13-cv-01920-EJD (HRL)
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof       12

1   meritorious private actions to enforce federal antifraud securities laws are an essential

2   supplement to criminal prosecutions and civil enforcement actions).[3]

3          Indeed, there have been many class actions in which plaintiffs' counsel took on the risk

4   of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received

5   no remuneration whatsoever despite their diligence and expertise.  Class Counsel tried *In re JDS*

6   *Uniphase Securities Litigation*, Case No. C-02-1486 CW (EDL) (N.D. Cal. Nov. 27, 2007), in

7   this district through to a disappointing verdict for the defendants, receiving no compensation and

8   expending millions of dollars in time and expenses.  *See also In re Oracle Corp. Sec. Litig.*, No.

9   C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010)

10  (granting summary judgment to defendants after eight years of litigation, and after plaintiff's

11  counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a

12  lodestar of approximately $48 million).  Class Counsel is aware of many other hard-fought

13  lawsuits where, because of the discovery of facts unknown when the case was commenced,

14  changes in the law during the pendency of the case, or a decision of a judge or jury following a

15  trial on the merits, excellent professional efforts by members of the plaintiff's bar produced no

16  fee for counsel.  *See, e.g.*, *Ward v. Succession of Freeman*, 854 F.2d 780 (5th Cir. 1998)

17  (reversing plaintiffs' jury verdict for securities fraud); *Robbins v. Koger Props., Inc.*, 116 F.3d

18  1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice);

19  *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict

20  obtained after two decades of litigation); Gardner Decl. ¶129.  As the court in *In re Xcel Energy,*

21  *Inc. Securities, Derivative & "ERISA" Litigation,* 364 F. Supp. 2d 980 (D. Minn. 2005)

22  recognized, "[p]recedent is replete with situations in which attorneys representing a class have

23  devoted substantial resources in terms of time and advanced costs yet have lost the case despite

24  their advocacy."  *Id.* at 994 (citation omitted).  Even plaintiffs who get past summary judgment

25

26          [3] Additionally, vigorous private enforcement of the federal securities laws and state
    corporation laws can only occur if private plaintiffs can obtain some semblance of parity in
27  representation with that available to large corporate defendants.  If this important public policy is
    to be carried out, courts should award fees that will adequately compensate private plaintiffs'
28  counsel, taking into account the enormous risks undertaken with a clear view of the economics of
    a securities class action.

CASE NO. 5:13-CV-01920-EJD (HRL)                                                    13
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

1    and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial

2    motion.  *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015)

3    (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss

4    causation grounds and error in jury instruction under *Janus Capital Grp., Inc. v. First Derivative*

5    *Traders*, 131 S.Ct. 2296 (2011)).

6         Here, because Class Counsel's fee was entirely contingent, the only certainty was that

7    there would be no fee without a successful result and that such result would only be realized after

8    significant amounts of time, effort, and expense had been expended.  Unlike counsel for the

9    Defendants, who were paid and reimbursed for their out-of-pocket expenses on a current basis,

10   Class Counsel has received no compensation for its efforts during the course of the Action.

11   Indeed, absent this Settlement, there was a sizeable risk that, at the end of the day, Class

12   Members, as well as their counsel, would obtain no recovery.  Class Counsel has risked non-

13   payment of $1,988,789.66 in expenses and $21,502,439.00 in time worked on this matter,

14   knowing that if its efforts were not successful, no fees or expenses would be paid.

15        **5.    A 19% Fee Award Is *Below* the Ninth Circuit's Benchmark**
              **and Is Less than Awards in Similar Cases**

16

17        In requesting a 19% fee, Class Counsel seeks an award that is ***below*** the benchmark that

18   has been established by the Ninth Circuit.  *Eichen*, 229 F.3d at 1256 ("We have also established

19   twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the

20   percentage-of-recovery approach.") (citation omitted); *Zynga,* 2016 WL 537946, at *18 ("As to

21   the fifth factor and awards in similar cases, several other courts—including courts in this

22   District—have concluded that a 25 percent award was appropriate in complex securities class

23   actions.") (citation omitted).

24        Fee awards of more than 19% have been awarded in numerous securities settlements with

25   comparable or even greater settlements, in district courts throughout the Ninth Circuit.  *See*, *e.g.*,

26   *In re Hewlett-Packard Co. Sec. Litig.*, Case No. SACV 11-1404-AG (RNBx), slip op. at 2-3

27

28

CASE NO. 5:13-cv-01920-EJD (HRL)
MOTION FOR AN AWARD OF ATTORNEY'S FEES AND PAYMENT OF
EXPENSES AND MEMORANDUM IN SUPPORT THEREOF

14

1   (C.D. Cal. Sept. 15, 2014) (awarding 25% fee of $57 million settlement) (Ex. 9);[4] *Stanley v.*

2   *Safeskin Corp.*, No. 99CV454 BTM (LSP), slip op. at 9 (S.D. Cal. Apr. 2, 2003) (awarding 26%

3   of $55 million settlement) (Ex. 9); *In re Titan, Inc. Sec. Litig.*, No. 04-cv-0676-LAB(NLS), slip

4   op. at 3 (S.D. Cal. Dec. 20, 2005) (awarding 25% of $61.5 million settlement) (Ex. 9); *In re*

5   *Verisign, Inc. Sec. Litig.*, No. C-02-2270-JWC (PVT), slip op. at 1 (N.D. Cal. Apr. 24, 2007)

6   (awarding 25% of $78 million settlement) (Ex. 9); *South Ferry LP #2 v. Killinger*, No. C04-

7   1599-JCC, slip op. at 9 (W.D. Wash. June 5, 2012) (awarding 29% of $41.5 million settlement)

8   (Ex. 9); *In re BP Prudhoe Bay Royalty Trust Sec. Litig.*, No. C06-1505 MJP, slip op. at 2 (W.D.

9   Wash. June 30, 2009) (awarding 27% of $43.5 million settlement) (Ex. 9).

10           An examination of fee decisions in other federal jurisdictions in securities class actions

11   with comparable settlements also shows that an award of 19% would be reasonable.  *See, e.g., In*

12   *re NII Holdings Inc. Sec. Litig.*, Civ. No. 1:14-cv-00227-LMB-JFA, slip op. at 2 (E.D. Va. Sept.

13   16, 2016) (awarding 25% fee of $41.5 million settlement) (Ex. 9); *In re Regions Morgan Keegan*

14   *Closed-End Fund Litig.*, No. 07-cv-02830 SHM dkv, slip op. at 21 (W.D. Tenn. Aug. 5, 2013)

15   (awarding 30% of $62 million settlement) (Ex. 9); *Central Laborers' Pension Fund v. Sirv*a, No.

16   04 C-7644, slip op. at 10 (N.D. Ill. Oct. 31, 2007) (awarding 29.85% of $53.3 million settlement)

17   (Ex. 9); *Billitteri v. Sec. Am., Inc.*, No. 3:09-cv-01568-F, 2011 WL 3585983, at *4, *9 (N.D. Tex.

18   Aug. 4, 2011) (awarding 25% of a $80 million settlement); *In re Celestica Inc. Sec. Litig.*, No.

19   07-cv-00312-GBD, slip op. at 2 (S.D.N.Y. July 28, 2015) (awarding 30% fee of $30 million

20   settlement) (Ex. 9); *Weston v. RCS Capital Corp. et al.*, No. 1:14-CV-10136-GBD, slip op. at 2

21   (S.D.N.Y. Sept. 28, 2017) (awarding 30% fee of $31 million settlement) (Ex. 9).

22           Accordingly, it is respectfully submitted that the attorneys' fee requested here is well

23   within the range of fees awarded by district courts within the Ninth Circuit and in comparable

24   securities settlements nationwide.

25

26

27

28   ───────────────
     [4] A compendium of unreported slip opinions is submitted as Exhibit 9 to the Gardner
     Declaration.

### 6.      Reaction of the Class

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee.  *See Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award.").  A total of 233,036 copies of the Settlement Notice and Claim Form have been sent to potential Class Members and the Court-approved Summary Notice was published in *Investor's Business Daily* and transmitted over the internet using *PR Newswire*.  *See* Gardner Decl. ¶¶105-06; Ex. 3 ¶¶3-9.  In addition, the Stipulation and Settlement Notice, among other documents, were posted to a website dedicated to the Action (www.IntuitiveSurgicalSecuritiesLitigation.com).  Gardner Decl. ¶107; Ex. 3 ¶10.  Although the objection deadline will not run until November 29, 2018, to date no objections to the requested amount of attorneys' fees and expenses have been received.[5]

### 7.      Lodestar Cross-Check

Although an analysis of counsel's lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with Plaintiffs' counsel's lodestar demonstrates its reasonableness.  *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Coordinated Pretrial Proceedings In Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997) (comparing the lodestar fee to the percentage fee is an appropriate measure of a percentage fee's reasonableness).

Plaintiffs' counsel's combined "lodestar" is $21,548,609.00 for work through September 30, 2018, meaning that the requested fee, if awarded, would represent a significant negative "multiplier" of 0.37 or be just 37% of Plaintiffs' counsel's combined lodestar.  *See* Exs. 5-A, 6-A, and 7.[6]  The Ninth Circuit has recognized that attorneys in common fund cases are frequently awarded a ***multiple*** of their lodestar, rewarding them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases."

---

[5]   Class Counsel will address any future objections to the request for attorneys' fees and expenses in their reply papers, which will be filed with the Court by December 13, 2018.

[6]   Plaintiffs' counsel's lodestar is also reported according to the category of work conducted. *See* Exs. 5-B and 6-B.

1   *Vizcaino,* 290 F.3d at 1051 (citation omitted).  For example, the district court in *Vizcaino*

2   approved a fee that reflected a multiple of 3.65 times counsel's lodestar.  *Id.*  The Ninth Circuit

3   affirmed, holding that the district court correctly considered the range of multiples applied in

4   common fund cases, and noting that a range of lodestar multiples from 1.0 to 4.0 are frequently

5   awarded.  *Id.*; *see also Steiner v. Am. Broad. Co.,* 248 F. App'x. 780, 783 (9th Cir. 2007) ("this

6   multiplier falls well within the range of multipliers that courts have allowed").

7          Courts have noted that a percentage fee that falls ***below*** counsel's lodestar supports the

8   reasonableness of the award.  *See, e.g., In re Portal Software, Inc. Sec. Litig.,* No. C-03-5138

9   VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) ("negative multiplier suggest[s] that

10  the requested percentage based fee is fair and reasonable"); *In re Amgen Inc. Sec. Litig.,* Case

11  No. CV 7-2536 PSG (PLAx), 2016 WL 10571773, at *9 (C.D. Cal. Oct 25, 2016) (same); *In re*

12  *Biolase, Inc. Sec. Litig.,* Case No. SACV 13-1300-JLS (FFMx), 2015 WL 12720318, at *8 (C.D.

13  Cal. Oct. 13, 2015) (same).  Moreover, a negative multiplier, like the negative multiplier here,

14  means that Class Counsel is seeking to be paid "for only a portion of the hours that they

15  expended on the action."  *Amgen,* 2016 WL 10571773, at *9.

16         Plaintiffs' counsel's lodestar represents 41,813.90 hours of work at counsel's current

17  hourly rates.[7]  Counsel's rates range from $700 to $975 for partners, $700 per hour for of

18  counsels, $375 to $675 for associates, and $335 to $435 per hour for the attorneys that assisted

19  with document review and deposition preparation.  *See* Exs. 5-A and 6-A.  Class Counsel

20  submits that these rates are comparable or less than those used by peer defense-side law firms

21  litigating matters of similar magnitude.  Sample defense firm rates in 2017, gathered by Labaton

22  Sucharow from bankruptcy court filings nationwide, often exceed these rates.  *See* Decl. ¶137;

23  Ex. 8.

24

25

---

26      [7] The Supreme Court and other courts have held that the use of current rates is proper since
    such rates compensate for inflation and the loss of use of funds.  *See Missouri v. Jenkins,* 491
27  U.S. 274, 283-84 (1989); *Rutti v. Lojack Corp. Inc.,* No. SACV 06-350 DOC JCX, 2012 WL
    3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to
28  current, not historic, hourly rates") (citing *Jenkins,* 491 U.S. at 284).

1   Additional work will be required of Class Counsel on an ongoing basis, including:

2   correspondence with Class Members; preparation for, and participation in, the final approval

3   hearing; supervising the claims administration process being conducted by the Claims

4   Administrator; and supervising the distribution of the Net Settlement Fund to Class Members

5   who have submitted valid Claim Forms.  However, Class Counsel will not seek payment for this

6   additional work.

7   **D.      The Requested Fee Is Entitled to a Presumption of Reasonableness as it Is Based on a Fee Agreement Entered into at the Outset of the Litigation**

8   The 19% request is based on a pre-settlement retainer agreement with Hawaii ERS, given

9   the stage of the litigation, and is lower than the fee agreement entered into with Greater

10  Pennsylvania.  Gardner Decl. ¶121.  A fee agreement between a properly selected PSLRA lead

11  plaintiff and counsel should be afforded a presumption of reasonableness.  *See In re Cendant*

12  *Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001) (*ex ante* fee agreements in securities class actions

13  enjoy "a presumption of reasonableness"); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04

14  Civ. 8144 (CM), 2009 WL 5178546, at *15 (S.D.N.Y. Dec. 23, 2009) ("Since the passage of the

15  PSLRA, courts have found such an agreement between fully informed lead plaintiffs and their

16  counsel to be presumptively reasonable").

17  **II.    CLASS COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED**

18

19  Class Counsel has incurred expenses in the aggregate amount of $1,988,789.66 in

20  prosecuting the Action.  Ex. 5-C.  These expenses are outlined in Class Counsel's individual fee

21  and expense declaration submitted to the Court concurrently herewith.  *Id*.

22  As the *Vincent* court noted, "[a]ttorneys who created a common fund are entitled to the

23  reimbursement of expenses they advanced for the benefit of the class."  *Vincent,* 2013 WL

24  621865, at *5 (citation omitted).  In assessing whether counsel's expenses are compensable in a

25  common fund case, courts look to whether the particular costs are of the type typically billed by

26  attorneys to paying clients in the marketplace.  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir.

27  1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses

28  that 'would normally be charged to a fee paying client.'") (citation omitted).

1    Here, the expenses sought by Class Counsel are of the type that are charged to hourly

2  paying clients and, therefore, should be paid out of the common fund.  The main expense here

3  relates to work performed by the Class Representatives' testifying and consulting experts

4  ($1,188,565.43 or approximately 60% of total expenses).  As discussed in the Gardner

5  Declaration, in addition to the two expert reports prepared and utilized at the class certification

6  stage (*see* Gardner Decl. ¶¶32, 36), the Class Representatives retained experts to opine and

7  consult in areas concerning loss causation, materiality, damages, insider trading and executive

8  compensation, FDA regulation and medical devices, robotic surgery, and jury analysis (*id*. ¶¶62-

9  65, 67-69, 71).  Class Counsel received crucial advice and assistance from these experts

10  throughout the course of the Action, from drafting the complaints through discovery, summary

11  judgment, and trial preparation.  Class Counsel utilized these experts in order to efficiently frame

12  the issues, gather relevant evidence, make a realistic assessment of provable damages, and

13  structure a resolution of the Action.  *Id* .

14    Class Counsel was also required to travel in connection with numerous court

15  appearances, witness meetings, and depositions.  Work-related transportation, lodging, trial

16  accommodations, and meal costs totaled approximately $247,805.08 or 12% of aggregate

17  expenses.  *Id*. ¶144.  Any first class airfare was reduced to economy rates.  Such expenses are

18  reimbursable.  *See In re Immune Response Sec. Litig*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal.

19  2007) (reimbursement for travel expenses . . . is within the broad discretion of the Court).

20    As explained above and in the Gardner Declaration, a vast amount of fact discovery was

21  taken in the case, in addition to expert discovery.  Class Counsel seeks $174,840.30 (9% of total

22  expenses) relating to litigation support services, such as the costs associated with electronic

23  discovery, and independent counsel for confidential witnesses.  Gardner Decl. ¶145.  Expenses

24  totaling $90,139.18 (5% of total expenses) were incurred in connection with court reporting and

25  the 24 depositions taken in the case.  *Id*.  The expenses here also include the costs of factual and

26  legal research ($73,870.71 or 4% of total expenses).  *Id*. ¶146.  These are the costs of primarily

27  computerized factual and legal research services such as LEXIS/Nexis and Westlaw.  It is

28  standard practice for attorneys to use LEXIS/Nexis and Westlaw to assist them in researching

Case No. 5:13-cv-01920-EJD (HRL)                                                                                          19
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

1   legal and factual issues and reimbursement is proper.  *See Immune Response*, 497 F. Supp. 2d at

2   1177.  The other expenses for which Class Counsel seeks payment are the types of expenses that

3   are necessarily incurred in litigation and routinely charged to clients who are billed by the hour.

4   These expenses include, among others, duplicating costs, long distance telephone and conference

5   call charges, and filing fees

6         In sum, Class Counsel's expenses, in an aggregate amount of $1,988,789.66, were

7   reasonable and necessary to the prosecution of the Action and should be approved.

8   **III.    CLASS REPRESENTATIVES' REQUEST FOR PSLRA REIMBURSEMENT**

9         The PSLRA, 15 U.S.C. § 78u-4(a)(4), limits a class representative's recovery to an

10  amount "equal, on a per share basis, to the portion of the final judgment or settlement awarded to

11  all other members of the class," but also provides that "[n]othing in this paragraph shall be

12  construed to limit the award of reasonable costs and expenses (including lost wages) directly

13  relating to the representation of the class to any representative party serving on behalf of a class."

14  Here, as detailed in their respective declarations, attached as Exhibits 1 and 2 to the Gardner

15  Declaration, the Class Representatives are seeking the aggregate amount of $58,854.18 in

16  expenses related to their active participation in the Action.  This total is broken down as follows:

17  (i) Hawaii ERS - $49,754.18 based on 339.40 hours dedicated to the case at rates ranging from

18  $109 per hour to $172.68 per hour; and (ii) Greater Pennsylvania - $9,100 based on 80 hours

19  dedicated to the case at $70.00 to $120.00 per hour.  *Id*.

20        Each Class Representative assisted with discovery efforts, produced documents, and

21  prepared for and testified at a deposition in connection with the class certification motion –

22  indeed four representatives of Hawaii ERS were deposed and a representative attended the class

23  certification hearing. *Id*.

24        Many cases have approved reasonable payments to compensate class representatives for

25  the time, effort, and expenses devoted by them on behalf of a class.  *See, e.g.*, *Hatamian v.

26  Advanced Micro Devices, Inc.*, Case No. 14-cv-00226-YGR, slip op, at 4 (N.D. Cal. Mar. 2,

27  2018) (awarding costs and expenses to two class representatives in the amount of $8,348.25 and

28  $14,875.00, respectively) (Ex. 9); *In re Broadcom Corp. Class Action Litig.*, No. CV-06-5036-R

1   (CWx) (C.D. Cal. Dec. 4, 2012), slip op. at 2 (awarding costs and expenses to class

2   representative in the amount of $21,087) (Ex. 9); *In re Marsh & McLennan Co. Inc. Sec. Litig.*,

3   No. 04-cv-08144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) (awarding $144,657 to the

4   New Jersey Attorney General's Office and $70,000 to the Ohio Funds); *In re Satyam Comput.*

5   *Servs. Ltd. Sec. Litig.*, No. 09-MD-2027-BSJ, slip op. at 3-4 (S.D.N.Y. Sept. 13, 2011) (awarding

6   $193,111 to lead plaintiffs) (Ex. 9).  As explained in one decision, courts "award such costs and

7   expenses to both reimburse named plaintiffs for expenses incurred through their involvement

8   with the action and lost wages, as well as provide an incentive for such plaintiffs to remain

9   involved in the litigation and incur such expenses in the first place." *Hicks v. Stanley*, No. 01

10   Civ. 10071(RJH), 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

11        Class Counsel and the Class Representatives respectfully submit that the amounts sought

12   here are eminently reasonable based on the requesting parties' active involvement in the Action

13   from inception to settlement.  *See* Exs. 1 and 2.

14                                    **CONCLUSION**

15        For all the foregoing reasons, Class Counsel respectfully requests that the Court award

16   attorneys' fees of 19% of the Settlement Fund, litigation expenses in the amount of

17   $1,988,789.66, and PSLRA reimbursement to Hawaii ERS in the amount of $49,754.18 and

18   Greater Pennsylvania in the amount of $9,100.  A proposed order will be submitted with Class

19   Counsel's reply papers, after the November 29, 2018 objection deadline has passed.

20   Dated:  November 15, 2018                  Respectfully submitted,

21                                              *s/ Jonathan Gardner*

22                                              **LABATON SUCHAROW LLP**
                                                Jonathan Gardner (*pro hac vice*)
23                                              Serena P. Hallowell (*pro hac vice*)
                                                Michael P. Canty (*pro hac vice*)
24                                              Christine M. Fox (*pro hac vice*)
                                                Theodore J. Hawkins (*pro hac vice*)
25                                              Alec T. Coquin (*pro hac vice*)
                                                140 Broadway
26                                              New York, NY  10005
                                                Telephone:  (212) 907-0700
27                                              Facsimile:   (212) 818-0477

28                                              *Lead Counsel for Plaintiffs and the Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KERR & WAGSTAFFE LLP**
JAMES M. WAGSTAFFE (95535)
IVO LABAR (203492)
101 Mission Street, 18th Floor
San Francisco, CA 94105–1727
Telephone: (415) 371-8500
Fax: (415) 371-0500
wagstaffe@kerrwagstaffe.com
labar@kerrwagstaffe.com

*Local Counsel for Plaintiffs and the Class*

Case No. 5:13-cv-01920-EJD (HRL)
Motion for an Award of Attorney's Fees and Payment of
Expenses and Memorandum in Support Thereof

22

1

## <u>CERTIFICATE OF SERVICE</u>

2

    I hereby certify that on November 15, 2018, I authorized the electronic filing of the

3

foregoing with the Clerk of the Court using the CM/ECF system which will send notification of

4

such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I

5

hereby certify that I have mailed the foregoing document or paper via the United States Postal

6

Service to the non-CM/ECF participants indicated on the attached Service List.

7

    I certify under penalty of perjury under the laws of the United States of America that the

8

foregoing is true and correct.

9

    Executed on November 15, 2018

10

                           /s/ *Jonathan Gardner*
                           JONATHAN GARDNER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Electronic Mail Notice List**

**Eric J. Belfi**
ebelfi@labaton.com,kgutierrez@labaton.com,ElectronicCaseFiling@labaton.com,4076904420@filings.docketbird.com

**Mary K. Blasy**
mblasy@rgrdlaw.com,e_file_sd@rgrdlaw.com

**Michael P. Canty**
mcanty@labaton.com,kgutierrez@labaton.com,7677707420@filings.docketbird.com,fmalonzo@labaton.com,acarpio@labaton.com,electroniccasefiling@labaton.com

**Michael D. Celio**
MCelio@gibsondunn.com,EOldiges@gibsondunn.com

**Susannah Ruth Conn**
SConn@rgrdlaw.com,tdevries@rgrdlaw.com,e_file_sd@rgrdlaw.com,3022905420@filings.docketbird.com

**Alec T Coquin**
acoquin@labaton.com,kgutierrez@labaton.com,7391740420@filings.docketbird.com,electroniccasefiling@labaton.com

**Jennifer Rae Crutchfield**
jcrutchfield@cpmlegal.com,mkeilo@cpmlegal.com,jacosta@cpmlegal.com

**Alexander Barnes Dryer**
adryer@keker.com,dawncurran3389@ecf.pacerpro.com,dcurran@keker.com,efiling@keker.com,alexander-dryer-2761@ecf.pacerpro.com

**Christine M. Fox**
cfox@labaton.com,kgutierrez@labaton.com,electroniccasefilings@labaton.com,fmalonzo@labaton.com,6312349420@filings.docketbird.com

**Jonathan Gardner**
jgardner@labaton.com,kgutierrez@labaton.com,jjohnson@labaton.com,cvillegas@labaton.com,cfox@labaton.com,tdubbs@labaton.com,4027988420@filings.docketbird.com,ryamada@labaton.com,cboria@labaton.com,thawkins@labaton.com,acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,agreenbaum@labaton.com

**Michael M. Goldberg**
michael@goldberglawpc.com

**Jo W. Golub**
jgolub@keker.com,sandy-giminez-6735@ecf.pacerpro.com,SHarmison@keker.com,efiling@keker.com,jah@keker.com,jo-golub-8129@ecf.pacerpro.com

**Serena Hallowell**
shallowell@labaton.com,2853304420@filings.docketbird.com,kgutierrez@labaton.com,acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,electroniccasefiling@labaton.com

**Cecily Gwyn Harris**
cecily.harris@keker.com

1  **Theodore J. Hawkins**
   thawkins@labaton.com
2

3  **John Watkins Keker**
   jwk@kvn.com,efiling@kvn.com,noelle-nichols-
4  8018@ecf.pacerpro.com,nnichols@keker.com,john-keker-0604@ecf.pacerpro.com

5  **Ivo Michael Labar**
   labar@kerrwagstaffe.com,smoot@kerrwagstaffe.com,phan@kerrwagstaffe.com
6

7  **Arthur Charles Leahy**
   artl@rgrdlaw.com,e_file_sd@rgrdlaw.com
8

9  **Jeremy A Lieberman**
   jalieberman@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com,lpvega@pomlaw.c
   om
10 **Laurie Carr Mims**
11 lmims@keker.com,smccabe@keker.com,susan-mccabe-
   8631@ecf.pacerpro.com,efiling@keker.com,laurie-mims-6204@ecf.pacerpro.com
12

13 **Reid Patrick Mullen**
   rmullen@keker.com,patty-lemos-9042@ecf.pacerpro.com,reid-mullen-
14 2561@ecf.pacerpro.com,tsherman@keker.com,plemos@keker.com,efiling@keker.com

15 **Danielle Suzanne Myers**
   dmyers@rgrdlaw.com,3045517420@filings.docketbird.com,e_file_sd@rgrdlaw.com,sconn@rgr
16 dlaw.com

17 **Laurence J Pino**
   ljp@pinonicholsonlaw.com
18

19 **Laurence James Pino**
   ljp@pinonicholsonlaw.com
20

21 **Ekaterini Maria Polychronopoulos**
   kpolychronopoulos@seyfarth.com,sstitt@seyfarth.com
22

23 **Elizabeth Rosenberg**
   ewierzbowski@labaton.com
24

   **Philip James Tassin**
25 ptassin@keker.com,sandy-giminez-6735@ecf.pacerpro.com,sharmison@keker.com,philip-
   tassin-6713@ecf.pacerpro.com,efiling@keker.com
26

27 **Carol C. Villegas**
   cvillegas@labaton.com,kgutierrez@labaton.com,5739893420@filings.docketbird.com,jchristie
   @labaton.com,acoquin@labaton.com,fmalonzo@labaton.com,acarpio@labaton.com,electronicc
28 asefiling@labaton.com

**James Matthew Wagstaffe**
wagstaffe@kerrwagstaffe.com,reboredo@kerrwagstaffe.com,bechtol@kerrwagstaffe.com

**Shawn A. Williams**
shawnw@rgrdlaw.com,kmccarty@rgrdlaw.com,e_file_sd@rgrdlaw.com

**Nicole M. Zeiss**
nzeiss@labaton.com,5854006420@filings.docketbird.com,kgutierrez@labaton.com,ElectronicCaseFiling@labaton.com,cboria@labaton.com

**Manual Notice List**
The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

• **(No manual recipients)**